## UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| AVKO EDUCATIONAL RESEARCH FOUNDATION, INC., a Michigan nonprofit corporation, | ) ) ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case Number: |
| | ) | |
| WAVE 3 LEARNING, INC., a Nevada corporation, and THOMAS A. MORROW, d/b/a SEQUENTIAL SPELLING, | ) ) ) | |
| | ) | **JURY TRIAL DEMANDED** |
| Defendants. | ) | |

## COMPLAINT

This is a complaint for federal unfair competition under the Lanham Act, false designation of origin under the Lanham Act, unfair competition under Illinois common law, unjust enrichment, deceptive trade practices under the Illinois Uniform Deceptive Trade Practices Act, 815 Ill.Comp.Stat. § 510/1, *et seq.*, tortious interference with a business relationship or expectancy, declaratory relief seeking an adjudication of ownership of the copyrights to and trademarks in Plaintiff's educational materials in favor of Plaintiff under 28 U.S.C. §§ 2201-2202, an accounting, breach of contract, and a preliminary injunction, relating to Defendants' use of AVKO Educational Research Foundation, Inc.'s ("AVKO") intellectual property.

## PARTIES

1.     Plaintiff AVKO is a Michigan domestic nonprofit corporation with federal status as a 501(c)3 tax-exempt membership organization and its principal place of business is located at 3084 Willard Road, Birch Run, Michigan, 48415. AVKO's president is Donald J. McCabe ("McCabe").

1

2.      Upon information and belief, defendant Wave 3 Learning, Inc. ("Wave 3") is a Nevada Corporation with a principal place of business located in Arlington Heights, Illinois. Wave 3's CEO is Thomas A. Morrow ("Morrow").

3.      Upon information and belief, defendant Thomas A. Morrow is an individual living in Arlington Heights. Upon information and belief, Morrow is doing business as Sequential Spelling.

**JURISDICTION AND VENUE**

4.      This court has subject matter jurisdiction over AVKO's claims because they arise under the Lanham Act, 15 U.S.C. § 1051 *et seq.*, the Declaratory Judgment Act, 28 U.S.C. §§ 2201-2202, and because the parties are completely diverse and the amount in controversy exceeds $75,000. Federal subject matter jurisdiction is therefore conferred by 28 U.S.C. §§ 1331, 1332, and 1338.

5.      This Court has supplemental jurisdiction over AVKO's state law claims in this Complaint, which arise under the statutory and common law of the State of Illinois, pursuant to 28 U.S.C. § 1367(a), because the state law claims are so related to the federal claims that they form part of the same case or controversy and derive from a common nucleus of operative facts.

6.      Venue and personal jurisdiction are proper in the Northern District of Illinois under 28 U.S.C. § 1391(b) and (c) because Defendants reside in this district, a substantial part of the events giving rise to the claims herein occurred here in this District, Defendants are doing business in this District, and Defendants have promoted goods and services in connection with a mark confusingly similar to AVKO's mark in this District.

**FACTUAL BACKGROUND**

7.      AVKO's president, Don McCabe, is the author of *To Teach a Dyslexic*,

2

*Sequential Spelling*<sup>TM</sup>, *The Patterns of English Spelling*, *Word Families in Sentence Context*, and over fifty different instructional and other reference materials, including derivative works (collectively, the "The Works").

8.     In 1974, James Rutledge of the Genesee School District estimated the worth of *Word Families*, *Word Families in Sentence Context*, *Reading via Typing*, the *AVKO Teacher's Manual*, and *Sequential Spelling 1-5*, at $996,000 based on the substantial investment it would take to replicate them. The Works are now worth considerably more.

9.     McCabe transferred all existing copyrights and trademarks in The Works to AVKO in 1975. Since then, McCabe has created over forty different works and assigned the trademarks and copyrights in them to AVKO.

10.     AVKO has used the Sequential Spelling<sup>TM</sup> trademarks continuously in interstate commerce since 1975. Over the years, AVKO's Sequential Spelling<sup>TM</sup> trademark has become a trusted name in the educational materials industry, synonymous with high quality, unique, and effective techniques for teaching dyslexic children and adults how to read. AVKO has built a loyal customer base due to the quality and effectiveness of The Works. AVKO has developed significant goodwill in its Sequential Spelling<sup>TM</sup> trademarks and related marks.

11.     Wave 3's use of AVKO's trademarks is damaging AVKO's valuable Sequential Spelling<sup>TM</sup> trademarks and related marks.  Over the years, AVKO has developed a lot of customer loyalty ….

12.     The AVKO Educational Research Foundation, Inc. is a 501(c)3 non-profit organization whose mission is:  (a) to determine what makes the learning of reading and spelling so difficult for some and so easy for others; (b) to devise techniques and materials to enable teachers (or parents) to systematically teach poor readers and/or poor spellers that which schools

are presently not teaching; (c) to widely disseminate its discoveries of techniques and materials

that enable dyslexics to learn to read and to spell; d) to make available to the public its

discoveries; and, (e) to help support its mission, AVKO publishes its copyrighted materials.

13.     AVKO owns all copyrights and trademarks in The Works.

14.     AVKO's federally registered copyrights include:

| Copyright Number | Name | Year |
|---|---|---|
| TX0007582184 | If it is to BE . . . It is up to me to do it | 2003 |
| TX0007573205 | Sequential Spelling 2 | 2006 |
| TX0007573207 | Sequential Spelling 3 | 2006 |
| TX0007573219 | Sequential Spelling 4 | 2006 |
| TX0007573235 | Sequential Spelling 5 | 2006 |
| TX0007573278 | Sequential Spelling 6 | 2006 |
| TX0007570538 | Sequential Spelling 7 | 2006 |
| TX0007582356 | Sequential Spelling for Adults | 1998 |
| PA0001857872 | Sequential Spelling 1 | 2009 |
| PA0001857873 | Sequential Spelling 2 | 2009 |
| PA0001857874 | Sequential Spelling 3 | 2010 |
| PA0001857875 | Sequential Spelling 4 | 2011 |
| PA0001915566 | Sequential Spelling DVD Volume 5, Version 2.0 | 2013 |
| TX0007572942 | Patterns of English Spelling with New Word Families in Sentence Context | 2008 |
| TX0007573818 | Basic Patterns of English Spelling with Unabridged Examples | 1991 |
| TX0007477279 | Sequential Spelling 1 | 2008 |
| TX0007477506 | To Teach A Dyslexic | 1995 |
| A928855 | AVKO "10-4-1" Cards | 1977 |
| A711306 | AVKO Student Record Book | 1975 |
| A716108 | Individually Guided Typing | 1975 |
| A815786 | Student Record Book for Reading Via Typing | 1976 |
| A716107 | Reading Via Typing | 1975 |
| A611728 | AVKO Sequential Spelling Tests - Series One | 1974 |
| A716103 | AVKO Sequential Spelling Tests - Series One | 1975 |
| A716104 | AVKO Sequential Spelling Tests - Series Two | 1975 |
| A716102 | AVKO Sequential Spelling Tests - Series Three | 1975 |
| A716101 | AVKO Sequential Spelling Tests - Series Four | 1975 |
| A716105 | AVKO Sequential Spelling Tests - Series Five | 1975 |

| A815787 | Spoken Dialect Translation Exercises Student Record Book | 1976 |
|---|---|---|
| A815785 | Student Record Book for Individually Guided Typing | 1976 |
| A848352 | AVKO Student Record Book | 1976 |
| A716106 | Word Families in Sentence Context | 1975 |

15.     AVKO granted Instructional Media Innovations, Inc. ("IMI") a license to redesign, develop, and implement Digital Video Disc adaptations (DVDs). The license includes copyright numbers PA0001857872 (*Sequential Spelling 1*), PA0001857873 (*Sequential Spelling 2*), PA0001857874 (*Sequential Spelling 3*), PA0001857875 (*Sequential Spelling 4*), and PA0001915566 (*Sequential Spelling DVD Volume 5, Version 2.0*).

### THE 2010 CONTRACT

16.     In 2009, while looking for additional distributors at the Florida Parent Educators Association's home-schooling conference/tradeshow, McCabe met Morrow, the then-CEO of Home School Holdings, Inc. ("HSH").

17.     Ten days later, AVKO and HSH entered into discussions for AVKO to license publishing rights to The Works to HSH.

18.     After months of negotiations, AVKO and HSH agreed on an acceptable contract. While it would be a few months before the parties executed the contract, the terms of the executed contract between HSH and AVKO, in relevant part, are as follows:

    a.   HSH agreed to pay AVKO $50,000 in cash and stock in HSH worth $250,000 upon closing in exchange for the right to publish The Works and HSH further agreed to pay AVKO $50,000 in cash and another $250,000 in HSH stock, due once HSH made $300,000 in gross revenue;

    b.   AVKO would be paid an additional $10,000 in cash and an additional

5

$10,000 in HSH stock for each additional $300,000 in revenue made by HSH;

c.  HSH must make every publication and instructional aid of The Works available for purchase, both in print and electronically;

d.  HSH would provide AVKO with desk copies of any updated materials;

e.  AVKO has the right to audit the books and records of HSH at any time after closing; and,

f.  The agreement "immediately terminates and the right to publish [The Works] reverts to AVKO if HSH does not make the payments listed in this agreement or if HSH violates any provision of this agreement."

19.     A few months later, an AVKO volunteer discovered information suggesting that HSH may be financially unsound. Concerned, McCabe emailed Morrow asking for clarification. Morrow reassured McCabe that there was no cause for concern and that HSH was viable and ready to acquire the publishing rights to The Works.

20.     A month later, Morrow filed for personal bankruptcy. In this filing, Morrow, HSH's CEO and largest stockholder, declared that HSH's stock was worthless.

21.     Morrow did not tell AVKO that he went into bankruptcy. Nor did he tell AVKO that HSH's stock had no value.

22.     One month later, on December 18, 2009, Morrow emailed AVKO informing it that 5,000,000 shares of HSH stock would be entered into a shareholder registry for AVKO. At its then-current value of $0.001 per share, this represented a mere $5,000 of the required $250,000. These shares were never entered into the registry, nor was AVKO informed of the failure to do so.

6

23.     AVKO signed an agreement with the terms in ¶ 18(a)-(g) ("2009 Contract") and faxed it to Morrow.

24.     While Morrow did not sign the 2009 Contract, he did file it with the SEC in HSH's January 5, 2010 Form 8K, in which Morrow claimed HSH paid AVKO $300,000 ($50,000 in cash and $250,000 in shares at $0.05 per share) to acquire publishing rights to The Works and that The Works generated revenue of $311,000 in the fiscal year ending June 30, 2009.

25.     Six months later, AVKO and HSH agreed to meet and discuss a new contract because Morrow never executed the 2009 Contract. This new contract would have had the same terms as the 2009 Contract.

26.     About two weeks before signing, Morrow offered to give AVKO an 1/8[th] ownership stake in a new company, in place of the stock requirement for HSH.

27.     The day before signing, Morrow sent over a subscription agreement that would require AVKO to purchase a minimum of $250,000 in HSH shares at $0.05 per share, despite the share's actual value being less than $0.01 per share. AVKO did not sign the subscription agreement.

28.     AVKO and HSH executed a licensing agreement, in which AVKO agreed to grant HSH a license in exchange for $600,000, ongoing royalties, and the other terms listed in ¶ 18(a)-(g) ("2010 Contract") on June 4, 2010. Morrow drafted the 2010 Contract. They did not execute a subscription agreement.

29.     HSH paid AVKO $50,000, but did not provide AVKO the required $250,000 in HSH stock for the initial payment. Nor did HSH provide the remaining $300,000 ($50,000 in cash and $250,000 in saleable stock), or any ongoing royalties.

30.     Not long afterward, Morrow informed AVKO that HSH would no longer be able to fulfill the terms of the 2010 Contract.

31.     Morrow then proposed a new contract to AVKO with the same terms as the 2010 Contract, but substituting Wave 3 for HSH. Notably, the new agreement replaces the $250,000 in HSH stock with a 7.5% ownership stake in Wave 3, worth $1.50. However, Wave 3 did not exist at that time. AVKO declined to sign this unacceptable contract.

32.     Thirteen days after executing the 2010 Contract between HSH and AVKO, Morrow resigned as CEO of HSH.

33.     The day after he resigned from HSH, Morrow incorporated a new company, Wave 3 Learning, Inc. Morrow informed AVKO that AVKO was a founding shareholder of Wave 3.

34.     AVKO is not and never has been a founding shareholder of Wave 3.

35.     Morrow proposed two more contracts, neither of which provided adequate compensation or reasonable terms to AVKO. AVKO rejected both of them.

36.     A month later, Morrow attempted to get AVKO to sign a trademark and copyright assignment. AVKO declined to do so.

37.     Six months later, Wave 3 allegedly discovered a cybersquatter on www.sequentialspelling.com. In response to this discovery, Wave 3 again demanded that AVKO sign over its copyrights and trademarks. AVKO declined to do so, citing the unacceptable terms in the proposed agreement.

38.     After several more attempts to get AVKO to sign an unfavorable contract, Morrow began threatening AVKO, and its president, even to the point of emailing McCabe's grandson that Morrow would bring litigation that "would likely wipe out AVKO and [its

president's] estate."

39.     Despite AVKO not assigning its copyrights and trademarks to Wave 3, Wave 3 began claiming in its marketing that it held an exclusive license to the copyrights and trademarks in The Works.

40.     On June 6, 2011, AVKO warned Wave 3 that AVKO would sue for copyright infringement unless Wave 3 immediately ceased claiming AVKO's copyrights.

41.     Nearly a month later, Wave 3 responded to AVKO that Wave 3 had purchased AVKO's copyrighted materials for $50,000 via a June 22, 2010 contract. However, there was no contract executed between Wave 3 and AVKO, nor did Wave 3 even exist at that time.

42.     Despite extensive communication between the parties, they failed to agree on a mutually acceptable replacement agreement.

## EASTERN DISTRICT OF MICHIGAN LITIGATION

43.     Two weeks after Wave 3's letter threatening a lawsuit, AVKO filed suit in Michigan's Saginaw County Court House against Morrow, Wave 3 Learning, HSH, and Home School, Inc. The case was subsequently removed to the Eastern District of Michigan. *See AVKO Educational Research Foundation, Inc. et al. v. Morrow et al.*, Case No. 1:11-cv-13381 (ED MI August 3, 2011).

44.     After the suit was commenced, Morrow began emailing other distributors of AVKO's materials, including Instructional Media Innovations ("IMI"), the creator of The Works DVDs, and suggesting that McCabe is senile and that IMI should work with Wave 3 or face litigation.

45.     Morrow also emailed IMI stating that AVKO will likely lose the lawsuit and that IMI should forward the licensing fees it was paying AVKO to Wave 3.

46.     Judge Ludington, of the Eastern District of Michigan, granted Wave 3's Motion for Summary Judgment finding that because there was at least an implied license between AVKO and Wave 3 at that time, there could be no copyright infringement. Judge Ludington also held that Morrow was not personally liable for breach of contract because he signed the 2010 Contract on behalf of HSH, and not in his personal capacity.

47.     Despite a finding that there is an implied license between the parties, Wave 3 continued using AVKO's copyrighted materials, but has not paid any licensing fees after that suit.

48.     On May 2, 2013 and May 9, 2013, AVKO emailed Wave 3 warning that a continued failure to pay the licensing fees would result in termination of the license.

49.     AVKO formally terminated the license between the parties on or about June 11, 2013, because HSH, Morrow, and/or Wave 3 had not met the terms of the 2010 Contract and/or any other licensing terms to The Works.

50.     Defendants continued using The Works without paying for them and without AVKO's authority.

**NORTHERN DISTRICT OF ILLINOIS LITIGATION**

51.     On March 19, 2014, Wave 3 filed a declaratory judgment in the Northern District of Illinois seeking a declaration that it owns the copyrights in The Works. *See Wave 3 Learning, Inc. v. AVKO Educational Research Foundation, Inc.*, Case No. 1:14-cv-01948 (ND Ill. March 19, 2014).

52.     The Court dismissed the complaint without prejudice because there was no assignment transferring ownership of The Works from AVKO to Wave 3.

53.     Wave 3 responded by filing an amended complaint, including an assignment allegedly transferring ownership of The Works from Morrow to Wave 3, dated August 14, 2014,

148 days after the lawsuit began and three years after the Michigan lawsuit was filed.

54.     Wave 3 simultaneously filed a new complaint, nearly identical to the amended complaint, seeking a declaratory judgment that it owns the copyrights in The Works. *See Wave 3 Learning, Inc. v. AVKO Educational Research Foundation, Inc.*, Case No. 1:14-cv-06576 (ND Ill. Aug. 26, 2014). Wave 3 voluntarily withdrew this lawsuit.

55.     On February 23, 2015, the Court entered a final judgment dismissing Wave 3's complaint for a second time, citing that Wave 3 lacked subject matter jurisdiction over the matter because Wave 3 had not shown it owned the copyrights in The Works when it filed the suit.

### ACTIVITIES OF DEFENDANTS

56.     Two weeks later, Wave 3 sent an email informing AVKO that it would file a new lawsuit unless AVKO agreed to assign its copyrights and trademarks to Wave 3 at no cost. AVKO declined to do so.

57.     At least one of AVKO's distributors, Inquisicorp, Inc., told AVKO that due to Defendants' threats and the ongoing litigation, it would not enter into a publishing agreement with AVKO.

58.     AVKO has lost and continues to lose business because potential business partners will not do business with AVKO due to Defendants' threats, ongoing litigation, and potential future litigation.

59.     Furthermore, Wave 3's website expressly claims that Wave 3 has an exclusive license to The Works and uses AVKO's Sequential Spelling™ trademarks in direct competition with AVKO. Exhibit A.

60.     Upon information and belief, Defendants use the Sequential Spelling™ trademarks and advertise that they own and/or have exclusively licensed The Works at trade

shows and other home-school and educational material outlets.

61.     Wave 3's customers have contacted AVKO numerous times complaining about the quality of Wave 3's unauthorized updates to the Sequential Spelling$^{TM}$ materials.

62.     Upon information and belief, Wave 3 and/or Thomas Morrow exhibited materials using the Sequential Spelling$^{TM}$ trademarks, without AVKO's authorization from April 9-11, 2015, at The Midwest Homeschool Convention in Cincinnati. This unauthorized use of the Sequential Spelling$^{TM}$ trademarks and related marks infringed AVKO's trademarks.

63.     Defendants continue to sell materials with Sequential Spelling$^{TM}$ trademarks on them, both on their website, www.sequentialspelling.com, Exhibit A, and other third-party websites, such as www.curriculumexpress.com. Exhibit B.

64.     As of the date of filing, no new lawsuit has been filed and substantial confusion exists between the parties.

## COUNT I
## FEDERAL UNFAIR COMPETITION
## 15 U.S.C. § 1125(a)

65.     AVKO incorporates the allegations from the preceding paragraphs as if fully set forth herein.

66.     Defendants' use of Sequential Spelling$^{TM}$ trademarks and related marks has caused and is likely to cause confusion, deception, and mistake by creating the false and misleading impression that Defendants' goods are sold by AVKO, or are affiliated, connected, or associated with AVKO, or have the sponsorship, endorsement, or approval of AVKO.

67.     Defendants have made false representations, false descriptions, and false designations of the origin of its goods in interstate commerce in violation of 15 U.S.C. § 1125(a), and Defendants' activities have caused and, unless enjoined by this Court, will continue to cause

a likelihood of confusion and deception of members of the public and, additionally, injury to

AVKO's goodwill and reputation, for which AVKO has no adequate remedy at law.

68.     Defendants' actions demonstrate an intentional, willful, and malicious intent to

trade on the goodwill associated with AVKO's Sequential Spelling$^{TM}$ trademarks and related

marks to the great and irreparable injury of AVKO.

69.     Defendants' conduct has caused, and is likely to continue causing, substantial

injury to the public, and to AVKO, and AVKO is entitled to injunctive relief, and to recover

Defendants' profits, actual damages, enhanced profits and damages, costs, and reasonable

attorneys' fees pursuant to 15 U.S.C. §§ 1125(a), 1116, and 1117.

## COUNT II
## UNFAIR COMPETITION UNDER THE LANHAM ACT – FALSE DESIGNATION OF ORIGIN
## 15 U.S.C. § 1125(a)

70.     AVKO incorporates the allegations from the preceding paragraphs as if fully set

forth herein.

71.     Defendants' knowing, willful, and intentional use of Sequential Spelling$^{TM}$

trademarks and related marks constitutes a false designation of origin in interstate commerce

within the meaning of § 43(a) of the Federal Trademark Act, 15 U.S.C. § 1125(a), which is likely

to confuse, mislead, or deceive the public as to the source, sponsorship, and/or approval of

Defendants' educational materials, thereby causing AVKO irreparable injury for which it has no

adequate remedy at law.

72.     Consumers believe they are purchasing AVKO's Sequential Spelling$^{TM}$ or related

educational materials when in fact they are purchasing Defendants'. Defendants are trading off

the goodwill of AVKO.

73.     If Defendants' activities are not enjoined from future use, AVKO will continue to

suffer irreparable harm and injury to its goodwill and reputation.

74.    As a direct and proximate result of Defendants' conduct, AVKO has also suffered damages to its valuable Sequential Spelling[TM] trademarks and related marks, and other damages in an amount to be proven at trial.

## COUNT III
## UNFAIR COMPETITION UNDER ILLINOIS COMMON LAW

75.    AVKO incorporates the allegations from the preceding paragraphs as if fully set forth herein.

76.    Defendants' unlawful and unauthorized use of the Sequential Spelling[TM] trademarks and related marks in connection with the advertising and sale of educational materials in Illinois constitutes unfair competition in violation of the laws of the state of Illinois because it is likely to cause confusion or misunderstanding as to the affiliation, connection, or association of the Defendants' goods by or with AVKO. Defendants have otherwise engaged in unfair competition by representing that they have a sponsorship, approval, status, affiliation, or connection with AVKO that they do not have.

77.    Defendants' conduct creates consumer confusion as to the source and/or origin of the infringing items.

78.    Defendants acted with full knowledge of AVKO's use of and common law rights to the Sequential Spelling[TM] trademarks and related marks, and goodwill, and without regard to the likelihood of confusion of the public created by Defendants' activities.

79.    Defendants' use of the Sequential Spelling[TM] trademarks and related marks is an attempt to trade on AVKO's goodwill in that mark.

80.    Defendants have willfully engaged in these acts of unfair competition.

81.    AVKO has no adequate remedy at law and if Defendants' activities are not

enjoined from future use, AVKO will continue to suffer irreparable harm and injury to its goodwill and reputation.

82.     As a direct and proximate result of Defendants' conduct, AVKO has suffered damages to its valuable Sequential Spelling[TM] trademarks and related marks, and other damages in an amount to be proven at trial.

83.     Further, in light of the deliberately fraudulent and malicious use of confusingly similar imitations of AVKO's Sequential Spelling[TM] trademarks and related marks, and the need to deter Defendants from similar conduct in the future, AVKO is entitled to punitive damages.

**COUNT IV**
**UNJUST ENRICHMENT**

84.      AVKO incorporates the allegations from the preceding paragraphs as if fully set forth herein.

85.     Defendants were unjustly enriched by the profits, benefits, and mistaken goodwill it acquired by the use of The Works, AVKO's Sequential Spelling[TM] trademarks and related marks in Defendants' marketing and sales efforts.

86.     Defendants' wrongful acts have impoverished and threaten to continue to injure AVKO, including by loss of revenue, loss of customers, dilution of goodwill, confusion of existing and potential customers, injury to its reputation, and diminution in the value of its trademarks.

87.     But for Defendants' wrongful acts, AVKO would not have lost revenue, lost customers, decreased goodwill, confusion, reputational injury, and diminution in the value of its trademarks.

88.     Defendants' wrongful acts were without AVKO's consent.

89.     AVKO has no adequate remedy at law and, if Defendants' activities are not

enjoined from future use, AVKO will continue to suffer irreparable harm and injury to its goodwill and reputation.

**COUNT V**
**ILLINOIS UNIFORM DECEPTIVE TRADE PRACTICES ACT**
**815 ILCS 510/1, *et seq.***

90.     AVKO incorporates the allegations from the preceding paragraphs as if fully set forth herein.

91.     Defendants' use of the Sequential Spelling$^{TM}$ trademarks and related marks on educational materials constitutes deceptive trade practices in violation of 815 ILCS 510/1 *et seq.* insofar as it:

> a.  Passes off AVKO's products as those of Defendants;
>
> b.  Causes a likelihood of confusion or misunderstanding as to the source, sponsorship, approval, or certification of Defendants' goods;
>
> c.  Causes a likelihood of confusion or of misunderstanding as to the affiliation, connection, or association with or certification by AVKO; and
>
> d.  Represents that Defendants' goods have sponsorship or approval as to the affiliation, connection, or association with or certification by AVKO.

92.     Defendants have willfully engaged in the deceptive trade practices alleged above.

93.     Defendants' aforesaid acts have caused and will continue to cause great and irreparable harm to AVKO, unless such acts are restrained by this Court.

94.     Defendants' statutory violations and other wrongful acts have injured and threaten to continue to injure AVKO, including loss of customers, dilution of goodwill, confusion of existing and potential customers, injury to its reputation, and diminution in the value of its trademarks.

95.     Defendants have realized revenue and profits by virtue of their wrongful acts that it otherwise would not have obtained and to which they are not entitled.

96.     AVKO has also been injured, and will continue to incur attorneys' fees and costs in bringing the present action.

97.     AVKO has no adequate remedy at law and, if Defendants' activities are not enjoined, AVKO will continue to suffer irreparable harm and injury to its goodwill and reputation.

## COUNT VI
## TORTIOUS INTERFERENCE WITH A BUSINESS RELATIONSHIP OR EXPECTANCY

98.     AVKO incorporates the allegations from the preceding paragraphs as if fully set forth herein.

99.     AVKO had and still has a reasonable likelihood of future economic benefit from the continued sales of its copyrighted works in this state and throughout the United States and Canada.

100.     Defendants know that AVKO sells and has sold The Works to customers in this state and throughout the United States and Canada.

101.     Upon information and belief, Defendants intentionally and improperly interfered with AVKO's business relationships by asserting that AVKO no longer owned The Works and thus could not provide a license to them.

102.     Defendants' products, website, and correspondence, including as described above, contains false and misleading statements, including that Wave 3 and/or Morrow own the copyrights and/or have an exclusive license to them.

103.     Upon information and belief, Wave 3's CEO has contacted distributors and

questioned AVKO's President's mental capacity and threatened litigation if they buy or sell AVKO's products.

104.     Upon information and belief, Defendants' false and misleading statements have influenced consumers' purchasing decisions in this District and elsewhere and have disrupted AVKO's sales to consumers, and will continue to do so unless enjoined.

105.     AVKO has suffered and will continue to suffer actual damages until Defendants' conduct is enjoined.

106.     As a result of Defendants' false and misleading statements, AVKO has suffered damages in the form of lost revenues, loss of existing and future customers, and lost business opportunities.

## COUNT VII
## DECLARATORY JUDGMENT OF COPYRIGHT OWNERSHIP

107.     AVKO incorporates the allegations from the preceding paragraphs as if fully set forth herein.

108.     Wave 3 has brought two lawsuits against AVKO, both dismissed (one voluntarily and one for lack of subject matter jurisdiction). Defendants have threatened to file another lawsuit over AVKO's copyrights.

109.     As a result, there is an actual and justiciable controversy between AVKO and Defendants as to who is the rightful owner of AVKO's copyrights.

110.     A judgment that AVKO owns the copyrights in The Works would settle the controversy and serve a useful purpose in clarifying the legal relations at issue.

111.     Such a resolution would not increase friction between the federal and state courts, nor would it improperly encroach upon state jurisdiction.

112.     There is no better or more effective remedy.

113.     AVKO has a legitimate and good faith interest in declaratory relief from the Court

that it is the sole owner of the copyrights in its products, and seeks a declaration to that effect.

## COUNT VIII
## DECLARATORY JUDGMENT OF TRADEMARK OWNERSHIP

114.     AVKO incorporates the allegations from the preceding paragraphs as if fully set

forth herein.

115.     Even after having their license revoked, Defendants continue to infringe AVKO's

Sequential Spelling$^{TM}$ trademarks and related marks.

116.     Defendants continue to maintain that they own AVKO's marks.

117.     As a result, there is an actual and justiciable controversy between AVKO and

Defendants as to who is the rightful owner of AVKO's trademarks.

118.     A judgment that AVKO owns the Sequential Spelling$^{TM}$ trademarks would settle

the controversy and serve a useful purpose in clarifying the legal relations at issue.

119.     Such a resolution would not increase friction between state and federal courts, nor

would it improperly encroach upon state jurisdiction.

120.     There is no better or more effective remedy.

121.     AVKO has a legitimate and good faith interest in declaratory relief from the Court

that it is the sole owner of the Sequential Spelling$^{TM}$ trademarks and related marks and seeks a

declaration to that effect.

## COUNT IX
## ACCOUNTING

122.     AVKO incorporates the allegations from the preceding paragraphs as if fully set

forth herein.

123.     Upon information and belief, Defendants have received and derived earnings, and

continue to receive and derive earnings, from their sales of The Works.

124. Upon information and belief, Defendants are receiving, and continue to receive, earnings from the use of AVKO's Sequential Spelling™ trademarks and related marks on an on-going basis, to which AVKO is entitled to all of the proceeds.

125. Defendants' acts have violated any license that may exist between the parties, and the common law of the State of Illinois; AVKO requests an audit and accounting of all revenues and earnings of sales by Defendants of AVKO's copyrighted educational materials.

126. Defendants' acts are causing irreparable injury to AVKO's rights. Plaintiff has no adequate remedy at law unless the Court orders an accounting of all revenues and earnings of Defendants' sales that use of AVKO's Sequential Spelling™ trademarks and related marks.

**COUNT X**
**BREACH OF CONTRACT**
**(IN THE ALTERNATIVE)**

127. AVKO incorporates the allegations from the preceding paragraphs as if fully set forth herein.

128. In the alternative, if either Defendant is found to be a party to or beneficiary of the 2010 Contract, then that Defendant materially breached the 2010 Contract.

129. In the alternative, if it is found that AVKO and Wave 3 and/or Thomas Morrow entered into a non-exclusive license based on a contract between AVKO and Home School Holdings, Inc., Wave 3 and/or Morrow materially breached the license.

130. In the alternative, if it is found that AVKO and Wave 3 and/or Thomas Morrow entered into a non-exclusive license based premised upon a different agreement between the parties, Wave 3 and/or Morrow materially breached that license.

131. If either Defendant is found to be a party to or beneficiary of the 2010 Contract or

a party to a different licensing agreement with AVKO, then that Defendant breached the contract

or license by failing to pay AVKO $600,000 in exchange for a license to AVKO's copyrighted

educational materials and by failing to pay AVKO ongoing royalties for the sale of its materials.

132. AVKO has complied with the terms of any contract or non-exclusive license.

Defendants have received other good and valuable services related to the 2010 Contract and/or a

license, but have materially breached the contract or license because they failed to pay AVKO

the remaining consideration under the contract or license.

133. In the alternative, Defendants also materially breached the 2010 Contract because

they do not sell every title of Sequential Spelling$^{TM}$.

134. In the alternative, as a result of Defendants' breach of a non-exclusive license,

AVKO has suffered damages in the form of lost licensing revenues to be determined at trial and

potential on-going royalties, loss of existing and future customers, and lost business

opportunities.

## COUNT XI
## PRELIMINARY INJUNCTION

135. AVKO incorporates the allegations from the preceding paragraphs as if fully set

forth herein.

136. Defendants knowingly acted in violation of any license(s) that may exist between

the parties by using AVKO's educational materials, including AVKO's Sequential Spelling$^{TM}$

trademarks and related marks, but refusing to pay AVKO any licensing fees and/or royalties.

137. Defendants knowingly infringed AVKO's intellectual property, including its

Sequential Spelling$^{TM}$ trademarks and related marks.

138. Upon information and belief, Defendants are selling and attempting to sell

AVKO's educational materials and/or similar reproductions of AVKO's educational materials.

139.    Upon information and belief, Defendants are using the Sequential Spelling<sup>TM</sup> trademarks and related marks causing consumer confusion and harming the goodwill that AVKO has developed in its trademarks.

140.    The aforesaid acts have caused AVKO irreparable harm.

141.    Upon information and belief, Defendants will continue to engage in these activities and will continue to cause irreparable harm to AVKO unless the Court issues a preliminary injunction.

142.     AVKO has a right to protect its interests and has no adequate remedy at law.

**REQUEST FOR RELIEF**

WHEREFORE, Plaintiff AVKO respectfully requests that this Court:

1.    Enter judgment in favor of AVKO on each of its claims;

2.    Preliminarily and permanently enjoin the Defendants and their predecessors, successors, divisions, subsidiaries, or joint ventures thereof, together with any and all parent or affiliated companies or corporations, and all officers, directors, employees, agents, attorneys, representatives, those acting in privity or concert with them, or on their behalf, from:

    a.    Continuing to use, in any manner whatsoever, AVKO's Sequential Spelling<sup>TM</sup> trademarks or any confusingly similar marks, including phonetic equivalents to sell educational materials;

    b.    Making in any manner whatsoever, any statement, indication, suggestion or representation, or performing any act likely to lead the public or individual members of the public to believe that the Defendants or any goods or services associated with Defendants, are directly or indirectly, associated, connected with, licensed, authorized, franchised or approved by AVKO or anyone associated with AVKO;

      c.      Representing that the Defendants have any rights to AVKO's copyrights, including ownership, license, or any other right;

      d.      Doing and engaging in any of the acts described above and directing the Defendants to conform with each and every provision of this prayer for relief;

3.      Enter an Order stating that AVKO is the sole owner of the copyrights at issue in this lawsuit;

4.      Enter an Order stating that AVKO is the sole owner of the trademarks at issue in this lawsuit;

5.      Enter an Order requiring that Wave 3 and/or Morrow cease use of the URL www.sequentialspelling.com and assign it to AVKO;

6.      Award AVKO its actual damages against the Defendants to be determined at trial;

7.      Award AVKO Defendants' profits from their aforementioned activities;

8.      Award AVKO statutory damages against the Defendants;

9.      Award AVKO punitive damages against the Defendants;

10.      Award AVKO all of its costs and reasonable attorneys' fees in this action as authorized by 15 U.S.C. § 1117;

11.      Award AVKO an accounting for damages and for all the profits together with those profits lost by AVKO due to the actions of the Defendants claimed herein for the Defendants' acts of Lanham Act infringement, unfair competition, unjust enrichment, and violations of the common law of the State of Illinois; and

12.      Grant to AVKO such other relief as may be just and warranted under the circumstances.

**JURY DEMAND**

Plaintiff AVKO hereby demands a jury trial on all issues so triable as provided by Rule 38(a) of the Federal Rules of Civil Procedure.

Dated: April 16, 2015                              Respectfully submitted,


                                                   By:/s/ Brian T. Noack
                                                   One of the attorneys for Plaintiff

                                                   Brian Noack
                                                   NOACK LAW
                                                   70 East Lake, Suite 1220
                                                   Chicago, Illinois 60601
                                                   P 239.671.1103
                                                   F 708.843.0509