# IN THE UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS-EASTERN DIVISION

| | |
|---|---|
| AVKO EDUCATIONAL RESEARCH FOUNDATION, INC., a Michigan nonprofit corporation,<br><br>            Plaintiff,<br><br>vs.<br><br>WAVE 3 LEARNING, INC., a Nevada corporation, AND THOMAS A MORROW, d/b/a SEQUENTIAL SPELLING,<br><br>            Defendants. | No. 15-cv-3393<br><br>Hon. James W. Darrah |

## DEFENDANT'S WAVE 3 LEARNING, INC.'S MOTION TO DISMISS COUNTS I-IX AND XI-XII OF PLAINTIFF'S COMPLAINT

Defendant Wave 3 Learning, Inc. ("Wave 3"), by and through its attorneys, respectfully move this Court to dismiss, pursuant to Fed. R. Civ. P. 12 (b)(6), Counts I-IX and XI-XII of Plaintiff's First Amended Complaint because they fail to allege viable claims upon which relief can be granted. Defendant has contemporaneously filing a Memorandum of Law.

WHEREFORE, for the foregoing reasons and reasons set forth in the accompanying Memorandum of Law, Defendant respectfully requests that this honorable Court grant Defendant's Motion to Dismiss Counts I-IX and XI-XII of Plaintiff's Complaint.

Respectfully submitted,

Date: July 31, 2015

/s/ Daliah Saper
Daliah Saper
Saper Law Offices, LLC
505 N. LaSalle Suite 350
Chicago, Illinois 60654
Attorney No.: 6283932
ds@saperlaw.com ▪ (312) 527-4100

# IN THE UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS-EASTERN DIVISION

| | |
|---|---|
| AVKO EDUCATIONAL RESEARCH FOUNDATION, INC., a Michigan nonprofit corporation,<br><br>            Plaintiff,<br><br>vs.<br><br>WAVE 3 LEARNING, INC., a Nevada corporation, AND THOMAS A MORROW, d/b/a SEQUENTIAL SPELLING<br><br>            Defendants. | No. 15-cv-3393<br><br>Hon. James W. Darrah |

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS

Defendant Wave 3 Learning, Inc. ("Wave 3"), by and through its attorneys, and in support of its Motion to Dismiss, state as follows:

## BACKGROUND

While this dispute is certainly complex, the dispositive issue is quite simple: AVKO Educational Research Foundation, Inc. ("AVKO") transferred to Wave 3 Learning, Inc. ("Wave 3") the exclusive rights to the Sequential Spelling copyrights ("The Works") in the United States and Canada as part of an agreement in which Thomas Morrow (d/b/a Wave 3 Learning) paid AVKO $50,000 and purchased $42,000 of inventory. While this agreement was clearly accepted by both parties in formal discussions and in writing, and even though AVKO certainly knew of and in fact originally encouraged Wave 3's commercialization and modernization of the Works, only when AVKO began disagreeing with Wave 3's commercialization strategies did AVKO claim that it never transferred any copyrights to Wave 3 and that Wave 3 breached the long-discarded terms of an earlier unsigned placeholder agreement. And not until the filing of this

lawsuit did AVKO claim that Wave 3 infringed on its Sequential Spelling trademark (the "Mark").

Since 1974, Don McCabe has sold a learning program called Sequential Spelling ("The Works") under the auspice of his AVKO Educational Research Foundation ("AVKO"). By 2009, due to his advancing age and health issues, McCabe sought out an outside entity to take over the commercialization of The Works. Rather than continuing to run day-to-day business operations, McCabe (and by extension AVKO) sought passive licensing income.

In May of 2009, McCabe met Thomas A. Morrow. At the time, Morrow was Chairman and CEO of Home School Holdings, Inc. ("HSH"), a home education company that was pursuing certification from the SEC to offer an IPO. Soon after their initial meeting, the two parties began discussing how HSH could take over the commercialization of The Works. After extensive negotiations (mostly between Morrow and McCabe), HSH and AVKO finally agreed in terms to a licensing deal. By that time, however, HSH had no money and its SEC certification was in doubt. Consequently, Morrow—in his individual capacity—paid AVKO the necessary funds and purchased the necessary inventory to initiate the deal. When it was clear that HSH would not be able to securely repay Morrow and that the company would not secure SEC certification, Morrow resigned from HSH and formed Wave 3 Leaning, Inc. to continue negotiating an agreement with AVKO. Although Wave 3 and AVKO used the HSH agreement ("the HSH Template") as a starting point for their deal, the two parties ultimately discarded most of those terms and instead agreed to a simpler exclusive license: whereas Wave 3 paid AVKO $50,000 and purchased $42,000 of inventory, AVKO granted Wave 3 the exclusive rights to The Works in the U.S. and Canada (and a nonexclusive license to all other countries). AVKO's signed October 2010 990 tax return memorialized this agreement and these terms.

Relying on this license and on AVKO's many representations and encouragements, over the next twelve months Morrow invested *in toto* his time, labor, and money into commercializing and modernizing The Works. With AVKO's full knowledge and assent, Wave 3 spent hundreds of thousands of dollars and thousands of man hours revising The Works, creating an IPad app, and running a marketing and promotional campaign. During this time, AVKO never contested and in fact assisted Wave 3 in developing, improving, and marketing The Works under the SEQUENTIAL SPELLING name. Also during this time, AVKO rejected Wave 3's two proposed agreements that tracked the HSH Template (which included a subscription agreement) as well as Wave 3's offer of promissory note in lieu of a subscription agreement. Upon rebuffing every reasonable attempt by Wave 3 to get an agreement in writing, did AVKO ever propose an acceptable agreement or even acceptable terms? It did not. Did AVKO demand that Wave 3 stop all activity related to The Works before an agreement in writing could be reached? It did not. Instead, AVKO convinced Wave 3 that such term were not necessary (that it could "maintain the status quo") and instructed Wave 3 to "spend [its] time and energy into . . . editing and printing the AVKO materials." Consequently, that is exactly what Wave 3 did.

As Wave 3 began developing and commercializing The Works, AVKO and McCabe began nitpicking and second-guessing Wave 3's business operations (such as Wave 3's answering machine, customer service, and advertising methods) and commercial strategies (such as making an iPad app and various product improvements). Initially a licensor, AVKO began acting like a franchisor.

Then, in January of 2011, Wave 3 discovered an individual was cybersquatting on the <sequentialspelling.com> domain name. Wave 3 accordingly instituted a UDRP proceeding against the cybersquatter to reclaim the domain name. To accelerate the UDRP proceeding,

3

Wave 3 sent AVKO an agreement (the "Trademark and Copyright Assignment Agreement") to *more clearly document* its exclusive license to use The Works and associated Sequential Spelling trademark. By that time, however, McCabe and AVKO were irreparably frustrated with Wave 3 and its commercial strategies. As a result, AVKO refused to sign the agreement and began demanding things like desk copies and speaking engagements that it never demanded before as well as objecting to terms like "copyright" that it never contested before. AVKO, however, did not object to the trademark terms of the agreement, did not object to Wave 3 filing the UDRP proceeding, and did not object to Wave 3's eventual acquisition and use of the <sequentialspelling.com> domain name.

Not until June 6, 2011 did AVKO's attorney send a demand letter to Wave 3 claiming that Wave 3 had infringed upon AVKO's copyright rights and had breached the HSH Template (the letter made no mention of trademarks). By that time, however, Wave 3 had already invested over $150,000 dollars over twelve months advertising, selling, and improving The Works.

*Eastern District of Michigan Litigation*

In 2011, AVKO filed a Petition for Injunctive Relief and Temporary Restraining Order in Genesee County, Michigan. This was denied. AVKO then filed a Complaint in the Saginaw County Circuit Court on July 29, 2011, which alleged, among other things, that Wave 3 Learning and Morrow infringed on AVKO's copyright in The Works. Defendants soon thereafter removed the suit to the Eastern District of Michigan. For AVKO, this litigation was a parade of horribles. In addition to AVKO's several blown deadlines and defaults, its quashed depositions, its falsified "stipulated" orders, and its phantom TRO bond, on April 5, 2013, the Eastern District of Michigan granted Wave 3 and Morrow's Motion for Summary Disposition, which resolved all of AVKO's causes of action in Wave 3 and Morrow's favor—including AVKO's claim of

4

copyright infringement. Thereafter, to expedite the resolution of the case, Wave 3 and Morrow voluntarily dismissed all of their counterclaims except for their defamation and tortious interference claims. Because Wave 3 and Morrow's only remaining claims were state-based causes of action, the judge dismissed the remaining counts without prejudice for lack of jurisdiction.

*Post-Michigan Litigation*

Following the Court's judgment, on June 11, 2013, AVKO sent a letter to Wave 3 stating—without explanation—that Wave 3 needed to "renew" the license recognized by Judge Ludington in the summary judgment, that Wave 3 was in breach of that license, that Wave 3 was "expressly forbidden to sell any of the works" until that breached was cured, and that if Wave 3 did not pay and initiate negotiations within ten days, AVKO would notify Wave 3's distributors that it was in breach of the license and that it "defi[ed]" Judge Ludington's order.

More than a half of a year later, on February 17, 2014, McCabe sent Wave 3 an email stating—again without any explanation—that Wave 3 was violating the "implied terms of Judge Ludington's licensing agreement" and that AVKO was "revoking Wave 3 Learning's license to reproduce and distribute" The Works. Soon thereafter, McCabe began sending emails to various distributors of Wave 3's products stating that "AVKO owns the copyrights to its materials" and requesting that the distributors purchase materials from AVKO instead of Wave 3.

*Northern District of Illinois Litigation*

On May 7, 2014, in response to AVKO's claims and emails to Wave 3's distributors, Wave 3 brought a civil action for declaratory judgment to determine its rights to the copyrights in The Works. Judge Kendall ultimately dismissed Wave 3's action (without prejudice) due to lack of subject matter jurisdiction because she believed that Wave 3's pleadings failed to

5

evidence sufficient ownership of the copyrights in The Works necessary to bring a lawsuit in federal court.

*Current Litigation*

After the dismissal of the declaratory judgment, AVKO proceeded to license The Works to third parties in the United States and elsewhere. AVKO dismissed Wave 3's demand to recognize its exclusive rights and proceeded to breach both the original HSH Template (by licensing The Works to others in the U.S. and Canada and by licensing The Works to others outside of the U.S. and Canada without Wave 3's approval or imbursement) and the Simpler Exclusive License (by licensing The Works to others in the U.S. and Canada). On April 16, 2013, AVKO filed the current action in the Northern District of Illinois. On May 18, AVKO filed an amended complaint.

**ARGUMENT**

The Court should dismiss Counts I-IX and XI-XII of Plaintiff's Complaint because they fail to state any claim upon which relief can be granted.

**I.     LEGAL STANDARD**

A Rule 12(b)(6) motion tests the sufficiency of the complaint. *Gibson v. City of Chicago*, 910 F.2d 1510, 1520 (7th Cir. 1990). To survive a Rule 12(b)(6) motion to dismiss, the claims must first comply with the Fed. R. Civ. P. 8(a) by providing a short and plain statement of the claim showing that the pleader is entitled to relief, Fed. R. Civ. P. 8(a)(2), such that the defendants are given "fair notice of what . . . claim is and the ground upon which it rests." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Second, the plaintiff must state a claim that is "plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Specifically, the plaintiff must plead enough "factual content [to] allow[] the court to draw the reasonable

inference that the defendant is liable for the misconduct alleged." *Id*. Although a plaintiff need not plead facts in the complaint to defeat potential affirmative defenses, where "the allegations of the complaint itself set forth everything to satisfy [an] affirmative defense," the plaintiff essentially pleads himself out of court. *Brooks v. Ross*, 578 F.3d 574, 579 (7th Cir. 2009); *see also Hecker v. Deere & Co.*, 556 F.3d 575, 588 (7th Cir.2009).

## II. THE COURT SHOULD DISMISS COUNTS I-IX and XI-XII OF PLAINTIFF'S COMPLAINT BECAUSE THE CLAIMS FAIL AS A MATTER OF LAW.

This lawsuit boils down to a single issue: a dispute about a licensing agreement. Indeed, all of Plaintiff's claims are merely reformulations of a copyright ownership question that turns upon the terms of that licensing agreement. As such, all other claims besides Plaintiff's breach of contract (Count X) should be dismissed with prejudice. Counts I-VI of Plaintiff's Complaint simply re-allege Plaintiff's copyright infringement claim (Count XII). The Court, therefore, should dismiss Count I-VI. Plaintiff's copyright infringement claim, moreover, in fact alleges a breach of contract claim. The Court, therefore, should dismiss with prejudice Count VII. Lastly, Plaintiff's declaratory judgment claims (Counts VII-VIII), accounting claim (Count IX), and injunction claim (Count XI) should be dismissed because the substantive suit (Count X) resolves the necessary issues and provides the necessary remedies at law. Accordingly, the Court should dismiss with prejudice Counts I-IX and XI-XII of Plaintiff's Complaint.

### A. PLAINTIFF'S CLAIMS I-VI SHOULD BE DISMISSED BECAUSE THEY ARE SIMPLY COPYRIGHT CLAIMS DRESSED UP AS AND ARE THUS PREEMPTED BY THE COPYRIGHT ACT.

The Copyright Act clearly and unambiguously preempts "all legal or equitable rights that are equivalent to any of the exclusive rights within the general scope of copyright . . . ." 17 U.S.C. § 301(a). This broad preemption was part of a carefully crafted Congressional decision to create a "single system of federal statutory copyright." H. Reports No. 1476, *reprinted at* 17

7

U.S.C. § 301. A claim is preempted by the Copyright Act where (1) the work is within the subject matter of copyright and (2) the rights available under state law are equivalent to any of the exclusive rights provided by § 106 the Copyright Act. *See ProCD, Inc. v. Zeidenberg,* 86 F.3d 1447, 1453 (7th Cir.1996) (citing 17 U.S.C. § 301(a)); *Baltimore Orioles, Inc. v. Major League Baseball Players Ass'n,* 805 F.2d 663, 674 (7th Cir.1986). To "avoid preemption, [the] law must regulate conduct that is quantitatively distinguishable from that governed by federal copyright law—i.e., conduct other than reproduction, adaption, publication, performance and display." *Pers. Keepsakes, Inc. v. Personalizationmall.com, Inc.*, No. 11 C 5177, 2012 WL 414803, at *8 (N.D. Ill. Feb. 8, 2012) (quoting *Toney v. L'Oreal USA, Inc.,* 406 F.3d 905, 910 (7th Cir.2005)). A right can be "equivalent" even if it requires additional elements to make out a cause of action, if those additional elements do not differ in kind from those necessary to avoid copyright infringement. *Baltimore Orioles,* 805 F.2d at 676–78. `

Here, Plaintiff's claims for federal unfair competition (I), federal false designation of origin (II), Illinois unfair competition (III), unjust enrichment (IV), deceptive trade practices (V), and tortious interference with business relationship or expectancy (VI) are all simply re-allegations of Plaintiff's copyright infringement claim under the guise of other claims. *See generally Defined Space, Inc. v. Lakeshore East, LLC,* 797 F.Supp.2d 896, 901-03 (N.D. Ill. 2011).

Beyond Plaintiff's naked legal conclusions, its claims rest on four factual allegations: (1) Wave 3 "claim[s] in its marketing that it h[olds] an exclusive license to the copyrights and trademarks in The Work;" (2) Wave 3's website expressly claims that Wave 3 has an exclusive license to The Works and uses the "Sequential Spelling" mark; (3) Defendants sell Sequential Spelling products and advertise that they have an exclusive license to The Works at trade shows

8

and other home-school and educational material outlets; and, (4) Wave 3 and/or Thomas Morrow exhibited materials using the Sequential Spelling name at The Midwest Homeschool Convention in Cincinnati. Even if taken to be true, however, these four allegations merely speak to Plaintiff's claim that Defendants lack the requisite license to sell and display the copyrighted "Sequential Spelling" works. *See CustomGuide v. CareerBuilder, LLC*, 813 F. Supp. 2d 990, 999 (N.D. Ill. 2011) (internal citations omitted) ("[C]onsumer confusion and deception . . . have been held to be inherently present in any copyright action and are therefore not considered extra elements that qualitatively alter the nature of a claim where they are asserted."). *See also Stromback v. New Line Cinema*, 384 F.3d 283, 300 (6th Cir. 2004) ("[F]or purposes of preemption, the scope of the Copyright Act's subject matter is broader than the scope of its protection."). Accordingly, Plaintiff's claims are preempted by the Copyright Act.

The facts in this case are closely analogous to the facts in *Natkin v. Winfrey*. 111 F. Supp. 2d 1003, 1014 (N.D. Ill. 2000). In *Natkin*, the plaintiffs claimed false designation of origin under the Lanham Act, unfair and deceptive business practices under the Illinois Deceptive Trade Practices Act, and unfair competition under Illinois common law based on the defendants' false claim to owning copyrights in certain photographs published and sold in defendant's book. *Id.* at 1013-14. Granting judgment in favor of the defendants, the court found that "although [the plaintiffs] are creative in arguing all the various harms they suffered as a result of [defendants'] alleged misuse of their photographs, they allege only a garden variety copyright violation." *Id.* at 1114. "At base," the court stated, plaintiffs "assert no more than that they own the copyrights to the pictures, the defendants published the pictures without their permission in violation of their copyrights, and the defendants falsely claimed copyrights in some of the pictures. *Id.* Thus, the court concluded that plaintiffs did "nothing more than

9

reallege their copyright claims under the guise of the Lanham Act and identical state law claims." *Id.*

Here, Plaintiff likewise merely alleges that Defendants claim ownership in the copyrights in question (i.e., that they have an exclusive license to The Works) and that Defendants sold The Works (invariably using the "Sequential Spelling" mark). Claims I-VI of Plaintiff's Complaint, therefore, do "nothing more than re-allege their copyright claims under the guise of the Lanham Act and identical state law claims." *Id.; see also Pers. Keepsakes, Inc. v. Personalizationmall.com, Inc.*, No. 11 C 5177, 2012 WL 414803, at *5 (N.D. Ill. Feb. 8, 2012) (dismissing plaintiff's federal unfair competition and false designation of origin claims as preempted by copyright law, stating that plaintiff's argument would "push the Lanham Act into the exclusive realm of copyright."); *Defined Space, Inc. v. Lakeshore East, LLC*, 797 F. Supp. 2d 896, 901-03 (N.D. Ill. 2011) (granting motion to dismiss Illinois Consumer Fraud and Deceptive Business Practices Act, Illinois Uniform Deceptive Trade Practices Act, and Common Law Unfair Competition claims as preempted by the Copyright Act); *Cyber Websmith, Inc. v. American Dental Ass'n*, 2010 WL 3075726, at *3 (N.D.Ill. Aug. 4, 2010 (dismissing Illinois Deceptive Trade Practices Act claim as preempted by Copyright Act); *Chicago Style Prods., Inc. v. Chicago Sun Times, Inc.*, 313 Ill. App. 3d 45, 50 (2000) (finding a claim under Illinois Consumer Fraud and Deceptive Business Practices Act preempted by the Copyright Act).

Plaintiff's other state claims should be dismissed for the same reasons. Plaintiff's unjust enrichment claim (Count IV) merely restates and repackages Plaintiff's copyright infringement claim because it is premised on Defendants not owning any rights and not being entitled to any royalties from the exercise of those rights. *See Igram v. Page*, No. 98 C 8337, 2000 WL 263707, at *4 (N.D. Ill. Feb. 28, 2000) (dismissing an unjust enrichment claim on copyright

preemption grounds where plaintiff did not incorporate "an extra element which is qualitatively different than that of copyright infringement"); *Vaughn v. Kelly*, No. 06 C 6427, 2007 WL 804694, at *4 (N.D. Ill. Mar. 13, 2007) (dismissing a claim of unjust enrichment claim in a matter involving R. Kelly because plaintiff's unjust enrichment claim was based on the "reproduction, distribution, performance, and display of [a] song and video.").

Plaintiff's tortious interference with business relationship or expectancy claim also merely restates and repackages Plaintiff's copyright infringement claim because Defendants' alleged tortious conduct merely involves Defendants' assertion of its exclusive rights. *See Stromback v. New Line Cinema*, 384 F.3d 283, 306 (6th Cir. 2004) ("Generally, tortious interference claims (with contract or prospective economic advantage) are held to be preempted because the rights asserted in such claims are not qualitatively different from the rights protected by copyright."); *Higher Gear Grp., Inc. v. Rockenbach Chevrolet Sales, Inc.*, 223 F. Supp. 2d 953, 959 (N.D. Ill. 2002) (holding that plaintiff's claim of tortious interference "asserts rights that are equivalent to federal copyright law and must be preempted"); *FASA Corp. v. Playmates Toys, Inc.*, 869 F. Supp. 1334, 1360 (N.D. Ill. 1994) (dismissing plaintiff's tortious interference claim as preempted by copyright law because it was "predicated on precisely the same conduct underlying its copyright infringement counts"); 1 Nimmer § 1.01[B][1][a].

By granting to Defendants an exclusive license to The Works in the U.S. and Canada, Plaintiff relinquished the right to license The Works to others. Because an exclusive license is considered a "transfer of rights," Defendants' statements of ownership or an exclusive license is correct and proper. Therefore, Defendants' notifying common distributors of its rights to The Works was also proper. Asserting its exclusive license against others is also clearly within its rights.

Plaintiff's claim that in an email (an email which was conveniently not attached to the Amended Complaint but which is nevertheless incorporated by reference into the Complaint) Defendant Morrow "questioned AVKO's President's mental capacity" is directly undermined by that email. *See Tellabs, Inc. v. Makor Issues & Rights, Ltd*., 551 U.S. 308, 322 (2007) (stating that, upon ruling on a motion to dismiss, the court may consider "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice."). On its face, the email conclusively shows that Defendant Morrow uses the term "loon" in a derogatory manner to mean "unreasonable" or "silly" and does not in any way assert a factual claim about McCabe's "mental capacity."

To be clear "[e]very act of copyright infringement by its nature involves some misrepresentation as to the identity of the author." *Chicago Style Prods., Inc. v. Chicago Sun Times, Inc.*, 313 Ill. App. 3d 45, 50 (2000) (citing *Balsamo/Olson Group, Inc. v. Bradley Place Ltd. Partnership,* 950 F.Supp. 896, 898 (C.D.Ill.1997)). "But this type of misrepresentation does not constitute a qualitatively distinct element that would remove the claim from the scope of copyright . . . 'an allegation of misrepresentation that is solely based in the alleged infringer's reproduction and sale of a work as its own creation does not qualitatively alter the nature of the infringement enough to remove the state claim from the preemptive scope of copyright law.'" *Chicago Style Prods., Inc. v. Chicago Sun Times, Inc.*, 313 Ill. App. 3d 45, 50, 728 N.E.2d 1204, 1208 (2000) (quoting *Goes Lithography Co. v. Banta Corp.,* 26 F.Supp.2d 1042, 1048 (N.D.Ill.1998)). Accordingly, the Court should dismiss or otherwise grant summary judgment in favor of Defendants for Counts I-VI because they simply restate and repackage Plaintiff's copyright claim.

B.  THE COURT SHOULD DISMISS PLAINTIFF'S COPYRIGHT INFRINGEMENT CLAIM (CLAIM XII) BECAUSE PLAINTIFF IN FACT ALLEGES A BREACH OF CONTRACT CLAIM.

A copyright owner who grants a license "ordinarily waives the right to sue licensees for copyright infringement, and it may sue only for breach of contract." *Sun Microsystems, Inc. v. Microsoft Corp.*, 188 F.3d 1115, 1121 (9th Cir. 1999) (internal quotations omitted). Only when the licensee breaches the contractual terms that limit a license's scope (the "conditions") does it commit copyright infringement. *Id.* at 1120; *Design Basics, LLC v. Chelsea Lumber Co.*, 977 F. Supp. 2d 714, 731-735 (E.D. Mich. 2013). Otherwise, the breach of all other contractual terms (the "covenants") are actionable only under contract law. *Sun*, 188 F.3d at 1121; *Design Basics*, 977 F. Supp. 2d at 731-735.

Here, it is undisputed that Plaintiff granted to Defendants a license to use The Works. *See* Compl. ¶ 46. Plaintiff simply alleges that Defendants breached certain covenants of that license and that it has the authority to revoke—and has since revoked—that license. Therefore, Plaintiff in fact alleges a breach of the licensing agreement, not a copyright infringement claim. *See Design Basic.*, 977 F. Supp. 2d at 734 (finding that "Plaintiff's claims that Defendants promoted or displayed its copyrighted work in violation of the[] license terms sound in breach of contract, not in copyright infringement"). Accordingly, the Court should dismiss Count XII.

C.  THE COURT SHOULD DISMISS PLAINTIFF'S DECLARATORY JUDGMENT, ACCOUNTING, AND INJUNCTIVE RELIEF CLAIMS (COUNTS VII, VIII, IX, AND XI) BECAUSE THEY ARE INAPPROPRIATE AND UNFOUNDED IN LIGHT OF PLAINTIFF'S BREACH OF CONTRACT CLAIM.

*1. Declaratory Judgment of Copyright Ownership*

"[F]ederal courts have discretion to decline to hear a declaratory judgment action, even though it is within their jurisdiction." *Amari v. Radio Spirits, Inc.*, 219 F. Supp. 2d 942, 944 (N.D. Ill. 2002) (quoting *Tempco Elec. Heater Corp. v. Omega Eng'g, Inc.,* 819 F.2d 746, 747

(7th Cir.1987)); 28 U.S.C. § 2201. The long-recognized purpose of the Declaratory Judgment Act is to "avoid the accrual of avoidable damages to one not certain of his rights and to afford him an early adjudication, without waiting until his adversary should see fit to begin suit, after damage has accrued." *M Credit, Inc. v. Cadlerock, L.L.C.,* 2003 WL 21800017, *2 (N.D.Ill.2003) *citing Nucor Corp. v. Aceros v Maquilas de Occidente. S.A. de C.V.,* 28 F.3d 572, 577 (7th Cir.1994). Indeed, a declaratory judgment is only appropriate where "a party desires a declaration of the legal effect of a proposed or past course of action," but any prospect of judicial resolution of the issue is uncertain or remote. *Wireless Mktg. Corp. v. Cherokee Inc.*, No. 98 C 1406, 1998 WL 719944, at *3 (N.D. Ill. Oct. 6, 1998) (quoting *Tempco,* 819 F.2d at 749).

Given this purpose, the courts have identified two related but distinct fact situations in which declaratory judgments are appropriate: "(1) The controversy has ripened to a point where one of the parties could invoke a coercive remedy (i.e. a suit for damages or an injunction) but has not done so; and (2) [a]lthough the controversy is real and immediate, it has not ripened to such a point, and it would be unfair or inefficient to require the parties to wait for a decision." *Tempco Elec. Heater Corp. v. Omega Engineering, Inc.,* 819 F.2d 746, 749 (7th Cir.1987); *see also Ell's Chicago Finest, Inc. v. Cheesecake Factory, Inc.,* 23 F.Supp.2d 906, 907–08 (N.D.Ill.1998).

Here, neither of these two scenarios applies. The first fact pattern does not apply because Plaintiff is "s[eeking] damages and injunctive relief through its multi-count complaint" and the second fact pattern does not apply because "the controversy has ripened, allowing [Plaintiff] to seek resolution through substantive claims." *Cooper v. Durham Sch. Servs.*, No. 03 C 2431, 2003 WL 22232833, at *6 (N.D. Ill. Sept. 22, 2003). Indeed, because "the substantive suit would resolve the issues raised by the declaratory judgment action, the declaratory judgment

14

action 'serve[s] no useful purpose' because the controversy has 'ripened' and the uncertainty and anticipation of litigation are alleviated." *Amari v. Radio Spirits, Inc.*, 219 F. Supp. 2d 942, 944 (N.D. Ill. 2002); *see also Associated Mills, Inc. v. Regina Co., Inc.,* 675 F.Supp. 446, 448 (N.D.Ill.1987) (holding that filing of infringement action "obviated the need for a declaratory judgment in this case"); *Wireless Marketing Corp. v. Cherokee, Inc.,* No. 98 C 1406, 1998 WL 719944, at *4 (N.D.Ill. Oct. 6, 1998) (same); *Edward E. Gillen Co. v. Elgin Riverboat Resort,* 1995 WL 153389 (N.D.Ill.1995) (dismissing declaratory judgment in breach of contract case). Therefore, the Court should dismiss with prejudice Plaintiff's copyright declaratory judgment claim.

*2. Declaratory Judgment of Trademark Ownership*

The Court should dismiss Plaintiff's trademark declaratory judgment claim with prejudice because, as explained above, there is no actual trademark dispute but only a copyright question that centers upon the terms of a licensing agreement. As such, there is no trademark "controversy" for the court to resolve. *Id.* Even if there was, moreover, Plaintiff's request for a declaratory judgment "fails to add anything that will not be decided by the other pending counts." *See Vulcan Golf, LLC v. Google Inc.,* 552 F.Supp.2d 752, 778 (N.D.Ill.2008); *see also Sarkis' Cafe, Inc. v. Sarks in the Park, LLC*, 55 F. Supp. 3d 1034, 1038 (N.D. Ill. 2014) (dismissing plaintiff's declaratory judgment because it a "serve[d] no useful purpose" and because "the controversy ha[d] 'ripened' and the uncertainty and anticipation of litigation [were] alleviated"); *Intercon Solutions, Inc. v. Basel Action Network,* 969 F.Supp.2d 1026, 1065 (N.D.Ill.2013) (internal citations and quotations omitted) (collecting cases); *S & A Futures, LLC--Series 2 v. Sysco Chicago, Inc.*, No. 11 C 7629, 2012 WL 851556, at *5 (N.D. Ill. Mar. 13,

2012) (dismissing plaintiff's declaratory judgment of trademark ownership). Therefore, the Court should dismiss with prejudice Plaintiff's trademark declaratory judgment claim.

*3. Accounting*

A plaintiff cannot bring an equitable accounting claim if he has an adequate remedy at law and the plaintiff has the burden of proof to show that no such remedy exists. *3Com Corp. v. Electronics Recovery Specialists, Inc.*, 104 F. Supp. 2d 932, 941 (N.D. Ill. 2000). If there is a remedy at law that will allow the plaintiff to recover, such as a breach of contract, then an accounting claim is inappropriate and should be dismissed. *See id.* at 941; *Oil Exp. Nat., Inc. v. Latos*, 966 F. Supp. 650, 652 (N.D. Ill. 1997). "The need to examine [a defendant's] business records is not a sufficient justification for an equitable accounting." *Oil Exp. Nat., Inc. v. Latos*, 966 F. Supp. 650, 652 (N.D. Ill. 1997) (citing *Zell v. Jacoby–Bender, Inc.,* 542 F.2d 34, 36 (7th Cir.1976)).

Here, Plaintiff's breach of contract claim provides an adequate remedy at law. *Oil Exp.*, 966 F. Supp. at 652. Plaintiff's Complaint, moreover, fails to plead an adequate explanation of why no such remedy exists. *3Com*, 104 F. Supp. 2d at 941. Accordingly, because Plaintiff has not sufficiently pled and cannot sufficiently plead that no adequate remedy at law exists, the Court should dismiss Plaintiff's accounting claim (Count IX) with prejudice.

*4. Injunctive Relief*

"Injunction is an equitable remedy, not a separate cause of action." *Walker v. Bankers Life & Cas. Co.*, No. CIV A 06 C 6906, 2007 WL 967888, at *4 (N.D. Ill. Mar. 28, 2007). Therefore, the Court should dismiss Plaintiff's preliminary injunction cause of action (Claim XI). *See CustomGuide v. CareerBuilder, LLC*, 813 F. Supp. 2d 990, 1002 (N.D. Ill. 2011) (dismissing

a standalone injunction claim brought in a copyright infringement suit because an injunction "is an equitable remedy, not a separate cause of action").

## CONCLUSION

This lawsuit is nothing more than a contract dispute, pure and simple. All other questions and claims emanate from this issue. Because Plaintiff's breach of contract claim (Count X) resolves all of the necessary issues and provides the necessary remedies at law, the Court should dismiss with prejudice Counts I-IX and XI-XII of Plaintiff's Complaint.

Respectfully submitted,

DEFENDANT,

WAVE 3 LEARNING, INC.

Dated: July 31, 2015

By: /s/ Daliah Saper
Daliah Saper

Daliah Saper
Matt Grothouse
Chad Nold
Saper Law Offices, LLC
505 N. LaSalle, Suite 350
Chicago, Illinois 60654
ds@saperlaw.com
(312) 527-4100

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on July 31st, 2015 the foregoing

**WAVE 3 LEARNING, INC.'S MOTION TO DISMISS & SUPPORTING MEMORANDUM**

was filed with the Clerk of Court using the CM/ECF system, which will then send a notification of such filings to the following counsel of record:

> Adam Wolek
> Brian Noack
> WOLEK & NOACK
> 70 East Lake, Suite 1220
> Chicago, Illinois 60601
> P 239.671.1103
> F 708.843.0509
>
> *Attorneys for Plaintiff.*

I certify that all parties in this case are represented by counsel who are CM/ECF participants.

> /s/ Daliah Saper
> Daliah Saper
> Matt Grothouse
> Chad Nold
> Saper Law Offices, LLC
> 505 N. LaSalle, Suite 350
> Chicago, Illinois 60654
> ds@saperlaw.com
> (312) 527-4100
>
> *Attorneys for Defendant.*