**UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| AVKO EDUCATIONAL RESEARCH FOUNDATION, INC., a Michigan nonprofit corporation, | ) ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Case Number: 15-cv-03393 |
| | ) | Judge: Hon. John W. Darrah |
| WAVE 3 LEARNING, INC., a Nevada corporation, and THOMAS MORROW, an individual d/b/a SEQUENTIAL SPELLING, | ) ) ) ) | **Oral Argument Requested (Expedited Hearing Requested)** |
| Defendants. | | |

**PLAINTIFF AVKO EDUCATIONAL RESEARCH FOUNDATION, INC.'S
MEMORANDUM OF LAW IN SUPPORT OF
ITS MOTION FOR PRELIMINARY INJUNCTION**

## TABLE OF CONTENTS

I. INTRODUCTION................................................................................................1

II. STATEMENT OF FACTS ................................................................................3

   A. AVKO and its *Sequential Spelling* Mark ...............................................3

   B. Defendants are Using the *Sequential Spelling* Trademark without Authorization .............4

      1. *Defendants Claim to Be Sequential Spelling*....................................4

      2. *Wave 3 Released a Faulty Software Application as Sequential Spelling Without Permission*..................................5

      3. *Defendants Used Praise Given to AVKO for Its Benefit* .................6

      4. *Consumers Have Complained About Wave 3-Produced Materials That Bear the Sequential Spelling Name*..................................6

   C. Prior Relations and Litigation Between the Parties Do Not Give Defendants a License to the *Sequential Spelling* Materials .........................7

      1. *The Parties' History Does Not Give Defendants Rights to Use the Sequential Spelling Trademark* ..................................7

      2. *Eastern District of Michigan Litigation* .........................................9

      3. *AVKO Explicitly Revoked Any Right for Wave 3 to Use the Sequential Spelling Trademark* ..................................9

      4. *The Short-Lived Northern District of Illinois Litigation* .............10

   D. AVKO is Being Irreparably Harmed Because Consumers and Potential Licensees are Being Confused and AVKO is Losing Brand Recognition.............................10

III. LEGAL STANDARD FOR PRELIMINARY INJUNCTIVE RELIEF ............11

IV. AVKO IS ENTITLED TO A PRELIMINARY INJUNCTION .........................12

   A. AVKO is Likely to Succeed on Its Federal Trademark Infringement and False Designation of Origin Claims .........................13

      1. *AVKO Owns the Sequential Spelling Trademark*...........................13

      2. Wave 3 *and Morrow's Use of Sequential Spelling is Likely to Cause Confusion with AVKO's Sequential Spelling Mark*..................................14

i

*a. Defendants Intended to Trade Off of AVKO's Mark* ........................................... 15

*b. Defendants Used the Same Trademark, Sequential Spelling* ......................................... 16

*c. Consumers are Actually Confused About the Origin or Sponsorship of Defendants' Educational Materials* ........................................... 16

*d. AVKO and Defendants Provide Closely-Related Services* ........................................... 17

*e. The Sequential Spelling Mark is a Strong Mark* ........................................... 18

*f. AVKO and Defendants Sell Their Products in the Same Market* ............................... 19

*g. Degree of Consumer Care* ........................................... 19

B.   AVKO is Likely to Succeed on Its Illinois State Law Claims ........................................... 20

C.   There is No Adequate Remedy at Law and AVKO is Likely to Suffer Irreparable Harm in the Absence of a Preliminary Injunction ........................................... 20

D.   The Balancing of Harms Tips in AVKO's Favor ........................................... 22

E.   It is in the Public Interest to Enjoin Misleading Designations ........................................... 23

F.   Defendants Never Had a License to *Sequential Spelling*, and Even If They Did, It Was Terminated ........................................... 24

G.   Because of the Strength of AVKO's case, a Bond Should be Waived ........................................... 25

V.   CONCLUSION ........................................... 26

# TABLE OF AUTHORITIES

*Statutes:*

15 U.S.C. § 1125(a).................................................................................................. 13


*Cases***:**

*Abbott Labs. v. Mead Johnson & Co.*, 971 F.2d 6 (7th Cir. 1992) ...................................... 12

*All Star Championship Racing, Inc. v. O'Reilly Auto. Stores, Inc.*, 940 F. Supp. 2d
    850 (C.D. Ill. 2013) ...................................................................................... 15

*Am. Broad. Co. v. Maljack Prods., Inc.*, 34 F. Supp. 2d 665 (N.D. Ill. 1998)..................... 20

*Am. Eagle Outfitters, Inc. v. Am. Eagle Furniture, Inc.*, No. 11 C 02242, 2013 WL
    6839815 (N.D. Ill. Dec. 27, 2013) ...................................................................... 14

*AutoZone, Inc. v. Strick*, 543 F.3d 923 (7th Cir. 2008) ..................................................15, 17-19

*AVKO Educ. Res. Found., Inc., et al. v. Morrow*, No. 11 CV 13381, 2013 WL
    1395824 (E.D. Mich. Apr. 5, 2013) ...................................................................... 7, 9

*Baldwin Piano, Inc. v. Deutsche Wurlitzer GMBH*, No. 03 C 2105, 2004 WL 46243
    (N.D. Ill. Jan. 7, 2004).................................................................................... 25

*Barbecue Marx, Inc. v. 551 Ogden, Inc.*, 235 F.3d 1041 (7th Cir. 2000) ........................... 13

*CAE, Inc. v. Clean Air Eng'g, Inc.*, 267 F.3d 660 (7th Cir. 2001) ...............................16, 17, 19

*Champion Roofing, Inc. v. Champion Window Mfg.*, No. 13 C 5478, 2013 WL
    6669476 (N.D. Ill. Dec. 16, 2013) ...................................................................... 12

*Church of Scientology Int'l. v. Elmira Mission of the Church of Scientology*, 794
    F.2d 38 (2d Cir. 1986) .................................................................................... 15

*Cigarette Racing Team, Inc. v. Donzi Marie Corp.*, No. 85 C 7947, 1985 WL 71995
    (N.D. Ill. Sept. 16, 1985)................................................................................. 20

*Consol. Labs., Inc. v. Shandon Sci. Co.*, 413 F.2d 208 (7th Cir. 1969) ............................. 25

*Country Inns & Suites By Carlson, Inc. v. 3 AM, LLC*, No. 14 CV 3126, 2014 WL
    5431621 (D. Minn. Oct. 24, 2014)...................................................................... 26

*D 56, Inc. v. Berry's, Inc.*, 955 F. Supp. 908 (N.D. Ill. 1997)........................................... 13

*Eli Lilly & Co. v. Natural Answers, Inc.*, 233 F.3d 456 (7th Cir. 2000) .......................... *passim*

*Engineered Abrasives, Inc. v. Am. Mach. Products & Serv. Inc.*, No. 13 C 7342,
2015 WL 1281460 (N.D. Ill. Mar. 18, 2015) ................................................ 20

*Gen. Elec. Co. v. Speicher*, 877 F.2d 531 (7th Cir. 1989) .................................... 16

*Gorenstein Enter., Inc. v. Quality Care-USA, Inc.*, 874 F.2d 431 (7th Cir. 1989) ............. 15, 25

*Hyatt Corp. v. Hyatt Legal Serv.*, 736 F.2d 1153 (7th Cir. 1984) ......................... 22

*Ideal Indus., Inc. v. Gardner Bender, Inc.*, 612 F.2d 1018 (7th Cir. 1979) ........................ 23

*Int'l. Kennel Club of Chi., Inc. v. Mighty Star, Inc.*, 846 F.2d 1079 (7th
Cir. 1988) ............................................................... 15, 16, 17, 22

*James Burroughs, Ltd. v. Sign of Beefeater, Inc*, 540 F.2d 266 (7th Cir. 1976) ................. 20

*Jespersen v. Minn. Mining & Mfg. Co.*, 183 Ill. 2d 290, 700 N.E.2d 1014 (1998) ............. 25

*Johnny Blastoff, Inc. v. L.A. Rams Football Co.*, 188 F.3d 427 (7th Cir. 1999) ................... 13

*Kraft Foods Grp. Brands LLC v. Cracker Barrel Old Country Store, Inc.*, 735 F.3d
735 (7th Cir. 2013) ................................................................ 21

*Lettuce Entertain You Enter., Inc. v. Leila Sophia AR, LLC*, 703 F. Supp. 2d 777
(N.D. Ill. 2010) .................................................................... 16

*Maxim's Ltd. v. Badonsky*, 772 F.2d 388 (7th Cir. 1985) .................................... 19

*Meridian Mut. Ins. Co. v. Meridian Ins. Grp., Inc.*, 128 F.3d 1111 (7th Cir.
1997) ................................................................... 13, 15, 16, 17

*Money Store v. Harriscorp Fin., Inc.*, 689 F.2d 666 (7th Cir. 1982) ................................. 14

*Morningware, Inc. v. Earthware Home Prods., Inc.*, 673 F. Supp. 2d 630 (N.D. Ill.
2009) ................................................................................ 20

*Ohio State Univ. v. Thomas*, 738 F. Supp. 2d 743 (S.D. Ohio 2010) ................................ 26

*Peaceable Planet, Inc. v. Ty, Inc.*, 362 F.3d 986 (7th Cir. 2004) ......................... 18

*Processed Plastic Co. v. Warner Commc'n., Inc.*, 675 F.2d 852 (7th Cir. 1982) ............... 21-22

*Promatek Indus., Ltd. v. Equitrac Corp.*, 300 F.3d 808 (7th Cir. 2002) .............................. 21

*Pure Imagination, Inc. v. Pure Imagination Studios, Inc.*, No. 03 C 6070, 2004
WL 2967446 (N.D. Ill. Nov. 15, 2004) ........................................... 14, 18

*Purepecha Enter., Inc. v. El Matador Spices & Dry Chiles*, No. 11 C 2569, 2012
WL 3686776 (N.D. Ill. Aug. 24, 2012) .......................................... 13-14

*Scherr v. Volpe,* 466 F.2d 1027 (7th Cir. 1972) .................................................... 25-26

*Stahly, Inc. v. M.H. Jacobs Co.*, 183 F.2d 914 (7th Cir. 1950) ............................. 24

*State Farm Mut. Auto. Ins. Co. v. Sharon Woods Collision Center, Inc.*, No. 07 CV 457, 2007 WL 4207158 (S.D. Ohio Nov. 26, 2007) ........................................ 26

*Stuller, Inc. v. Steak N Shake Enter., Inc.*, 695 F.3d 676 (7th Cir. 2012) ........... 11

*Sunsport Inc. v. Barclay Leisure Ltd.,* 984 F. Supp. 418 (E.D. Va. 1997) ........... 15

*Super Wash, Inc. v. Sterling*, No. 04 C 4618, 2006 WL 533362 (N.D. Ill. Mar. 2, 2006) ................................................................................................... 25

*Sylvan Learning Inc. v. Learning Solutions, Inc.*, 795 F. Supp. 2d 1284 (S.D. Ala. 2011) ............................................................................................... 26

*TracFone Wireless, Inc. v. Washington*, 978 F. Supp. 2d 1225 (M.D. Fla. 2013) .............. 26

*Ty, Inc. v. The Jones Grp., Inc.*, 237 F.3d 891 (7th Cir. 2001) .......................... *passim*

*Ty, Inc. v. GMA Accessories, Inc.*, 132 F.3d 1167 (7th Cir. 1997) ..................... 23

*Walthal v. Rusk*, 172 F.3d 481 (7th Cir. 1999) ................................................ 25

*Wave 3 Learning, Inc. v. AVKO Educ. Res. Found., Inc.*, No. 14 C 1948 (N.D. Ill. Mar. 19, 2014) ........................................ 10, 7 at n. 3, 10 at n. 6

**Secondary Sources:**

2 McCarthy on Trademarks and Unfair Competition §11:11 (4th ed.) .............................. 14

## STATEMENT OF THE CASE

Plaintiff AVKO Educational Research Foundation, Inc. ("AVKO") submits this

Memorandum in Support of its Motion For Preliminary Injunction against Defendants Wave 3

Learning, Inc. ("Wave 3") and Thomas Morrow ("Morrow") d/b/a Sequential Spelling

(collectively, "Defendants"):

## I.    INTRODUCTION

AVKO terminated any rights Defendants had to use the *Sequential Spelling* materials

after they failed to pay license fees and released unapproved and disastrous products.  Since at

least 1975, AVKO has used the *Sequential Spelling* trademark continuously on educational

materials.  The *Sequential Spelling* materials have gained acclaim across the education industry

as one of the best products to help teach kids and dyslexics how to read and spell.  Defendant

Wave 3 has even touted the *Sequential Spelling* materials as "the best spelling program in the

world, indeed the only spelling program that really works."  To expand its distribution of the

*Sequential Spelling* materials, AVKO struck agreements with various distributors, one of which

included a limited license to Home School Holdings, Inc. ("HSH").  After HSH went bankrupt,

Wave 3 took on an implied license that stemmed from that relationship.

When Defendants failed to pay at least $550,000 in licensing fees, and released

unapproved products, AVKO terminated all rights to use the *Sequential Spelling* mark and

materials.  But Defendants ignored that termination, continued to use the *Sequential Spelling*

mark without authority, and then inexplicably claimed it as their own product.  They further

released more unauthorized products that failed to meet basic quality standards under the

"Sequential Spelling" name.

Consumers complained to AVKO that these (Wave 3-made) "Sequential Spelling"

marked products had poor quality and functionality.  This actual consumer confusion is directly

1

hurting the goodwill AVKO developed in its *Sequential Spelling* mark. Furthermore, mismarked and unapproved tools can harm disabled children by improperly directing their study. By modifying and releasing unapproved products, Defendants are misleading parents and teachers – who rely on AVKO's *Sequential Spelling*'s reputation and goodwill – into mistakenly believing that they are getting AVKO's proven teaching techniques.

Accordingly, AVKO seeks a preliminary injunction to enjoin Defendants:

1.      From using, selling, transferring, assigning or licensing the *Sequential Spelling* mark without explicit authorization from AVKO;

2.      From marketing, holding themselves out as, or representing that they are the origin of, affiliated with, or endorsed or approved by *Sequential Spelling*;

3.      From representing that *Sequential Spelling* is not owned by AVKO;

4.      From using or disbursing revenues from *Sequential Spelling* marked materials in ways not explicitly authorized by AVKO; and

5.      From using the www.sequentialspelling.com website.

Plaintiff AVKO also seeks a preliminary injunction requiring Defendants:

a)      To deposit and direct all revenues, royalties and proceeds from the sale, transfer or use of *Sequential Spelling* marked materials to a trust or escrow account designated by this Court for the duration of this litigation; ***or at minimum,***

b)      To deposit or direct 50% of said revenues, royalties and proceeds to said trust or escrow account for the duration of this litigation.

2

II.     **STATEMENT OF FACTS**

      A.     **AVKO and its *Sequential Spelling* Mark**

AVKO Educational Research Foundation, Inc. is a 501(c)3 non-profit organization whose mission is to: (a) research the causes of reading and spelling difficulties in children and adults; (b) find solutions to these difficulties; and (c) disseminate its discoveries. McCabe Decl., at ¶ 4. In support of its mission, AVKO publishes educational materials for teaching dyslexic children and adults how to read. *Id.* at ¶¶ 3, 9. AVKO's president, Donald J. McCabe ("McCabe"), is the author of *To Teach a Dyslexic*, *Sequential Spelling*, *The Patterns of English Spelling*, *Word Families in Sentence Context*, and over forty different instructional and other reference materials, including derivative works (collectively, the "*Sequential Spelling* materials"). *Id.* at ¶ 5. In 1974, the then-existing materials including *Word Families*, *Word Families in Sentence Context*, *Reading via Typing*, the *AVKO Teacher's Manual*, and *Sequential Spelling 1-5*, were valued at $996,000. *Id.* at ¶ 6. The available *Sequential Spelling* materials have since significantly expanded and are now worth considerably more. *Id.* One estimate values AVKO's intellectual property at over two million dollars.

AVKO has used the *Sequential Spelling* mark continuously in interstate commerce since 1975 for its educational materials, and as its identity in its nationwide marketing and promotions.[1] *Id.* at ¶¶ 6-7. It sells its *Sequential Spelling* materials throughout the country in retail and online stores. *Id.* at ¶ 7. AVKO has invested substantial time, effort, and expense in advertising and promoting its services with the *Sequential Spelling* mark. *Id.* at ¶ 8. AVKO's brand recognition and its trademarks are some of its most valuable assets. *Id.* at ¶ 10.

*Sequential Spelling* marked materials have gained acclaim across the home schooling

---

[1] Donald McCabe transferred all existing rights in the materials to AVKO in 1975.

3

industry as one of the best products to help kids learn how to read as they learn how to spell. *Id.* at ¶ 9. They are particularly well known with those focused on dyslexic children and adults. *Id.* In fact, Defendants have proclaimed AVKO's *Sequential Spelling* materials as "the best spelling program in the world, indeed the only spelling program that really works!" Exh. A.

Through this use, AVKO has acquired an exclusive trademark in the *Sequential Spelling* mark for educational materials.

**B.    Defendants are Using the *Sequential Spelling* Trademark without Authorization**

AVKO did not authorize, and even expressly terminated any and all of Defendants' rights to use the *Sequential Spelling* mark, yet Defendants are still using the mark and claiming it as its own. Exhs. B; C; *see* McCabe Decl., at ¶ 11.

**1.    *Defendants Claim to Be Sequential Spelling***

Recently, Wave 3 and Morrow publicly stated that they are "Sequential Spelling." Exhs. A, C; McCabe Decl., at ¶¶ 12, 14-15. For instance, at a tradeshow on April 9 to 11, 2015, Morrow advertised that the "Sequential Spelling" company would present at The Midwest Homeschool Convention in Cincinnati. Exh. D, at 2; McCabe Decl., at ¶ 13. There, Morrow and/or Wave held themselves out as "Sequential Spelling." Exh. D. AVKO did not know about or authorize such use. McCabe Decl., at ¶¶ 15-16.

Defendants also claimed ownership of the website www.sequentialspelling.com and refuse to surrender it to AVKO. *Id.* at ¶ 14. They are further operating their business under the www.sequentialspelling.com website. *Id.*; Exhs. A, C. In fact, they represent that Wave 3 is the origin of *Sequential Spelling* on each page of their website, stating:

4



*Id.* Defendants further state "Welcome to the Home of Sequential Spelling and its associated products!" on the website's homepage. *See, e.g.*, Exh. A.

Defendants even went so far as claiming that "***Sequential Spelling copyrights and trademarks have been licensed exclusively to Wave 3 Learning, Inc. in perpetuity throughout the world***." *See, e.g.*, Exh. C (emphasis added). AVKO provided no such license to Wave 3, and Wave 3 does not have authority from AVKO to use the trademark. McCabe Decl., at ¶¶ 11, 16.

Defendants also sell materials with the *Sequential Spelling* trademark on other third-party websites, such as www.curriculumexpress.com. Exh. E. They have also used the *Sequential Spelling* trademark in advertising, promotion, and trade shows to sell their versions of the materials. Exhs. A, C, D. AVKO has not given Defendants authority to use or market any products with the *Sequential Spelling* trademark. McCabe Decl., at ¶¶ 11, 16.

        2.     *Wave 3 Released a Faulty Software Application as Sequential Spelling Without Permission*

Wave 3 released and named an unauthorized and poorly functioning software application for iPad tablets named "Sequential Spelling" (the "Sequential Spelling App"). *Id.* at ¶¶ 20, 42; Exh. F; Exh. G; and Exh. H. The "Sequential Spelling App" is sold on the iTunes website, and lists Wave 3 as the creator:

## Sequential Spelling
By Wave 3 Learning, Inc.
Open iTunes to buy and download apps.

Exhs. F, G, H.

Consumers have complained about the quality of the "Sequential Spelling App" on the iTunes review page. *See, e.g.*, Exh. H. They complained that the "[a]utomated voice [is] impossible to understand," "had crashing issues," "was not ready for students," and was "very digital sounding and I (parent) could hardly understand [it]," among other negative comments. *Id.*

### 3. *Defendants Used Praise Given to AVKO for Their Benefit*

Despite claiming it owns all rights to the *Sequential Spelling* trademark, Defendants cite articles that exclusively credit AVKO and McCabe for the creation and production of the *Sequential Spelling* materials. For instance, on the www.sequentialspelling.com website currently controlled by Defendants (Testimonials and Reviews page), Defendants cite and link reviews of *Sequential Spelling* products. Exh. I. However, **all** of the testimonials and reviews that Defendants cite and link **credit AVKO or McCabe** as the origin of *Sequential Spelling* products, not Wave 3. *See* Exh. J (Amazon.com reviews); Exh. K (homeschoolchristian.com review); Exh. L (HomeSchoolReviews.com review); Exh. M (review-homeschooling.com); Exh. N, at 2 (Sonlight.com review); Exh. O, at 2, 4 (RainbowResourceCenter.com review); Exh. P (cathyduffy.com review); and one link is inactive.

### 4. *Consumers Have Complained About Wave 3-Produced Materials That Bear the Sequential Spelling Name*

Third parties have also complained to AVKO about the quality of Wave 3's "Sequential Spelling" educational materials, and numerous users of Wave 3's "Sequential Spelling App"

posted poor public reviews.  Exh. H; McCabe Decl., at ¶¶ 18, 42.

Third parties have further contacted AVKO inquiring as to whether Wave 3 is affiliated or connected with AVKO.  McCabe Decl. at ¶ 20.  Thus, confusion is not merely likely here, it is actual and it is ongoing.

### C. Prior Relations and Litigation Between the Parties Do Not Give Defendants a License to the *Sequential Spelling* Materials

AVKO and Wave 3 have had a tumultuous relationship and have litigated various issues related to licensing and copyrights before the Eastern District of Michigan[2], which had concluded in May 2013, and briefly in the Northern District of Illinois[3].  The present litigation asserts acts performed by Wave 3 after the Michigan litigation ended.

Prior to the litigations, the parties had negotiated contracts, but the only agreement executed was between AVKO and Home School Holdings, Inc.  Exhibit Q (2010 Contract); McCabe Decl., at ¶¶ 22-23.  A District Court had found that Wave 3 had a limited implied license, however.  *See AVKO Educ. Res. Found., Inc., et al. v. Morrow*, No. 11 CV 13381, 2013 WL 1395824, at *11-12 (E.D. Mich. Apr. 5, 2013).  But after the E.D.M.I. litigation ended, Wave 3 failed to pay the licensing fees for the *Sequential Spelling* materials and AVKO terminated the license.  Exhs. B, R; McCabe Decl., at ¶¶ 36-38.

### 1. *The Parties' History Does Not Give Defendants Rights to Use the Sequential Spelling Trademark*

Donald McCabe first met Thomas Morrow ("Morrow"), the then-CEO of Home School Holdings, Inc. ("HSH"), at a tradeshow in May 2009.  McCabe Decl., at ¶ 21.  Shortly thereafter, AVKO and HSH entered into discussions for HSH to license the *Sequential Spelling* materials.

---

[2] *AVKO Educ. Res. Found., Inc. et al. v. Morrow et al.*, No. 1:11-cv-13381, (E.D. Mich. August 3, 2011).

[3] *Wave 3 Learning, Inc. v. AVKO Educ. Res. Found., Inc.*, No. 1:14-cv-01948 (ND Ill. March 19, 2014).

*Id.* at ¶ 22.

After a few weeks of negotiations, AVKO and HSH agreed on contract language that included an upfront payment for AVKO of $300,000, and a subsequent cash payment to AVKO for $300,000 (the "2009 Contract"). *Id.* However, the Parties never mutually-executed the 2009 Contract. *Id.*

AVKO and HSH executed a licensing agreement on June 4, 2010 to grant HSH a license for $600,000, ongoing royalties, and the other terms ("2010 Contract"). *Id.* at ¶ 23; Exh. Q. HSH paid AVKO $50,000, but failed to provide AVKO the required $250,000 cash-equivalent in HSH stock for the initial payment. McCabe Decl., at ¶ 24. Nor did HSH provide the remaining $300,000, or any ongoing royalties. *Id.*

On June 11, 2010, Morrow informed AVKO that HSH would no longer be able to fulfill the terms of the 2010 Contract. *Id.* at ¶ 25. Morrow then proposed a new contract to AVKO with similar terms to the 2010 Contract, but substituting Wave 3 for HSH. *Id.* at ¶ 26. Morrow's offer replaced the $250,000 in HSH stock with a 7.5% ownership stake in Wave 3, at the time valued at $1.50.[4] *Id.* AVKO declined the new offer. *Id.* On June 17, 2010, thirteen days after executing the 2010 Contract between HSH and AVKO, Morrow resigned as CEO of HSH. *Id.* at ¶ 27. The next day, Morrow started a new company, Wave 3 Learning, Inc. *Id.* at ¶ 28.

Morrow proposed three more contracts to acquire AVKO's trademarks and copyrights, none of which provided adequate compensation or reasonable terms to AVKO. *Id.* at ¶ 30. AVKO rejected them all. *Id.* Defendants further sent AVKO an assignment to transfer it all rights to the AVKO's trademarks. Exhs. R; S. AVKO again refused. Exh. R.

Wave 3 then sent an email to AVKO stating that it would sue unless AVKO agreed to

---

[4] Wave 3 did not exist at the time Morrow offered AVKO a 7.5% ownership.

assign its copyrights and trademarks to Wave 3 at no cost. *Id.* at ¶ 31. AVKO declined. *Id.* Despite AVKO not assigning its copyrights and trademarks to Wave 3, Wave 3 began claiming in its marketing that it held an exclusive license to the copyrights and trademarks in the *Sequential Spelling* materials. *Id.* at ¶ 32; *see, e.g.*, Exh. C.

### 2. *Eastern District of Michigan Litigation*

AVKO filed suit in Michigan after Wave 3 threatened to bankrupt it. *See AVKO Educ. Res. Found., Inc. et al. v. Morrow et al.*, No. 1:11-cv-13381, (E.D. Mich. August 3, 2011).[5] The District Court granted Wave 3's Motion for Summary Judgment stating that because it found an implied license between AVKO and Wave 3 at that time, Wave 3 did not commit copyright infringement. *AVKO, et al.*, 2013 WL 1395824. Despite the Court finding an implied license between the parties under the premise of the 2010 Contract, Wave 3 did not honor the 2010 Contract's required provisions. McCabe Decl., at ¶¶ 34-35. Indeed, despite continuing to use the *Sequential Spelling* mark, Wave 3 has not given AVKO any compensation for a license since the E.D. Mich. case ended. *Id.* at ¶ 36.

### 3. *AVKO Explicitly Revoked Any Right for Wave 3 to Use the Sequential Spelling Trademark*

AVKO emailed Wave 3 on May 2, 2013, and again on May 9, 2013, warning that a continued failure to pay the licensing fees would result in termination of the implied license; McCabe Decl., at ¶ 37. On June 11, 2013, AVKO formally terminated the license between the parties because neither HSH, Morrow nor Wave 3 had met the terms of the 2010 Contract and/or any other licensing terms to the *Sequential Spelling* materials. Exh. B; McCabe Decl., at ¶ 38. This termination revoked any rights, to the extent any existed, Defendants previously had in the *Sequential Spelling* materials. *Id.* Further, the District Court's decision did not give Morrow any

---

[5] The E.D. Mich. case was removed from state court.

9

rights in the *Sequential Spelling* trademark.  Yet Defendants continued using, distributing and

reproducing the *Sequential Spelling* materials, and making derivative works without paying for

them, all without authority from AVKO.  *Id.* at ¶ 39.  Defendants then claimed to own all rights

to the *Sequential Spelling* trademark and copyrights.  *See, e.g.*, Exh. C.

### 4.     *The Short-Lived Northern District of Illinois Litigation*

After AVKO informed Wave 3 that its rights were revoked, Wave 3 filed suit in the

Northern District of Illinois for declaratory judgment that it owns the copyrights in the

*Sequential Spelling* materials.  *Wave 3 Learning, Inc. v. AVKO Educ. Res. Found., Inc.*, No. 14 C

1948, 2015 WL 780091 (N.D. Ill. Mar. 19, 2014).  The Court dismissed the complaint because it

found no transfer of the copyrights from AVKO to Wave 3.[6]  *Id.*  Wave 3 then filed an amended

complaint, and attached an assignment it drafted allegedly transferring ownership of the

*Sequential Spelling* materials to Wave 3.  This "assignment" was from Morrow to Wave 3, and

was dated August 14, 2014; three years after the Michigan lawsuit was filed.  The Court again

dismissed Wave 3's complaint for lack of standing because Wave 3 had not shown it owned the

copyrights in the *Sequential Spelling* materials.  *Id.* at *3.  Two weeks later, Wave 3 threatened

AVKO that it would file a new lawsuit unless AVKO assigned its copyrights and trademarks to

Wave 3 at no cost.  AVKO declined to do so and then filed the instant lawsuit.  McCabe Decl., at

¶ 40.

### D.     **AVKO is Being Irreparably Harmed Because Consumers and Potential Licensees are Being Confused and AVKO is Losing Brand Recognition**

Consumers have complained to AVKO about products and their defects that were

---

[6] The Court noted that AVKO's tax notation on its 2010 990-EZ form, in which AVKO recorded
a prior partial payment for the 2010 Contract, "does not eliminate the need for a writing
transferring ownership of the copyrights to the *Sequential Spelling* materials to Wave 3 because
the writing is a statutory requirement."  *Wave 3 v. AVKO*, No. 1:14-cv-01948, Dkt. 38 at *3 (ND
Ill. Mar. 19, 2014).

released by Wave 3 under the *Sequential Spelling* mark. McCabe Decl., at ¶¶19-20, 42. Consumers have also left negative reviews of the "Sequential Spelling App" on the iTunes store. Exh. G.

AVKO is further suffering and losing business opportunities because numerous distributors, including Christian Book Store, refuse to do business with it because of Defendants' claims that they own the exclusive rights to the *Sequential Spelling* mark and materials. Additionally, other distributors, such as Inquisicorps, Inc. and Instructional Media Innovations, Inc., have delayed further negotiations for obtaining a publishing license until after the litigation ends. And now, AVKO is also missing the main home-school sales season, and the ability to prepare for next year's selling season. And if Wave 3 continues to use the *Sequential Spelling* trademark, consumers may associate the mark with Wave 3 and not AVKO.

Moreover, mismarked and unapproved tools can harm disabled children by improperly directing their study. By modifying and releasing unapproved products, Defendants are misleading parents and teachers who rely on *Sequential Spelling*'s reputation and goodwill and will mistakenly believe that they are getting AVKO's proven teaching techniques. This can impede children's learning and cause irreparable long-term learning gaps.

## III. LEGAL STANDARD FOR PRELIMINARY INJUNCTIVE RELIEF

A party seeking a preliminary injunction must show (1) that its case has some likelihood of success on the merits and (2) that it has no adequate remedy at law and will suffer irreparable harm if a preliminary injunction is denied. *Stuller, Inc. v. Steak N Shake Enter., Inc.*, 695 F.3d 676, 678 (7th Cir. 2012). If the moving party meets these threshold requirements, the District Court should also consider the irreparable harm that the nonmoving party will suffer if preliminary relief is granted, balancing such harm against the irreparable harm the moving party will suffer if relief is denied. *Id*. Finally, the Court must consider the potential effect on the

public interest (i.e. non-parties) in denying or granting the injunction. *Ty, Inc. v. The Jones Grp., Inc.*, 237 F.3d 891, 895 (7th Cir. 2001).

In the trademark infringement context, Plaintiffs only need a "better than negligible" chance of prevailing to meet the "some likelihood of success on the merits" standard. *Id*. at 897. A trademark infringement plaintiff is further ***presumed*** to have been irreparably harmed and to lack an adequate legal remedy. *Champion Roofing, Inc. v. Champion Window Mfg.*, No. 13 C 5478, 2013 WL 6669476, at *5 (N.D. Ill. Dec. 16, 2013); *Eli Lilly & Co. v. Natural Answers, Inc.*, 233 F.3d 456, 469 (7th Cir. 2000); *Abbott Labs. v. Mead Johnson & Co.*, 971 F.2d 6, 16 (7th Cir. 1992) (There is a "well-established ***presumption that injuries arising from Lanham Act violations are irreparable***, even absent a showing of a business loss") (emphasis added). Lastly, the balancing of irreparable harms is done on a sliding scale: the more likely the plaintiff will succeed on the merits, the less the balance of irreparable harms need favor the plaintiff's position. *See Ty v. The Jones Grp.*, 237 F.3d at 895.

## IV.     AVKO IS ENTITLED TO A PRELIMINARY INJUNCTION

AVKO has a strong likelihood of success on the merits for its trademark infringement and unfair competition claims, far surpassing the threshold level of "better than negligible" for the Court to grant injunctive relief.  As discussed below, Defendants use the same trademarks on the same goods.  AVKO thus faces substantial irreparable harm from Defendants' unauthorized and uncontrolled use of the *Sequential Spelling* mark.  This immediate, inevitable, and irreparable injury overshadows any inconvenience Defendants may experience from the entry of a preliminary injunction.  Finally, an injunction is needed to protect the public from deception and confusion. Accordingly, this Court should enter a preliminary injunction to prevent further irreparable harm to AVKO through Defendants' deteriorating its trademark rights.

12

A.    **AVKO is Likely to Succeed on Its Federal Trademark Infringement and False Designation of Origin Claims**

Defendants' use of the same mark on the same goods to the same customers is not only likely to confuse consumers about the origin of the *Sequential Spelling* mark, it already has caused confusion and harm.  Section 43(a) of the Lanham Act prohibits the use of a trademark that "is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person."  15 U.S.C. § 1125(a).  To establish trademark infringement, AVKO must show (1) ownership of a valid, protectable trademark, and (2) a likelihood of confusion caused by the defendant's use of its mark.  *Eli Lilly & Co.*, 233 F.3d at 461.  This same test governs AVKO's state law deceptive trade practice claims, unfair competition claims, and Illinois common law claims as well.  *See D 56, Inc. v. Berry's, Inc.*, 955 F. Supp. 908, 920 (N.D. Ill. 1997); *and see Meridian Mut. Ins. Co. v. Meridian Ins. Grp., Inc.*, 128 F.3d 1111, 1115 (7th Cir. 1997).  At the preliminary injunction stage, the threshold for establishing a likelihood of success on the merits for trademark infringement is low, and AVKO need only "show a greater than negligible chance of prevailing on the merits of the underlying infringement claim." *Barbecue Marx, Inc. v. 551 Ogden, Inc.*, 235 F.3d 1041, 1043 (7th Cir. 2000).  AVKO meets both elements here.

1.    *AVKO Owns the Sequential Spelling Trademark*

AVKO has used the *Sequential Spelling* mark continuously in interstate commerce since 1975.  *See Johnny Blastoff, Inc. v. L.A. Rams Football Co.*, 188 F.3d 427, 434 (7th Cir. 1999) ("party who first appropriates the mark through use, and for whom the mark serves as an identification of source, acquires superior rights to it"); *Purepecha Enter., Inc. v. El Matador Spices & Dry Chiles*, No. 11 C 2569, 2012 WL 3686776, at *9 (N.D. Ill. Aug. 24, 2012)

13

("whether a party has a protectable interest in a trademark is established by the first actual use of the mark in commerce"). As a result of such use, AVKO has acquired exclusive and enforceable common law rights in the *Sequential Spelling* mark for educational materials.

The *Sequential Spelling* mark further is valid and protectable because it is an arbitrary or suggestive mark. *See Pure Imagination, Inc. v. Pure Imagination Studios, Inc.*, No. 03 C 6070, 2004 WL 2967446, at *4 (N.D. Ill. Nov. 15, 2004) ("Suggestive, arbitrary, and fanciful marks…are inherently distinctive and do not require any proof of secondary meaning."). Indeed, the *Sequential Spelling* mark does not describe any ingredient, quality, or characteristic of AVKO's products. *See Am. Eagle Outfitters, Inc. v. Am. Eagle Furniture, Inc.*, No. 11 C 02242, 2013 WL 6839815, at *6 (N.D. Ill. Dec. 27, 2013) ("arbitrary mark 'neither describes nor suggests [a] product or service'"); *see also* 2 McCarthy on Trademarks and Unfair Competition §11:11 (4th ed.) ("Arbitrary marks comprise those words…that are in common linguistic use but which, when used with the goods or services in issue, neither suggest nor describe any ingredient, quality or characteristic of those goods or services."). If found to not be arbitrary, then the *Sequential Spelling* mark is at least a suggestive mark because it "requires the observer or listener to use imagination and perception to determine the nature of the goods." *Money Store v. Harriscorp Fin., Inc.*, 689 F.2d 666, 673-74 (7th Cir. 1982) (a mark is suggestive "if it stands for an idea which requires some imagination to connect it with the goods.").

Accordingly, because AVKO used the *Sequential Spelling* mark in commerce first it owns the mark, and because it is either an arbitrary or suggestive mark, it is valid and protectable.

### 2. *Wave 3 and Morrow's Use of Sequential Spelling is Likely to Cause Confusion with AVKO's Sequential Spelling Mark*

Defendants' use of the *Sequential Spelling* mark in connection with educational materials is likely to cause confusion among consumers; indeed, it is actually confusing consumers now.

14

Courts weigh seven factors to evaluate likelihood of confusion: (1) defendant's intent; (2) similarity of the marks; (3) whether actual confusion exists; (4) similarity of the goods; (5) strength of the movant's mark; (6) area and manner of concurrent use; and, (7) degree of care likely to be exercised by consumers. *Meridian Mut. v. Meridian Ins.*, 128 F.3d at 1115. Each of the factors can be assigned varying weight depending on the facts. *Int'l. Kennel Club of Chi., Inc. v. Mighty Star, Inc.*, 846 F.2d 1079, 1084 (7th Cir. 1988). However, intent of the defendant, similarity of the marks, and evidence of actual confusion are "particularly important." *AutoZone v. Strick*, 543 F.3d at 929; *Eli Lilly & Co.*, 233 F.3d at 462 (same). All of the likelihood of confusion factors favor AVKO, including the "particularly important" factors of Defendants' intent, similarity of the marks, and presence of actual confusion.

a.  *Defendants Intended to Trade Off of AVKO's Mark*

Intent to confuse is inferred where junior user was previously a licensee of the mark owner. *All Star Championship Racing, Inc. v. O'Reilly Auto. Stores, Inc.*, 940 F. Supp. 2d 850, 860 (C.D. Ill. 2013) ("The likelihood of confusion exists as a matter of law if a licensee continues to use marks owned by the licensor after termination of the license."); *Church of Scientology Int'l. v. Elmira Mission of the Church of Scientology*, 794 F.2d 38, 44 (2d Cir. 1986) (same); *Gorenstein Enter., Inc. v. Quality Care-USA, Inc.*, 874 F.2d 431, 435 (7th Cir. 1989) ("If the owner of the trademark has broken off business relations with a licensee…[the licensee's] continued use of the trademark is therefore a violation of trademark law"); *Sunsport Inc. v. Barclay Leisure Ltd.,* 984 F. Supp. 418, 422 (E.D. Va. 1997) ("[A] former licensee who continues to use the licensor's mark…has to overcome the presumption that it has infringed.").

Defendants intentionally chose the *Sequential Spelling* mark knowing that AVKO was the prior user. In fact, Defendants previously licensed this same trademark before AVKO terminated their license. Tellingly, Defendants even advertise on the

15

www.sequentialspelling.com website that these are originally AVKO's products. *See* Exhs. I, J, K, L, M, N, O, P. For instance, Defendants cite in their own "Testimonials" section articles that only reference AVKO and McCabe as the originators and owners of *Sequential Spelling*. *Id.*

Therefore, because Defendants used the exact same mark, are former licensees and were aware of the mark, and because they sell the same products, Defendants used and continue to use the mark intentionally. This factor accordingly heavily favors AVKO.

    b.  *Defendants Used the Same Trademark, Sequential Spelling*

The marks here are identical. *Gen. Elec. Co. v. Speicher*, 877 F.2d 531, 534 (7th Cir. 1989) ("the danger of confusion is even greater because the 'imitation is not merely colorable, but perfect.'"); *CAE, Inc. v. Clean Air Eng'g, Inc.*, 267 F.3d 660, 678 (7th Cir. 2001) (identical marks create "no genuine issue of material fact about the similarity" and therefore "favor [] finding a likelihood of confusion."). Here, there is no dispute that the marks are identical. Defendants use the exact same *Sequential Spelling* mark as AVKO, so therefore there is a greater "danger of confusion." Accordingly, this factor also weighs heavily in favor of AVKO.

    c.  *Consumers are Actually Confused About the Origin or*
       *Sponsorship of Defendants' Educational Materials*

Where actual confusion exists, courts give this factor substantial weight. *Lettuce Entertain You Enter., Inc. v. Leila Sophia AR, LLC*, 703 F. Supp. 2d 777, 788 (N.D. Ill. 2010); *Int'l. Kennel Club*, 846 F.2d at 1090 (even a few instances of actual confusion may be considered highly probative of a likelihood of confusion); *Meridian*, 128 F.3d at 1118 ("while very little proof of actual confusion would be necessary to prove the likelihood of confusion, an almost overwhelming amount of proof would be necessary to refute such proof."). Here, third parties have been confused as to whether a relationship exists between AVKO and Defendants due to Defendants' use of the *Sequential Spelling* mark McCabe Decl., ¶¶ 19-20, 41.

Furthermore, consumers have complained to AVKO that the "Sequential Spelling products" that Defendants produced were of inferior quality.  McCabe Decl., ¶¶ 19-20, 41; *Int'l. Kennel Club*, 846 F.2d at 1089 ("There can be no more positive or substantial proof of the likelihood of confusion than proof of actual confusion.").  Consumers even posted complaints about the Wave 3-produced "Sequential Spelling" product on the iTunes reviews stating they will not purchase any further products from "Sequential Spelling."  Exh. H.  Accordingly, this factor weighs heavily that there is likelihood of confusion because, as here, incidents of actual confusion exist.

d.       *AVKO and Defendants Provide Closely-Related Services*

The more similar the parties' services, the more likely infringement will be found.  *See AutoZone*, 543 F.3d at 931 (finding that because there was some direct overlap between plaintiff's products and defendant's services, a reasonable consumer could conclude from the relatedness of the goods and services that the marks were attributable to a single source); *Meridian*, 128 F.3d at 1116.  A likelihood of confusion may exist even if the parties are not in direct competition, or their products and services are not identical.  *CAE, Inc.*, 267 F.3d at 679 (trademark rights "extend to any goods that might be, in the minds of consumers, 'related,' i.e., put out by a single producer," or "whether the public is likely to attribute the products and services to a single source.").[7]  Similar marks on closely related products or services are protected to allow the owner to enter new markets that it might reasonably be expected to expand in the future.  *Id.* at 681.

As noted above, the *Sequential Spelling* marks are associated with a wide variety of education-related goods, including teaching and reference materials.  The parties' respective

_____

[7] *See also Int'l. Kennel Club,* 846 F.2d at 1089 (agreeing that the plaintiff's service of promoting and sponsoring dog shows was sufficiently related to the defendant's dog-toy products to cause confusion).

services are exactly the type that would reasonably be thought by the buying public to come from the same source. Like the parties' services in *International Kennel Club* and *AutoZone*, both AVKO's and Defendants' respective goods and services are directed to similar classes of potential purchasers – namely, educators, parents, and homeschoolers. Further, the goods and services are both sold in the same trade channels, mainly online stores and stores that target the same education audience. *See* McCabe Decl., ¶¶ 7, 43-44.

Thus, because AVKO and Defendants offer closely related education materials that substantially overlap, this factor weighs heavily in favor of a grant of injunctive relief.

> e. *The Sequential Spelling Mark is a Strong Mark*

"The stronger the mark, the more likely it is that encroachment on it will produce confusion." *AutoZone*, 543 F.3d at 933. The strength of a trademark "refers to the distinctiveness of the mark, or more precisely, its tendency to identify the goods sold under the mark as emanating from a particular…source." *Eli Lilly & Co.*, 233 F.3d at 464.

As discussed above, the *Sequential Spelling* mark is a strong mark and inherently distinctive because it is arbitrary, or if not arbitrary, then suggestive. *See Pure Imagination, Inc.*, 2004 WL 2967446, at *4 ("Suggestive, arbitrary, and fanciful marks…are inherently distinctive and do not require any proof of secondary meaning."). Suggestive marks are also considered strong marks and secondary meaning does not need to be shown. *See id.* at *8; *see also Peaceable Planet, Inc. v. Ty, Inc.*, 362 F.3d 986, 991 (7th Cir. 2004) ("Suggestive marks are protected by trademark law without proof of secondary meaning."). Regardless of whether the mark is arbitrary or suggestive, AVKO has invested substantial time, effort, and expense in the *Sequential Spelling* mark. It identifies AVKO's primary line of products, and is used throughout AVKO's marketing, advertising and promotion for its products throughout the U.S., including on its website. McCabe Decl., ¶ 5. Because the *Sequential Spelling* mark is arbitrary or suggestive,

18

and because AVKO's extensive use of the *Sequential Spelling* mark has reinforced that education products and services offered under the *Sequential Spelling* mark originate from a single source, AVKO, this factor favors AVKO.

      f.  *AVKO and Defendants Sell Their Products in the Same Market*

  The "area and manner of concurrent use" inquiry assesses "whether there is a relationship in use, promotion, distribution, or sales between the goods or services of the parties." *AutoZone*, 543 F.3d at 932 (quotations omitted). In determining whether the area and manner of concurrent use between two marks is likely to cause confusion, courts may consider: (1) the geographic distribution areas; (2) evidence of direct competition between the products; and, (3) whether the products are sold through the same marketing channels. *Ty v. The Jones Grp.*, 237 F.3d at 900.

  Both AVKO and Defendants offer similar goods to similar consumers throughout the U.S. Both ship products to all 50 states. Both promote and sell their goods online using similar sites. And both compete for similar store space and marketing (e.g. Timberdoodle). Thus, this factor supports a finding of likelihood of confusion.

      g.  *Degree of Consumer Care*

  Consumers who buy educational products in AVKO's industry are not likely to exhibit a large degree of care because the cost of the products is not very high. *See CAE, Inc.*, 267 F.3d at 683 ("The more widely accessible and inexpensive the products and services, the more likely it is that consumers will exercise a lesser degree of care and discrimination in their purchases," and thus the more likely they will be confused); *see also Maxim's Ltd. v. Badonsky*, 772 F.2d 388, 393 (7th Cir. 1985) ("[W]here the product involved was a low value item, the risk of confusion is greater 'because purchasers are unlikely to complain when dissatisfied, which would bring to light confusion; but rather they are likely simply to avoid all products produced by the company which they believe produced the product which caused the trouble.'") (citation omitted). Here,

no imagination is necessary: actual consumer confusion has resulted from Defendants' use of the *Sequential Spelling* mark. And because it is the same name, and because the products are relatively inexpensive, consumers may not be able to distinguish the products' authenticity even with great care. Thus, this factor favors AVKO as well.

**B.      AVKO is Likely to Succeed on Its Illinois State Law Claims**

In Illinois, courts resolve state law unfair competition and deceptive trade practices claims "according to the principles set forth under the Lanham Act." *Morningware, Inc. v. Earthware Home Prods., Inc.*, 673 F. Supp. 2d 630, 639 (N.D. Ill. 2009) ("Where a plaintiff's factual allegations under the Illinois Uniform Deceptive Trade Practices Act also form the basis for plaintiff's claims under the Lanham Act, the legal inquiry is the same under both statutes."); *Cigarette Racing Team, Inc. v. Donzi Marie Corp.*, No. 85 C 7947, 1985 WL 71995, at *9 (N.D. Ill. Sept. 16, 1985) ("The same conduct…under 43(a) also necessarily constitutes unfair competition and common law trademark infringement."); *James Burrough, Ltd. v. Sign of Beefeater, Inc*, 540 F.2d 266, 274 n. 16 (7th Cir. 1976); *Am. Broad. Co. v. Maljack Prods., Inc.*, 34 F. Supp. 2d 665, 681 (N.D. Ill. 1998) (Likelihood of confusion is similar under the Lanham Act and the Illinois Deceptive Trade Practices Act). Because AVKO has established a likelihood of success on the merits of its trademark infringement and false designation of origin claims against Defendants, and because the legal standards are the same under Illinois state law, AVKO has established a likelihood of success on the merits for its Illinois unfair competition and deceptive trade practices claims as well.

**C.      There is No Adequate Remedy at Law and AVKO is Likely to Suffer Irreparable Harm in the Absence of a Preliminary Injunction**

"[I]njuries arising from Lanham Act violations are presumed to be irreparable, even if the plaintiff fails to demonstrate a business loss." *Engineered Abrasives, Inc. v. Am. Mach. Products*

& *Serv. Inc.*, No. 13 C 7342, 2015 WL 1281460, at *8 (N.D. Ill. Mar. 18, 2015) (*citing Promatek Indus., Ltd. v. Equitrac Corp.*, 300 F.3d 808, 813 (7th Cir. 2002)); *also citing Kraft Foods Grp. Brands LLC v. Cracker Barrel Old Country Store, Inc.*, 735 F.3d 735, 741 (7th Cir. 2013) ("[I]rreparable harm is especially likely in a trademark case…")); *see also Processed Plastic Co. v. Warner Commc'n., Inc.*, 675 F.2d 852, 858 (7th Cir. 1982) (trademark infringement causes irreparable harm).

Because Defendants are using AVKO's *Sequential Spelling* trademark, AVKO will be irreparably harmed if the Court does not grant a preliminary injunction. Without an injunction, consumers will continue to be confused as to whether Defendants and AVKO are the same company or are somehow affiliated. *See, e.g.*, Exh. H; McCabe Decl., ¶ 42. Indeed, this has already happened on at least several occasions of which AVKO is aware. Moreover, AVKO has no way of identifying those other consumers who have been confused by Defendants' use of the *Sequential Spelling* mark.

Further, mismarked and unapproved materials can harm disabled children and adults by improperly directing their study and degenerating their reading capabilities. By modifying and releasing unapproved products, Defendants are misleading parents who rely on *Sequential Spellings*' reputation and goodwill and will mistakenly believe that they are getting AVKO's proven teaching techniques. This can impede children's learning and could cause irreparable long-term learning gaps.

AVKO is also suffering and losing business opportunities because numerous distributors refuse to do business with it because of Defendants' claims that they own the exclusive rights to the *Sequential Spelling* mark and materials, and are fearful that they will be sued by Defendants if they do. *See, e.g.*, Exh. C.

The only way to prevent such irreparable harm is to enjoin Defendants from continuing to use the *Sequential Spelling* mark. Indeed, the difficulty in proving damages resulting from trademark infringement is widely recognized. *See Hyatt Corp. v. Hyatt Legal Serv.,* 736 F.2d 1153, 1158 (7th Cir. 1984) ("'[T]here is no effective way to measure the loss of sales or potential growth – to ascertain the people who don't knock on the door or to identify the specific persons who do not [return] because of the existence of the infringer.'") (citation omitted). Irreparable harm also results from the difficulty of computing lost sales and the plaintiff's lack of control over what consumers are likely to perceive to be plaintiff's goods. *See Processed Plastic*, 675 F.2d at 858 ("[t]he most corrosive and irreparable harm attributable to trademark infringement is the inability of the victim to control the nature and quality of the defendant's goods"); *Int'l. Kennel Club*, 846 F.2d at 1092 (damages caused by trademark infringement are "by their very nature irreparable and not susceptible of adequate measurement for remedy at law"). For these reasons, AVKO has no adequate remedy at law and will continue to suffer irreparable harm if the Court does not grant a preliminary injunction.

### D.     The Balancing of Harms Tips in AVKO's Favor

AVKO has invested substantial time and resources in the development of its brand and reputation. And now, Defendants' use of the *Sequential Spelling* mark is causing AVKO to lose control of the valuable goodwill it has developed in the *Sequential Spelling* mark. The substantial and irreparable harm that AVKO will continue to suffer due to Defendants' infringement outweighs any harm that Defendants may suffer if they are prevented from continuing their infringement of AVKO'S *Sequential Spelling* mark.

Courts within this Circuit apply a "sliding scale" approach to the balancing of irreparable harms. *See Ty v. The Jones Grp.*, 237 F.3d at 895-96. The more likely the plaintiff is to succeed on the merits, the less the balance of harms need favor plaintiff's position. *See id.* at 903-04.

22

Where, as here, the plaintiff has demonstrated a strong case on the merits as well as ongoing, irreparable harm, the balance tips heavily towards granting injunctive relief. *Ty, Inc. v. GMA Accessories, Inc.*, 132 F.3d 1167, 1172 (7th Cir. 1997).

AVKO has used the *Sequential Spelling* mark for over 40 years, while Defendants only recently adopted its use. The potential harm to Defendants caused by an injunction is the cost of removing the *Sequential Spelling* mark from its website and advertising materials. The cost will be minor to Defendants because they only recently adopted the *Sequential Spelling* mark. And as the Seventh Circuit states, "[o]ne entering a field already occupied by another has a duty to select a trademark that will avoid confusion." *Ty v. The Jones Grp.*, 237 F.3d at 903 (*quoting Ideal Indus., Inc. v. Gardner Bender, Inc.*, 612 F.2d 1018, 1026 (7th Cir. 1979)). Thus, when assessing the harm to the alleged infringer, "the court excludes the burden [the alleged infringer] voluntarily assumed by proceeding in the face of known risk." *Id*. Because Defendants are using the exact same mark on the same products, and in view of the widespread use and notoriety of the *Sequential Spelling* mark in its field, and because Defendants themselves had previously licensed the mark, Defendants knew of the *Sequential Spelling* mark and decided to use it anyway. They voluntarily chose to take that risk. Thus, any financial burden alleged by Defendants should be excluded from this Court's analysis.

Further, the injunction sought by AVKO will not prevent Defendants from continuing to provide its products and services – it will merely prevent Defendants from unfairly using the *Sequential Spelling* mark to do so. Because AVKO has established that it is likely to prevail on the merits of its claims, the "sliding scale" approach strongly weighs in favor of granting AVKO preliminary injunctive relief.

### E. It is in the Public Interest to Enjoin Misleading Designations

Consumers are currently under the false impression that Defendants' products and

services originate from AVKO, and/or that AVKO has approved, sponsored or otherwise associated itself with Defendants. An injunction serves the public interest in this case "because enforcement of the trademark laws prevents consumer confusion." *Eli Lilly & Co.*, 233 F.3d at 469; *see also Stahly, Inc. v. M.H. Jacobs Co.*, 183 F.2d 914, 917 (7th Cir. 1950) (citations omitted) (trademark laws "are concerned not alone with the protection of a property right existing in an individual, but also with the protection of the public from fraud and deceit").

The public has the right not to be confused or defrauded as to the source of the products offered by Defendants, or as to the identity of the owner of trademarks used in connection with those products. Further, disabled children and adults rely on *Sequential Spelling*'s reputation and will be misled into purchasing Wave 3's inferior products rather than AVKO's proven products. This can severely impact learning in adults and children, and may even irreparably harm them by creating learning gaps.

Unless Defendants' continuing use of the *Sequential Spelling* mark is immediately enjoined, the public will continue to be confused and misled by Defendants' conduct. Accordingly, granting AVKO preliminary injunctive relief is in the public interest.

### F.   Defendants Never Had a License to *Sequential Spelling*, and Even If They Did, It Was Terminated

Wave 3 has never had a license to use the *Sequential Spelling* trademark. Indeed, Wave 3 tried to have AVKO sign a trademark license on several occasions but AVKO refused to grant them that license. Exhs. R, S. And even if some rights were granted to use the *Sequential Spelling* mark, they were limited to distribution of AVKO's materials and not "licensed exclusively to Wave 3 Learning, Inc. in perpetuity throughout the world." *See* Exh. C.

But for the sake of argument, even if Wave 3 had a license to some rights, it was expressly terminated by AVKO and thus any continued use is a violation of the Lanham Act.

24

Exh. B; *Gorenstein Ent.*, 874 F.2d at 435 (former licensee's "continued use of the trademark

is…a violation of [the Lanham Act.]").  Notably, when a contract, such as a trademark license,

has an indefinite duration or does not specify termination upon the occurrence of a certain event,

it may be terminated "for any reason, good cause or not, or no cause at all," and "no specific

form of notice is required to terminate" such a contract.  *Super Wash, Inc. v. Sterling*, No. 04 C

4618, 2006 WL 533362, at *5 (N.D. Ill. Mar. 2, 2006) (trademark licenses "of an indefinite

duration are terminable at the will of either party under Illinois law"); *see also*

*Walthal v. Rusk*, 172 F.3d 481, 484-85 (7th Cir. 1999) ("when a contract is silent as to its length,

it is implicit that it can be terminated by either side"); *and see also Consol. Labs., Inc. v.*

*Shandon Sci. Co.*, 413 F.2d 208, 211-12 (7th Cir. 1969) ("it is clear that under Illinois law a

contract which fails to fix a time for its duration…is ordinarily terminable at the will of either");

*and also see Baldwin Piano, Inc. v. Deutsche Wurlitzer GMBH,* No. 03 C 2105, 2004 WL 46243,

at *2 (N.D. Ill. Jan. 7, 2004) (citing *Jespersen v. Minn. Mining & Mfg. Co.*, 183 Ill. 2d 290, 700

N.E.2d 1014, 1016 (1998)) (agreement without fixed duration is terminable at will unless it

specifies that it is terminable only for the occurrence of a specified event).  Here, Wave 3 asserts

it holds a license "in perpetuity" and there are no specified events that terminate the license.

Therefore, AVKO may terminate any license that may have existed between the parties.  And as

noted above, AVKO terminated any rights held by Defendants at latest by June 11, 2013.  Exh. B.

Because any rights to use the *Sequential Spelling* trademark were terminated, Wave 3's

continued use is trademark infringement.

### G.     Because of the Strength of AVKO's case, a Bond Should be Waived

Whether a security bond is required is in the discretion of the Court, and not requiring a

bond prior to issuing an injunction is "not reversible error."  *Scherr v. Volpe,* 466 F.2d 1027,

1035 (7th Cir. 1972).  The Seventh Circuit has stated that a strong likelihood of success can

justify waiving a bond. *Id*. Accordingly, many courts have not required bonds to be posted when issuing a preliminary injunction. *See, e.g.*, *Country Inns & Suites By Carlson, Inc. v. 3 AM, LLC*, No. 14 C 3126, 2014 WL 5431621 (D. Minn. Oct. 24, 2014) (waiving bond); *TracFone Wireless, Inc. v. Washington*, 978 F. Supp. 2d 1225 (M.D. Fla. 2013) (no bond required); *Sylvan Learning Inc. v. Learning Solutions, Inc.*, 795 F. Supp. 2d 1284 (S.D. Ala. 2011) (because plaintiff established a "high" likelihood of success on the merits as to part of its claim, no bond was required); *Ohio State Univ. v. Thomas*, 738 F. Supp. 2d 743 (S.D. Ohio 2010) (because plaintiff prevailed on each of the preliminary injunction factors, it was not required to post a bond); *State Farm Mut. Auto. Ins. Co. v. Sharon Woods Collision Center, Inc.*, No. 07 C 457, 2007 WL 4207158 (S.D. Ohio Nov. 26, 2007) (no bond required).

Here, AVKO has demonstrated a strong likelihood of success on the merits. Indeed, all seven factors favor an injunction. Because AVKO has such a strong likelihood of success, and because Defendants intentionally used the *Sequential Spelling* mark, AVKO respectfully requests that it not be required to post a bond, or at most, a minimal bond that the Court deems to be appropriate.

## V.    CONCLUSION

Defendants' continuing use of AVKO's *Sequential Spelling* mark is irreparably harming AVKO's business, its brand, and its valuable goodwill in the *Sequential Spelling* mark. Without entry of the requested preliminary injunctive relief, Defendants' activities will continue to lead prospective purchasers and others to believe that Defendants' inferior products originate or emanate from, or are somehow endorsed, sponsored, or approved by AVKO, which they are not. Further, AVKO has no adequate remedy at law for Defendants' infringement of the *Sequential Spelling* mark.

For the foregoing reasons, AVKO respectfully requests that this Court grant its Motion

26

for Preliminary Injunction, and enjoin Defendants:

6.     From using, selling, transferring, assigning or licensing the *Sequential Spelling* mark without explicit authorization from AVKO;

7.     From marketing, holding themselves out as, or representing that they are the origin of, affiliated with, or endorsed or approved by *Sequential Spelling*;

8.     From representing that *Sequential Spelling* is not owned by AVKO;

9.     From using or disbursing revenues from *Sequential Spelling* marked materials in ways not explicitly authorized by AVKO; and

10.    From using the www.sequentialspelling.com website.

Plaintiff AVKO also seeks a preliminary injunction requiring Defendants:

c)     To deposit and direct all revenues, royalties and proceeds from the sale, transfer or use of *Sequential Spelling* marked materials to a trust or escrow account designated by this Court for the duration of this litigation; *or at minimum,*

d)     To deposit or direct 50% of said revenues, royalties and proceeds to said trust or escrow account for the duration of this litigation.

Dated:  August 4, 2015                          Respectfully submitted,


                                                By:/s/ Adam Wolek_____
                                                Adam Wolek
                                                Brian Noack
                                                WOLEK & NOACK
                                                70 East Lake Street, Suite 1220
                                                Chicago, Illinois 60601
                                                P 312.860.9006
                                                F 708.843.0509
                                                *Attorneys for Plaintiff AVKO Educational*
                                                *Research Foundation, Inc.*

27

**CERTIFICATE OF SERVICE**

The undersigned certifies that, on August 4, 2015, he caused this document to be electronically filed with the Clerk of Court using the CM/ECF system, which will send notification of filing to counsel of record for each party.


Dated:  August 4, 2015                         WOLEK & NOACK


                                               By: s/ Adam Wolek
                                               Adam Wolek