# UNITED STATES DISTRICT COURT FOR THE
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| AVKO EDUCATIONAL RESEARCH FOUNDATION, INC., a Michigan nonprofit corporation,<br><br>    Plaintiff,<br><br>v.<br><br>WAVE 3 LEARNING, INC., a Nevada corporation, and THOMAS MORROW, an individual d/b/a SEQUENTIAL SPELLING,<br><br>    Defendants. | Case Number: 15-cv-03393<br><br>Judge: Hon. John W. Darrah |

## PLAINTIFF AVKO EDUCATIONAL RESEARCH FOUNDATION, INC.'S RESPONSE TO WAVE 3'S AND MORROW'S MOTIONS TO DISMISS

Dated: August 25, 2015        Respectfully submitted,

                 By:/s/ Brian Noack _____
                 Adam Wolek
                 Brian Noack
                 WOLEK & NOACK
                 70 East Lake Street, Suite 1220
                 Chicago, Illinois 60601
                 P 239.671.1103
                 F 708.843.0509

I.      INTRODUCTION

Defendants' motions to dismiss (ECF Nos. 20 & 21) incorrectly assert that AVKO Educational Research Foundation's ("AVKO") trademark and state-law claims are preempted by the Copyright Act, that its breach of contract claim preempts its copyright claim, and that Thomas A. Morrow ("Morrow") should not be personally liable. Indeed, these arguments have no support in law or fact.

At its core, the Copyright Act only preempts claims equivalent to copyright infringement. Conversely, AVKO pled that Defendants are infringing its trademarks in ways not covered by copyright law, like using AVKO's trademarks in trade shows. AVKO's tortious interference and unjust enrichment claims also differ from copyright law because Defendants have interfered with AVKO's relationships with distributors, and improperly retained payments and royalties.

AVKO's breach of contract and copyright infringement claims are also separable and have different scopes, and Seventh Circuit precedent permits bringing both claims. And finally, Defendants' claim that Morrow is not personally liable is belied by their own admissions that he negotiated the licensing contract independent of Wave 3 Learning, Inc. ("Wave 3"), used his personal checks for payments, and claimed to own the asserted intellectual property personally until at least August 2014. And then, he marketed a "new" company under AVKO's *Sequential Spelling* trademark.

Accordingly, AVKO respectfully requests that Defendants' motions to dismiss be denied.

II.     STATEMENT OF FACTS

    A.      AVKO and its Intellectual Property

AVKO is a 501(c)3 non-profit organization that publishes education materials for teaching dyslexic children and adults how to read. AVKO's president, Donald J. McCabe

1

("McCabe"), authored over forty different instructional and other reference materials.[1]  The *Sequential Spelling* materials have since significantly expanded (collectively, "the *Sequential Spelling* materials").  The *Sequential Spelling* mark has been used continuously in interstate commerce on AVKO's materials since 1975.

### B. Defendants Claim to be "Sequential Spelling"

Recently, Wave 3 and Morrow publicly stated at a trade show on April 9 to 11, 2015, that they are the "Sequential Spelling" company.  There, Defendants held themselves out as "Sequential Spelling," but AVKO did not know about or authorize such use.

Defendants also claimed the www.sequentialspelling.com website, and are using it to operate their business.

Defendants even claimed that "Sequential Spelling copyrights and trademarks have been ***licensed exclusively to Wave 3 Learning, Inc.*** in perpetuity throughout the world."  Pl.'s Am. Compl., Exh. B at 4, ECF No. 8-2.  AVKO provided no such license.

Defendants also sell AVKO's copyrighted materials on other third-party websites and have used the *Sequential Spelling* trademark in advertising and trade shows to sell their versions of the materials.  *Id*.  This use is unauthorized.

### C. Prior Relations and Litigation Among the Parties Do Not Give Defendants a License to the *Sequential Spelling* Materials

AVKO and Defendants have litigated various issues related to licensing and copyrights before the Eastern District of Michigan (concluded in May 2013), and briefly in the Northern District of Illinois.  This litigation asserts acts by Defendants after the Michigan litigation ended.

A District Court had previously found that Wave 3 had a limited implied license to

---

[1] McCabe transferred all existing rights in the materials to AVKO in 1975.

[2] Had Wave 3 existed at that time, the stock would have been valued at a total of $1.50.

[3] The Eastern District of Michigan case was removed from state court.

[4] The court noted that AVKO's notation in a tax form, in which AVKO recorded a prior partial payment

certain materials based on a prior contract. *See* Op. at 11-12, *AVKO Educ. Res. Found., Inc. et al. v. Morrow et al.*, No. 11-cv-13381, (E.D. Mich. Aug. 3, 2011) ECF No. 103. After the litigation, however, Wave 3 failed to pay the licensing fees and AVKO revoked the license.

### 1. *The Parties' History Does Not Give Defendants Rights to Use the Sequential Spelling Trademarks*

McCabe first met Morrow in May 2009. Morrow was then CEO of Home School Holdings, Inc. ("HSH"). After discussions, AVKO and HSH signed an agreement on June 4, 2010 to license HSH rights to *Sequential Spelling* materials for $600,000, ongoing royalties, and the other terms ("Contract"). Pl.'s Am. Compl., Exh. A, ECF No. 8-1. AVKO was paid $50,000, but HSH failed to provide the required $250,000 in HSH stock. It also failed to pay the remaining $300,000 and the on-going royalties.

On June 11, 2010, Morrow informed AVKO that HSH would not fulfill the terms of the Contract. Morrow then proposed a new contract similar to the Contract, but substituting HSH for a new company, Wave 3 Learning. However, Morrow's offer proposed replacing the $250,000 in HSH stock with a 7.5% ownership of Wave 3.[2] AVKO declined. Days after signing the Contract between HSH and AVKO, Morrow resigned as HSH's CEO and started Wave 3.

Morrow proposed several more contracts to acquire AVKO's trademarks and copyrights. AVKO rejected them all because none provided adequate reasonable terms.

Wave 3 then threatened AVKO with a suit unless AVKO assigned its copyrights and trademarks to Wave 3 at no cost. AVKO declined. Despite AVKO's refusal to assign its IP, Wave 3 then advertised that it held an exclusive license to its copyrights and trademarks in the *Sequential Spelling* materials.

---

[2] Had Wave 3 existed at that time, the stock would have been valued at a total of $1.50.

**2.** *Eastern District of Michigan Litigation*

AVKO filed suit in Michigan in 2011. *See AVKO v. Morrow*, No. 11-cv-13381 (E.D. Mich. Aug. 3, 2011).[3] The District Court granted Wave 3's Motion for Summary Judgment stating that because it found an implied license between AVKO and Wave 3 at that time, Wave 3 did not commit copyright infringement. Op. at 11-12, *AVKO v. Morrow*, No 11-cv-13381 (E.D. Mich. Apr. 5, 2013), ECF No. 103. Despite the court finding an implied license between the parties based on the Contract, Wave 3 did not honor the Contract's required provisions: It failed to pay $550,000 in cash and stock-equivalents, and has not paid any ongoing licensing fees.

**3.** *AVKO Explicitly Revoked Any Right for Wave 3 to Use Its IP*

AVKO formally terminated the license between the parties on June 11, 2013 for breaching terms and payments. This revoked any rights Wave 3 previously had in the *Sequential Spelling* materials; the District Court did not give Morrow any rights to use the materials individually. Without authority from or payment to AVKO, Defendants continued using, distributing and reproducing the *Sequential Spelling* materials and making derivative works.

**4.** *The Short-lived Northern District of Illinois Litigation*

After AVKO revoked Wave 3's rights, Wave 3 filed suit for declaratory judgment that it owns the copyrights in the *Sequential Spelling* materials. *See* Am. Compl., *Wave 3 Learning, Inc. v. AVKO*, No. 14-cv-1948 (N.D. Ill. Mar. 19, 2014). The court dismissed the complaint because it found no transfer of the *Sequential Spelling* copyrights from AVKO to Wave 3.[4] *Id.*, Op. at 3 (N.D. Ill. Aug. 7, 2014) ECF No. 38. Wave 3 then filed an amended complaint with an

---

[3] The Eastern District of Michigan case was removed from state court.

[4] The court noted that AVKO's notation in a tax form, in which AVKO recorded a prior partial payment for the 2010 Contract, "does not eliminate the need for a writing transferring ownership of the copyrights to the *Sequential Spelling* materials to Wave 3 because the writing is a statutory requirement." *Id.*, Op. at 3, ECF No. 38.

"assignment" that allegedly transferred ownership of the *Sequential Spelling* materials to Wave 3 from Morrow. It was dated August 14, 2014: three years after the Michigan lawsuit was filed. The court again dismissed Wave 3's complaint for lack of standing because Wave 3 had not shown it owned the copyrights in the *Sequential Spelling* materials. *Id.*, Op. at 4 (N.D. Ill. Feb. 23, 2014) ECF No. 53.

## III. LEGAL STANDARD

A complaint need only contain a "'short and plain statement of the claim showing that the pleader is entitled to relief.'" *Bogie v. Rosenberg*, 705 F.3d 603, 608 (7th Cir. 2013) (citing Fed. R. Civ. P. (8)(a)(2)). When reviewing a Rule 12(b)(6) motion to dismiss, the court must "construe all allegations and any reasonable inferences in the light most favorable to the plaintiff," and all factual allegations should be accepted as true. *League of Women Voters of Chi. v. City of Chi.*, 757 F.3d 722, 724 (7th Cir. 2014). The complaint need only "state a claim to relief that is plausible on its face." *McCoy v. Iberdrola Renewables, Inc.*, 760 F.3d 674, 685 (7th Cir. 2014) (citations omitted). Dismissal is proper only if the plaintiff can prove no set of facts to support his claim. *First Ins. Funding Corp. v. Fed. Ins. Co.*, 284 F.3d 799, 804 (7th Cir. 2002).

## IV. ARGUMENT

Defendants conflate trademarks with copyrights, and incorrectly assert that AVKO's trademark, unfair competition, deceptive trade practices and tortious interference counts are preempted by copyright law. For instance, AVKO's trademark claims are directed at Defendants' use of AVKO's *Sequential Spelling* trademark in their marketing and because Defendants are not only trying to steal AVKO's materials, but also AVKO's identity.[5] Defendants' use of AVKO's trademark causes consumer confusion over the origin of the products, and harm to AVKO's

---

[5] AVKO addresses the trademark, unfair competition and deceptive trade practices claims together as they all fall outside of copyright law for the same reasons.

5

goodwill, which do not fall under copyright law. Furthermore, Defendants never had a license to AVKO's trademark, and any license to AVKO's other intellectual property was expressly terminated. Accordingly, AVKO's claims are not preempted by the Copyright Act because they are outside of its scope, and Defendants' use of AVKO's intellectual property is infringement because Defendants do not have a license.

### A. Defendants Improperly Conflate Copyright Law with Trademark, Unfair Competition, Unjust Enrichment and Tortious Interference Law

As a threshold matter, "[t]he Copyright Act does not preempt the Lanham Act, or vice versa, and therefore a party may recover under both statutes." *Do It Best Corp. v. Passport Software, Inc.*, No. 01 C 7674, 2004 WL 1660814, at *16 (N.D. Ill. July 23, 2004). For the state-law claims, the Seventh Circuit uses a two-prong test to determine if a cause of action is preempted by the Copyright Act: (a) whether the work "is fixed in tangible form and comes within the subject matter of copyright"; and, (b) "the rights granted under state law ***must be equivalent*** to the exclusive rights established by federal copyright law in § 106." *Balt. Orioles, Inc. v. MLB Players Ass'n*, 805 F.2d 663, 674 (7th Cir. 1986) (emphasis added). A state right is "equivalent" to copyright law if it is violated by reproducing (whether in original or derivative form), distributing, performing or displaying the copyrighted material. *Id.* at 676-77. Simply put, state-law causes of action are not preempted if they have additional elements that change the nature of the copyright infringement claim. *See Toney v. L'Oreal USA, Inc.*, 406 F.3d 905, 910 (7th Cir. 2005). Here, none of AVKO's claims are preempted by the Copyright Act.

### 1. *AVKO's Trademark and State Claims Are Not Preempted by the Copyright Act*

AVKO alleges trademark and state-law claims that are qualitatively different from its copyright claims, and thus are not preempted by the Copyright Act. AVKO's *copyright* claims are directed toward Defendants' unauthorized copying, editing, and distribution of AVKO's

copyrighted materials and derivatives thereof. In contrast, AVKO's *trademark* claims are directed toward Defendants' unauthorized use of the *Sequential Spelling* mark in its marketing and its misrepresentations that they are the origins of AKVO's materials. In other words, AVKO seeks to prevent Defendants from stealing its name and identity, and confusing consumers over the origin of its *Sequential Spelling* materials. *See Toney v. L'Oreal*, 406 F.3d at 910 (stating that "identity is not fixed in a tangible medium" like a copyright, so the right of publicity claim was not preempted).

Defendants argue that the "facts in this case are closely analogous to the facts in *Natkin v. Winfrey*, 111 F. Supp. 2d 1003, 1014 (N.D. Ill. 2000)." Wave 3's Mot. Dismiss at 10, ECF No. 21. But *Natkin* is inapposite and has been called into doubt after *Dastar Corp. v. Twentieth Cent. Fox Film Corp.,* 539 U.S. 23 (2003). *See, e.g.*, *Do It Best*, 2004 WL 1660814, at *18 (declining to dismiss a Lanham Act claim and noting that *Natkin* is of limited persuasive value because it was decided before *Dastar*). Regardless, *Natkin* is distinguishable because plaintiffs there attempted to claim that copying a photo was also trademark infringement. *Natkin*, 111 F. Supp. 2d at 1014. The court there stated that because the photos were "fixed in a tangible form" and the acts involved "the exclusive right to reproduce, distribute, and display the photographs," they were covered by the Copyright Act and the Lanham Act counts were not separable. *Id*.

But unlike in *Natkin*, AVKO asserted separate protectable aspects to AVKO's materials and trademarks: (1) the copyrights in the works; and, (2) the *Sequential Spelling* trademark that represents the goodwill and identity that AVKO has established. Indeed, Defendants used the *Sequential Spelling* trademark independent of the copyrighted materials. Pl.'s Am. Compl. at ¶¶ 59-63, ECF No. 8. Specifically, Defendants are holding themselves out as the "Sequential Spelling" company, claiming that they own all rights to the *Sequential Spelling* trademark, and

7

are confusing consumers over the source and origin of *Sequential Spelling*. *Id*. In fact, Defendants have claimed to be "Sequential Spelling" at trade shows, on iTunes, in advertisements, and on their website www.sequentialspelling.com. *Id*. These are all attempts to steal AVKO's identity and trade on its goodwill that it has spent over forty years building. Consumers recognize that this mark represents high-quality and effective learning techniques for dyslexics and will be misled into buying an inferior product, causing irreparable damage to AVKO. Pl.'s Am. Compl. at ¶¶ 10, 11, 61, 66-97.

Defendants' use of the *Sequential Spelling* mark on books and other materials is also trademark infringement because consumers are likely to be confused as to the origin of *Sequential Spelling* materials. Indeed, this court has found that if "the producer [of a good] and the mark-holder do *not* match" on the goods' packaging, "there would be a potential Lanham Act claim." *Slep-Tone Entm't Corp. v. Sellis Enter.*, No. 13 C 08070, 2015 WL 1593498, at *5 (N.D. Ill. Apr. 3, 2015) (interpreting *Dastar v. Twentieth Cent. Fox,* 539 U.S. at 36). The court further stated that "the *Dastar* opinion…makes clear that the Court used that language simply to distinguish goods and products for sale (which receive Lanham Act protection) from any 'idea, concept, or communication embodied in those goods'" (which are protected by copyright laws). *Id.*, at *5 n.4 (citation omitted). Because AVKO's trademark and state-law claims are directed to protecting its goodwill, to stop Defendants' deceptive and unfair trade practices, to stop consumer confusion, and not at replicating goods, they are not preempted by the Copyright Act.

### 2. *AVKO's Unjust Enrichment Claim is Not Preempted By Copyright Law*

Unjust enrichment claims require "'that the defendant has unjustly retained a benefit to the plaintiff's detriment, and that defendant's retention of the benefit violates the fundamental principles of justice, equity, and good conscience.'" *Int'l Union of Operating Eng'r, Local 150, AFL-CIO v. Team 150 Party, Inc.*, No. 07C3972, 2008 WL 4211561, at *4 (N.D. Ill. Sept. 5,

2008) (citation omitted). Preemption is only applicable if a plaintiff fails, "through its factual allegations, to establish that its unjust enrichment claim qualitatively differs from its copyright claim." *Cambridge Grp. Tech., Ltd. v. Motorola, Inc.,* No. 12 C 7945, 2013 WL 842650, at *4 (N.D. Ill. Mar. 5, 2013) (citation omitted).

Here, AVKO alleges that Defendants are unfairly benefiting from withheld payments and royalties to AVKO, which results in a financial benefit to Defendants. Pl.'s Am. Compl. at ¶¶ 39, 41-42, 47-50, 63, 85-87; *see also Cambridge Grp.*, 2013 WL 842650, at *4 (unjust enrichment claim was not preempted by copyright law because plaintiff showed that defendant withheld payments and royalties); *Team 150 Party*, 2008 WL 4211561, at *4 (unjust enrichment claim was not preempted because "Defendants…obtained the benefit of the prototype website developed by Local 150 without paying Local 150."). AVKO also alleges that Defendants are unfairly benefitting from the use of AVKO's identity and trademarks for monetary gain. Pl.'s Am. Compl. at ¶¶ 85-87. In contrast, the copyright claim is directed to Defendants' copying of AVKO's materials. Because Plaintiff's unjust enrichment claim qualitatively differs from its copyright claim, it is not preempted.

### 3. *The Tortious Interference Claim is Not Preempted by Copyright Law*

As with unjust enrichment, AVKO's tortious interference count is not preempted by the Copyright Act because it qualitatively differs from the rights protected by copyrights. Under Illinois law, tortious interference claims require: (1) the plaintiff's reasonable expectation of entering into a valid business relationship; (2) the defendant's knowledge of the plaintiff's expectancy; (3) purposeful interference by the defendant that prevents the plaintiff's legitimate expectancy from ripening into a valid business relationship; and (4) damages to the plaintiff resulting from such interference. *Botvinick v. Rush Univ. Med. Ctr.*, 574 F.3d 414, 417 (7th Cir. 2009).

Here, AVKO alleges that Defendants knowingly contacted AVKO's distributors with whom it had done business with, and threatened litigation if these distributors did business with AVKO again. *See* Pl.'s Am. Compl. at ¶¶ 44-45, 57-58. Further, Defendants also insinuated to distributors that AVKO's President was growing senile.[6] *Id.*, at ¶ 44. As a direct result of Defendants' threats, AVKO is losing and has lost potential business relationships and is suffering damages. *Id.*, at ¶¶ 57, 58, 106. This claim cannot be rolled into a copyright infringement claim because it is distinct from the Copyright Act's rights of reproduction, adaptation, publication, performance, and display of copyrighted materials. Accordingly, AVKO's tortious interference claim qualitatively differs from its copyright claim and is not preempted by the Copyright Act.

### B. Defendants Do Not Have An Exclusive License to the *Sequential Spelling* Materials, and Even If They Did, It Was Terminated

Defendants have never had a license to use the *Sequential Spelling* trademark and held, at most, an implied license to publish some of AVKO's materials. Indeed, Defendants have repeatedly attempted to convince AVKO to assign its copyrights and trademarks over to them without success.[7] And AVKO has repeatedly declined to do so.

However, even assuming *arguendo* that Wave 3 had an implied license to some rights, AVKO expressly terminated any rights use AVKO's intellectual property. *See* Pl.'s Am. Compl. at ¶ 49, ECF No. 8; *see also* Wave 3's Mot. Dismiss at 6 (Defendants admitting AVKO terminated all rights to AVKO's intellectual property). Under Illinois law, contracts, such as

---

[6] Notably, Defendants reference an email in which Morrow evidently called AVKO's president a "loon." Wave 3's Mot. Dismiss at 13. However, this email is outside of the pleadings and AVKO has not seen this email. This serves as further support, however, that Defendants are interfering with AVKO's business relationships. And because this email is outside of the pleadings but materially affects AVKO's contentions, it demonstrates that a motion to dismiss is not warranted as discovery is needed to fully examine the extent Defendants interfered with or misled AVKO's clients.

[7] Tellingly, Defendants concede that AVKO "rebuffed every attempt by Wave 3 to get an agreement [assigning its intellectual property to Defendants]." Wave 3's Mot. Dismiss at 4. Like any company, AVKO can choose or refuse to assign its intellectual property under whatever terms it finds satisfactory.

intellectual property licenses, may be terminated "for any reason, good cause or not, or no cause at all," and "no specific form of notice is required to terminate" such a contract if they have indefinite durations or do not specify a specific terminating event. *Super Wash, Inc. v. Sterling*, No. 04 C 4618, 2006 WL 533362, at *5 (N.D. Ill. Mar. 2, 2006) (licenses "of an indefinite duration are terminable at the will of either party under Illinois law"); *Walthal v. Rusk*, 172 F.3d 481, 484 (7th Cir. 1999) ("when a contract is silent as to its length, it is implicit that it can be terminated by either side"); *Consol. Labs., Inc. v. Shandon Sci. Co.*, 413 F.2d 208, 211-12 (7th Cir. 1969) ("under Illinois law a contract which fails to fix a time for its duration…is ordinarily terminable at the will of either"); *Baldwin Piano, Inc. v. Deutsche Wurlitzer GMBH*, No. 03 C 2105, 2004 WL 46243, at *2 (N.D. Ill. Jan. 7, 2004) (citation omitted) (contract without fixed duration is terminable at will unless it specifies that it is only terminable for the occurrence of a specified event).

Here, Wave 3 claims it holds a license "in perpetuity" and that there are no specified events that terminate the license. But even if it had such a license, AVKO terminated any rights held by Defendants at the latest by June 11, 2013. Pl.'s Am. Compl. at ¶ 49. Notably, Defendants even admitted that "AVKO was revoking Wave 3 Learning's license to reproduce and distribute" the *Sequential Spelling* materials. Wave 3's Mot. Dismiss at 6. Because any rights to use AVKO's intellectual property were terminated, Defendants' continued use is infringement and not protected by a license or preempted.

### C.  Copyright Infringement is Not a Breach of Contract Claim

Defendants do not cite any Seventh Circuit law supporting its argument that AVKO's copyright infringement claim is preempted by contract law. But notably, Defendants cite elsewhere in their brief a case that differentiated the rights under a copyright and contract. *See ProCD, Inc. v. Zeidenberg*, 86 F.3d 1447, 1455 (7th Cir. 1996). The court there stated that while

11

a copyright "restricts the options of persons who are strangers of the author," contracts "generally affect only their parties" and "do not create 'exclusive rights.'" *Id.* at 1454; *see also CustomGuide v. CareerBuilder, LLC*, 813 F. Supp. 2d 990, 997 (N.D. Ill. Aug. 24, 2011) ("a simple two-party contract is not 'equivalent to any of the exclusive rights within the general scope of copyright' and therefore may be enforced.").

AVKO asserts a copyright infringement claim based on the copying of its materials, and a breach of contract claim based on license terms between the parties. On that score, the claims are not coextensive under at least two scenarios. First, if no contract is found among the parties, then Defendants' reproduction of AVKO's materials would not be covered by contract but copyright law. *See Hany v. Gen. Elec. Co.*, 221 Ill. App. 3d 390, 397 (1991) ("When a factual dispute is present, the question of whether a contract exists is for the jury to decide."). Second, even if a contract is found, Defendants' creation of unauthorized and derivative works would nevertheless fall outside its scope, so Defendants' use would still be copyright infringement and not covered by the contract. *Liu v. Price Waterhouse LLP*, 182 F. Supp. 2d 666, 672 (N.D. Ill. 2001) *aff'd*, 302 F.3d 749 (7th Cir. 2002) (it is "undisputed that a 'use' of copyrighted material which exceeds the scope of the license constitutes an infringement.") (citation omitted). Accordingly, AVKO's breach of contract and copyright infringement claims are different and neither should be dismissed.

### D. AVKO's Declaratory Judgment Claims Are Proper Because Defendants Are Disputing Ownership of the Intellectual Property

AVKO's declaratory judgment claims are proper and should proceed because the parties have a controversy over the ownership of AVKO's trademarks and copyrighted materials. By claiming ownership of AVKO's intellectual property, Defendants have made it an actual and substantial controversy. For a declaratory judgment action, the facts alleged should "show that

there is a substantial controversy" of sufficient immediacy and reality among the parties who have adverse legal interests." *Wis. Cent., Ltd. v. Shannon*, 539 F.3d 751, 759 (7th Cir. 2008) (citation omitted). If deciding a declaratory judgment "will clarify and settle the legal relations at issue and afford parties relief from insecurity and uncertainty, the declaratory judgment action is usually heard." *Intervisual Comm., Inc. v. Volkert*, 975 F. Supp. 1092, 1099 (N.D. Ill. 1997) (citing *Nucor Corp. v Aceros Y Maquilas de Occidente, S.A. de C.V.*, 28 F.3d 572, 578 (7th Cir. 1994).

AVKO has adequately pled that there is a "substantial controversy between the parties" with "adverse legal interests" and of "sufficient immediacy and reality" to issue a declaratory judgment. AVKO alleges that Defendants claim ownership of AVKO's intellectual property. Pl.'s Am. Compl. at ¶¶ 39, 41, 50, 53-54, 59-60, 62-63; *see also Loufrani v. Wal-Mart Stores, Inc.*, No. 09 C 3062, 2009 WL 3787941, at *5-6 (N.D. Ill. Nov. 12, 2009) (allowing both declaratory judgment of trademark ownership and trademark infringement claims). Indeed, Defendants have even brought suit against AVKO claiming they own the very intellectual property at issue here (*Wave 3 Learning v. AVKO*, No. 14-cv-1948 (N.D. Ill. Mar. 19, 2014)), and have written demand letters threatening AVKO and its customers unless AVKO relinquished its intellectual property to Defendants. Pl.'s Am. Compl. at ¶¶ 38, 41, 43, 56. This is a substantial controversy and without a declaratory judgment, there will be uncertainty in the marketplace.

Defendants argue that the declaratory judgment claims should be dismissed. But they cite to scenarios where two separate suits are filed — one for infringement and one for declaratory judgment – not where an infringement and declaratory judgment action are brought together. For example, they quote out of context from *Associated Mills, Inc. v. Regina Co.*, 675

13

F. Supp. 446, 448 (N.D. Ill. Dec. 23, 1987). Wave 3's Mot. Dismiss at 16. There, a party filed a declaratory judgment action and the other party filed a separate infringement suit. Although the court said "filing of infringement action 'obviated the need for a declaratory judgment in this case,'" it then stated that "plaintiff *will be able to assert its additional* [declaratory judgment] *claims as counterclaims* in the [infringement action]." *Associated Mills*, 675 F. Supp. at 448. (citation omitted; emphasis added). Because AVKO sufficiently alleged its infringement and declaratory judgment counts, they should not be dismissed.

   **E.**  **AVKO Sufficiently Alleged Its Claims Against Thomas Morrow**

AVKO's Amended Complaint alleges Morrow is liable as an individual doing business as "Sequential Spelling" and not in his capacity as a corporate officer of Wave 3, and therefore its claims against Morrow do not fail as a matter of law. While Defendants argue that business officers should be protected from personal liability, AVKO alleges that Morrow has been doing business as "Sequential Spelling," rather than through Wave 3. Pl's Am. Compl. at ¶¶ 3, 25, 30, 57, 60, 62-63. In fact, Wave 3 previously claimed that Morrow signed the June 4, 2010 agreement in his personal capacity, delivered a $50,000 check from his personal account to AVKO, and claimed he had owned the rights to the copyrights individually. *See* Am. Compl. at ¶¶ 29, 30-32, 77, *Wave 3 v. AVKO*, 14-cv-1948, ECF No. 40. Thus, by Defendants' own admissions, Morrow should be personally liable through at least August 14, 2014. Further, AVKO has recently discovered (and alleged) that Morrow is marketing himself and exhibiting materials under AVKO's *Sequential Spelling* trademark, including at The Midwest Homeschool Convention in Cincinnati. Pl's Am. Compl. at ¶ 62.

But even if Morrow's actions were as Wave 3's CEO, the claims still should not be dismissed. The Seventh Circuit has held that "officers may be liable for their personal involvement in infringement where there is a 'special showing' that they acted outside the scope

14

of their official duties." *Lang Exterior, Inc. v. Lang Windows, Inc.*, 11 C5517, 2012 WL 3545703, at *2-3 (N.D. Ill. Aug. 16, 2012). Examples of a special showing are when an officer: (a) "personally participates in the manufacture or sale of the infringing article"; (b) "uses the corporation as an instrument to carry out his own willful and deliberate infringements," or (c) "when he knowingly uses an irresponsible corporation with the purpose of avoiding personal liability." *Id.* Here, Morrow fulfills the "special showing" requirement for personal liability. For example, Defendants previously alleged that Morrow treated HSH, Wave 3 and himself as the same entity; paying for licensing fees personally, and, claimed he was the source, assignor and transferor of the disputed intellectual property. Am. Compl. at ¶ 29, 30-32, 77, *Wave 3 v. AVKO*, 14-cv-1948, ECF No. 40. These allegations show that Morrow used the corporation as an instrument to carry out his own deliberate infringements, and that he knowingly used businesses for the purpose of avoiding personal liability. Accordingly, whether as an officer or in his individual capacity, AVKO's claims against Morrow should not be dismissed.

## V. CONCLUSION

For the reasons discussed herein, AVKO respectfully requests that this Court deny Defendants' Motions to Dismiss.

15

## CERTIFICATE OF SERVICE

The undersigned certifies that, on August 25, 2015, he caused this document to be electronically filed with the Clerk of Court using the CM/ECF system, which will send notification of filing to counsel of record for each party.

Dated: August 25, 2015       WOLEK & NOACK


By: s/ Brian Noack
Brian Noack