UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| AVKO EDUCATIONAL RESEARCH FOUNDATION INC., | ) ) ) |
| Plaintiff, | ) ) ) Case No. 15-cv-3393 |
| v. | ) ) Judge John W. Darrah |
| WAVE 3 LEARNING INC. and THOMAS MORROW d/b/a SEQUENTIAL SPELLING, | ) ) ) ) |
| Defendants. | ) |

## MEMORANDUM OPINION AND ORDER

On March 24, 2015, Plaintiff AVKO Educational Research Foundation Inc. filed a First Amended Complaint ("FAC") against Defendants Wave 3 Learning Inc. ("Wave 3") and Thomas Morrow d/b/a Sequential Spelling ("Morrow"). The First Amended Complaint alleges violations of the Lanham Act, copyright infringement, and several claims under Illinois law. Defendants filed Motions to Dismiss [20, 21] pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim for which relief can be granted. For the reasons discussed below, Defendants' Motions to Dismiss [20, 21] are granted in part and denied in part.

### BACKGROUND

AVKO is a Michigan domestic nonprofit corporation with its principal place of business in Birch Run, Michigan. (FAC ¶ 1.) AVKO is also a 501(c)3 no-profit organization. (*Id.* ¶ 11.) AVKO's president is Donald J. McCabe. (*Id* ¶ 1.) Wave 3 is a Nevada corporation with its principal place of business in Arlington Heights, Illinois. (*Id.* ¶ 2.) Thomas Morrow is the CEO of Wave 3. (*Id.*) Morrow resides in Arlington Heights, Illinois, and does business as Sequential Spelling. (*Id.* ¶ 3.)

McCabe is the author of *To Teach a Dyslexic*, *Sequential Spelling™*, *The Patterns of English Spelling*, *Word Families in Sentence Context*, and many other instructional and reference materials. (*Id.* ¶ 7.) In 1975, McCabe transferred all existing copyrights and trademarks to AVKO. (*Id.* ¶ 9.) Since that time, McCabe has created over forty works, and AVKO owns the copyright to those works. (*Id.*) McCabe's son has also created seven works as an AVKO employee, and AVKO owns the copyright to those works. (*Id.*) AVKO has used the Sequential Spelling™ trademark continuously since 1975. (*Id.* ¶ 10.) AVKO has developed significant goodwill in its Sequential Spelling™ trademarks and related marks. (*Id.*)

In 2009, McCabe met Morrow, who was, at that time, the CEO of Home School Holdings, Inc. ("HSH"). (*Id.* ¶ 15.) AVKO and HSH entered into discussion for AVKO to license publishing rights to HSH. (*Id.* ¶ 16.) Eventually, AVKO and HSH entered into a contract (the "2009 contract"). (*Id.* ¶ 17.) The terms of the contract included the following relevant terms:

> a. HSH agreed to pay AVKO a total of $600,000, with an initial payment of $50,000 in cash and stock in HSH worth $250,000 and a second payment paid to AVKO once HSH made $300,000 in gross revenue, paid in $50,000 in cash and $250,000 in HSH stock;
> b. AVKO would be paid an additional $10,000 in cash and an additional $10,000 in HSH stock for each additional $300,000 in revenue made by HSH;
> c. HSH must make every publication and instructional aid of [AVKO's copyrighted materials] available for purchase, both in print and electronically;
> d. HSH would provide AVKO with desk copies of any updated materials;
> e. AVKO has the right to audit the books and records of HSH at any time after closing; and,
> f. The agreement "immediately terminates and the right to publish [AVKO's copyrighted materials] reverts to AVKO if HSH does not make the payments listed in this agreement or if HSH violates any provision of this agreement."

(*Id.*)

On November 7, 2009, Morrow filed for personal bankruptcy and declared that HSH's stock was worthless. (*Id.* ¶ 19.) Morrow did not tell AVKO that he had gone into bankruptcy or

2

that HSH's stock was worthless. (*Id.* ¶ 20.) On December 18, 2009, Morrow informed AVKO that 5,000,000 shares of stock would be entered into a shareholder registry for AVKO; but these shares were never entered into the registry. (*Id.* ¶ 21.) At the time of the represented entry of the shares, they were valued at $0.001 per share, which represented $5,000 of the initial $250,000 worth of stock required by the contract. (*Id.*)

Morrow never signed the 2009 contract but did file it with the SEC . (*Id.* ¶ 23.) In HSH's Form 8K, filed on January 5, 2010, Morrow claimed that HSH paid AVKO $300,000 ($50,000 in cash and $250,000 in shares at $0.05 per share) to acquire publishing rights from AVKO and that the works generated $311,000 in revenue for the fiscal year ending on June 30, 2009. (*Id.*) Six months later, HSH and AVKO met to discuss a new contract, which would have had the same terms as the 2009 contract. (*Id.* ¶ 24.) Two weeks before signing the new contract, Morrow sent AVKO an email, offering a one-eighth ownership in a new company in lieu of the stock requirement for HSH. (*Id.* ¶ 25.) On June 3, 2010, Morrow sent a subscription agreement that would require AVKO to purchase HSH shares at $0.05 per share, despite the share's actual value of less than $0.01. (*Id.* ¶ 26.) AVKO did not sign the subscription agreement. (*Id.*)

On June 4, 2010, AVKO and HSH executed a licensing agreement (the "2010 contract"). (*Id.* ¶ 27.) The 2010 contract contained the same relevant terms, as listed above, as the 2009 contract. (*Id.*) HSH paid AVKO $50,000 but did not provide AVKO the required $250,000 in HSH stock for the initial payment. (*Id.* ¶ 28.) HSH did not provide the remaining $300,000 or any ongoing royalties as provided by the 2010 contract. (*Id.*) Morrow then proposed a new contract to AVKO with the same terms as the 2010 contract but substituting Wave 3 for HSH. (*Id.* ¶ 30.) This proposed agreement replaced the $250,000 in HSH stock with a 7.5 percent

ownership stake in Wave 3. (*Id.*) AVKO declined this offer. (*Id.*) On June 17, 2010, Morrow resigned as CEO of HSH. (*Id.* ¶ 31.) HSH paid Morrow $1,000 for his 149,429,743 shares in the company, resulting in a value of $0.000007 per share. (*Id.*)

On June 18, 2010, Morrow incorporated Wave 3 Learning Inc. and informed McCabe that AVKO was a founding shareholder of Wave 3. (*Id.* ¶ 32.) AVKO is not and has never been a founding shareholder of Wave 3. (*Id.* ¶ 33.) Morrow proposed two more contracts, seeking to acquire AVKO's copyrights and trademarks, both of which were rejected by AVKO. (*Id.* ¶ 34.) On or about July 4, 2010, Morrow attempted to have AVKO sign a trademark and copyright assignment, which AVKO declined to do. (*Id.* ¶ 25.) In December 2010, Wave 3 allegedly discovered that someone was cybersquatting on the website www.sequentialspelling.com. Wave 3 again demanded that AVKO sign over its copyrights and trademarks and AVKO declined again. (*Id.* ¶ 36.) On March 4, 2011, Morrow emailed McCabe, notifying him of Morrow's intent to file suit against AVKO. (*Id.* ¶ 37.) Morrow made several more attempts to get AVKO to sign a contract and sent a threatening e-mail to McCabe's grandson. (*Id.* ¶ 38.)

Wave 3 began claiming in its marketing that it held an exclusive license to AVKO's copyrighted and trademarked materials. (*Id.* ¶ 39.) On June 6, 2011, AVKO warned Wave 3 that they would sue for copyright infringement unless Wave 3 ceased claiming AVKO's copyrights. (*Id.* ¶ 40.) Wave 3 responded that it had purchased AVKO's copyrighted materials for $50,000 through a June 22, 2010 contract. However, there was no contract executed between Wave 3 and AVKO; and Wave 3 did not exist when the 2010 contract was executed or when AVKO received a $50,000 payment on June 3, 2010. (*Id.* ¶ 41.)

AVKO filed suit in Michigan's Saginaw County Courthouse against Morrow, Wave 3 Learning, HSH, and Home School, Inc. which was subsequently removed to the Eastern District

4

of Michigan. (*Id.* ¶ 43.) The federal court found that there was an implied license between AVKO and Wave 3 and that, thus, there was no copyright infringement. (*Id.* ¶ 46.) The court also found that Morrow was not personally liable for breach of contract because he signed the 2010 contract on behalf of HSH. (*Id.*) Wave 3 continued to use AVKO's copyrighted materials without paying any licensing fees. (*Id.* ¶ 47.) AVKO formally terminated the license between the parties on or about June 11, 2013. (*Id.* ¶ 49.) Defendants continued using, distributing, and reproducing AVKO's copyrighted materials without paying any licensing fees and without authority from AVKO. (*Id.* ¶ 50.)

On March 19, 2014, Wave 3 filed a declaratory judgment in the Northern District of Illinois, seeking a declaration that it owns the copyrights to AVKO's copyrighted materials. (*Id.* ¶ 51.) The complaint was dismissed without prejudice because there was no assignment transferring ownership of the copyrighted material from AVKO to Wave 3. (*Id.* ¶ 52.) Wave 3 filed an amended complaint, including an assignment allegedly transferring ownership of the copyrighted material from Morrow to Wave 3, dated August 14, 2014. On February 25, 2015, the court dismissed Wave 3's second complaint because Wave 3 had not shown it owned the copyrights to the copyrighted material and thus lacked standing to file the complaint. (*Id.* ¶ 55.)

Two weeks after the court dismissed the second complaint, Wave 3 informed AVKO that it would file a new lawsuit unless AVKO agreed to assign its copyrights and trademarks to Wave 3 at no cost. (*Id.* ¶ 56.) AVKO declined. (*Id.*) One of AVKO's distributors, Inquisicorp, Inc., informed AVKO that it would not enter into a publishing agreement with AVKO due to Defendants' threats and litigation. (*Id.* ¶ 57.) AVKO has lost and continues to lose business because potential business partners will not do business with AVKO due to Defendants' actions. (*Id.* ¶ 58.)

Defendants use the Sequential Spelling™ trademarks and advertise that they own and/or have an exclusive license to AVKO's copyrighted material at trade shows and other home-school and educational material outlets. (*Id.* ¶ 60.) Wave 3's website expressly claims that they have an exclusive license to AVKO's copyrighted material and uses Sequential Spelling™ trademarks in direct competition with AVKO. (*Id.* ¶ 59.) Defendants sell materials with Sequential Spelling™ trademarks on them on multiple websites. (*Id.* at ¶ 63.) Wave 3's customers have contacted AVKO complaining about the quality of Wave 3's unauthorized updates to AVKO's copyrighted materials. (*Id.* at ¶ 61.)

## LEGAL STANDARD

Rule 12(b)(6) permits a defendant to move to dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). To survive a motion to dismiss, a complaint must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 555). However, plaintiffs are not required to "plead the elements of a cause of action along with facts supporting each element." *Runnion ex rel. Runnion v. Girl Scouts of Greater Chicago & Nw. Indiana*, 786 F.3d 510, 517 (7th Cir. 2015). Rather, the complaint must provide a defendant "with 'fair notice' of the claim and its basis." *Tamayo v. Blagojevich*, 526 F.3d 1074, 1081 (7th Cir. 2008) (quoting Fed. R. Civ. P. 8(a)(2) and *Twombly*, 550 U.S. at 555). When evaluating a Rule 12(b)(6) motion, the court accepts the complaint's well-pleaded factual allegations as true and draws all reasonable inferences in the plaintiff's favor. *Twombly*, 550 U.S. at 555-56.

## ANALYSIS

*Wave 3*

Wave 3 has moved to dismiss all claims except for Count X, which is Plaintiff's claim for breach of the 2010 contract. Count I is a claim under the Lanham Act, 15 U.S.C. § 1125(a), alleging that Defendants' use of Sequential Spelling™ trademarks has caused and is likely to cause confusion and that Defendants have made false representations, false descriptions, and false designations of origin. Count II also brings a claim under the Lanham Act, 15 U.S.C. § 1125(a), and appears to allege the same conduct as Count I. Count III alleges unfair competition under Illinois common law. Count IV alleges unjust enrichment. Count V brings a claim under the Illinois Uniform Deceptive Trade Practices Act, 815 Ill. Comp. Stat. 510/1, *et seq.* Count VI alleges tortious interference with a business relationship or expectancy. Count VII seeks a declaratory judgment that AVKO owns the copyright to the materials in question. Count VIII seeks a declaratory judgment that AVKO owns the Sequential Spelling™ trademarks. Count IX seeks an accounting of all revenues and earnings of Defendants' sales of AVKO's copyrighted materials and Sequential Spelling™ trademarks and related marks. Count X alleges breach of contract, in the alternative to copyright infringement. Count XI requests a preliminary injunction on Defendants. Count XII alleges copyright infringement.

<u>Lanham Act</u>

Counts I and II are Lanham Act claims that appear to be substantially the same. Defendants argue that Counts I and II are duplicative of Plaintiff's copyright claim. Under § 43(a) of the Lanham Act, a person may not use a "false designation of origin, false or misleading description of fact, or false or misleading representation of fact" in connection with any "goods or services." 15 U.S.C. § 1125(a). In *Dastar Corp. v. Twentieth Century Fox Film*

*Corp.*, 539 U.S. 23 (2003), the Supreme Court held that "origin" as used in § 43(a) means the producer of the tangible goods sold in the marketplace, not the person or entity that came up with the original ideas that the goods contain. *Dastar*, 539 U.S. at 31-32. "The Court reasoned that if 'origin' were read to mean the person or entity that authored the material, such a reading would effectively create a system of perpetual copyright as it would force those wishing to use uncopyrighted works in the public domain to credit the original authors or face liability under the Lanham Act." *Defined Space, Inc. v. Lakeshore E., LLC*, 797 F. Supp. 2d 896, 899 (N.D. Ill. 2011) (citing *Dastar* 539 U.S. at 36-37). Defendants argue that Plaintiff's Lanham Act claims are precluded by copyright law under *Dastar*. However, *Dastar* included an exception for a situation where a defendant purchases copyrighted material and sells that material as its own. *See Dastar*, 539 U.S. at 31.

Defendants claim that they are the producer of the tangible goods and that using the Sequential Spelling trademark is merely exercising their valid licensing rights under copyright law. However, this is precisely the conduct at issue. If Defendants are not exercising a valid assignment of copyright, then their actions may amount to passing off someone else's trademarked goods as their own and raise a potential Lanham Act claim. *See Slep-Tone Entm't Corp. v. Sellis Enterprises, Inc.*, 87 F. Supp. 3d 894 (N.D. Ill. 2015) (discussing a scenario where the producer of a good and the mark-holder do not match, resulting in a potential Lanham Act claim.) To the extent that Plaintiff alleges that Defendants create and sell copies of materials with their Sequential Spelling trademark, they have stated Lanham Act claims that are not preempted by copyright law. Defendants' Motions to Dismiss Counts I and II are denied.

8

State Law Claims

Counts III-VI allege claims based on state law. "The Federal Copyright Act preempts state causes of actions that are equivalent to copyright infringement claims." *Higher Gear Grp., Inc. v. Rockenbach Chevrolet Sales, Inc.*, 223 F. Supp. 2d 953, 956 (N.D. Ill. 2002) (citing 17 U.S.C. § 301(a)). State claims are preempted where the work is within the subject matter of copyright law and the state right is "equivalent to any of the rights specified in § 106." *Baltimore Orioles, Inc. v. Major League Baseball Players Ass'n*, 805 F.2d 663, 674 (7th Cir. 1986). The rights of a copyright owner under § 106 are "reproduction, adaptation, publication, performance, and display" of the copyrighted work. *Seng-Tiong Ho v. Taflove*, 648 F.3d 489, 501 (7th Cir. 2011) (citing *Toney v. L'Oreal USA, Inc.*, 406 F.3d 905, 909 (7th Cir. 2005)). Further, "a state right is 'equivalent' if it requires additional elements to make out a cause of action, but the additional elements do not differ in kind from those necessary for copyright infringement." *Higher Gear*, 223 F. Supp. 2d at 957 (citing *Orioles*, 805 F.2d at 678).

Count III alleges unfair competition under Illinois common law. "Stating a claim for unfair competition under Illinois common law is not a simple task because the Illinois courts have not specifically enumerated the requisite elements." *BlueStar Mgmt. v. The Annex Club, LLC*, 2010 WL 2802213, *9 (N.D. Ill. 2010) (citing *Custom Bus. Sys., Inc. v. Boise Cascade Corp.*, 385 N.E.2d 942, 944 (Ill. App. Ct. 1979)). However, Plaintiff's claims are based on the unauthorized use of trademarks in connection with the advertising and sale of educational materials. Plaintiff's claim for unfair competition is equivalent to the "reproduction, adaptation, publication, performance, and display" rights protected by copyright law and is preempted. Defendants' Motions to Dismiss Count III are granted.

Count IV alleges unjust enrichment. To state a claim for unjust enrichment under Illinois law, "a plaintiff must allege that the defendant voluntarily accepted a benefit that would be inequitable for the defendant to retain without compensating the plaintiff." *De David v. Alaron Trading Corp.*, 796 F.Supp.2d 915, 923 (N.D. Ill. 2010). The alleged unjust enrichment comes from "profits, benefits, and mistaken goodwill it acquired by the use of [the copyrighted material], AVKO's Sequential Spelling trademarks and related marks in Defendants' marketing and sales efforts." (FAC ¶ 85.) Plaintiff is arguing that Defendants are unjustly profiting from the "reproduction, adaptation, publication, performance, and display" of Plaintiff's copyrighted work. To that extent, Plaintiff's claim for unjust enrichment is equivalent to the rights protected by copyright law and is preempted. However, Plaintiff further argues that Defendants were unjustly enriched by their failure to pay royalties and licensing revenues. Therefore, "Plaintiff's unjust enrichment claim in this case requires agreed upon terms between the parties and a financial benefit for Defendants, yet a copyright claim does not." *Cambridge Grp. Technologies, Ltd. v. Motorola, Inc.*, No. 12 CV 7945, 2013 WL 842650, at *4 (N.D. Ill. Mar. 5, 2013). To the extent that Plaintiff's unjust enrichment claim relies on the failure to pay royalties and licensing revenues from an agreement, that claim is not preempted by copyright. Defendants' Motions to Dismiss Count IV are denied.

Count V brings a claim under the Illinois Uniform Deceptive Trade Practices Act, 815 Ill. Comp. Stat. 510/1, *et seq.* Specifically, Plaintiff claims that Defendants' use of the trademarks constitutes a deceptive trade practice because it: "[p]asses off AVKO's products as those of Defendants"; "[c]auses a likelihood of confusion or misunderstanding as to the source, sponsorship, approval, or certification of Defendants' goods"; "[c]auses a likelihood of confusion or misunderstanding as to the affiliation, connection, or association with or

certification by AVKO"; and "[r]epresents that Defendants' goods have sponsorship or approval as to the affiliation, connection, or association with or certification by AVKO." (FAC ¶ 91.) Plaintiff's claim under the Illinois Uniform Deceptive Trade Practices Act is equivalent to the "reproduction, adaptation, publication, performance, and display" rights protected by copyright law and is preempted. Defendants' Motions to Dismiss Count V are granted.

Count VI alleges tortious interference with a business relationship or expectancy. The two torts are slightly different. For tortious interference with a business relationship, Plaintiff must show:

> (1) a valid and enforceable contract; (2) defendants' awareness of the contractual obligation; (3) defendants' intentional and unjustified inducement of the breach; (4) subsequent breach caused by defendants' unlawful conduct; and (5) resultant damages.

*Burrell v. City of Mattoon*, 378 F.3d 642, 652 (7th Cir. 2004) (citing *Clarage v. Kuzma*, 795 N.E.2d 348, 357 (Ill. App. Ct. 2003)). However, Plaintiff has not alleged a valid and enforceable contract or a breach of any contract. Plaintiff has not sufficiently pled tortious interference with a current business relationship.

For tortious interference with a prospective business relationship, Plaintiff must show:

> (1) the plaintiff's reasonable expectation of entering into a valid business relationship; (2) the defendants' knowledge of plaintiff's expectancy; (3) purposeful interference by the defendants that prevents the plaintiff's legitimate expectancy from being fulfilled; and (4) damages to the plaintiff resulting from such interference.

*Id.* (citing *Delloma v. Consolidation Coal Co.*, 996 F.2d 168, 170-71 (7th Cir. 1993)). Plaintiff alleges that one of their distributors, Inquisicorp, Inc., told AVKO that due to Defendants' threats and the ongoing litigation, it would not enter into a publishing agreement with AVKO. (FAC

¶ 57.) Plaintiff also alleges that Defendants have contacted distributors and threatened litigation if they buy or sell AVKO's products. (*Id.* ¶ 103.) Defendants argue that "it is perfectly legitimate for the holder of an exclusive copyright license to assert its rights." (Defs. Reply p. 8.) "An entity that is competing for prospective business, and is doing so lawfully, cannot be held liable for tortious interference with prospective advantage." *Jamsports & Entm't, LLC v. Paradama Prods., Inc.*, 382 F. Supp. 2d 1056, 1060 (N.D. Ill. 2005). Whether or not Defendants held an exclusive copyright license and were asserting their rights by threatening prospective distributors is at issue in this suit. Plaintiff's tortious interference with a prospective business relationship claim has additional elements not covered by copyright law, and those elements are not equivalent to the rights protected by copyright law. Defendants' Motions to Dismiss Count VI are denied.

Copyright Infringement

Defendants also claim that Plaintiff's copyright infringement claim, Count XII, should be dismissed because it is a breach of contract claim. Plaintiff argues that Defendants have committed copyright infringement or, in the alternative, have breached their contract with Plaintiff. Defendants argue that it is undisputed that Plaintiff granted Defendants a license. Even if this is true, Plaintiff also alleges that they affirmatively revoked that license on June 11, 2013. (*Id.* ¶ 49.) A party is allowed to plead both a breach of contract and in the alternative, if no contract is found, to plead for other relief. *See Cromeens, Holloman, Sibert, Inc v. AB Volvo*, 349 F.3d 376, 397 (7th Cir. 2003).

Furthermore, "[g]enerally speaking, contract claims affect the rights of parties to the contract and not any of the exclusive rights within the general scope of copyright." *Higher Gear*, 223 F. Supp. 2d at 958 (citing *ProCD, Inc. v. Zeidenberg*, 86 F.3d 1447, 1455 (7th Cir. 1996)).

However, a breach of contract claim is preempted if the alleged breach is nothing more than an act of infringement. *Id.* (citing *Nat'l Car Rental Sys., Inc. v. Computer Assocs., Inc.*, 991 F.2d 426, 432-33 (8th Cir. 1993)). Plaintiff makes claims that Defendants exceeded their license by creating unauthorized and derivative works, which would fall outside the contract and be preempted by copyright law. Defendants' Motions to Dismiss Count XII are denied.

### Declaratory Judgment

Counts VII and VIII seek declaratory judgments that Plaintiff is the owner of AVKO's copyrights and the Sequential Spelling™ trademarks and related marks. "[F]ederal courts have discretion to decline to hear a declaratory judgment action, even though it is within their jurisdiction." *Tempco Elec. Heater Corp. v. Omega Eng'g, Inc.*, 819 F.2d 746, 747 (7th Cir. 1987). Declaratory judgment is appropriate in situations where: "(1) [t]he controversy has ripened to a point where one of the parties could invoke a coercive remedy (i.e. a suit for damages or an injunction) but has not done so; and (2)[a]lthough the controversy is real and immediate, it has not ripened to such a point, and it would be unfair or inefficient to require the parties to wait for a decision." *Id.* at 749. In this case, the controversy has ripened to a point where Plaintiff has invoked coercive remedies and filed suit. Therefore, neither of the situations for which declaratory judgment is appropriate are present. Further, resolution of the substantive claims will resolve the requests for declaratory judgment. Defendants' Motions to Dismiss Counts VII and VIII are granted.

### Accounting

Count IX seeks an accounting of all revenues and earnings of Defendants' sales of materials that use the Sequential Spelling™ trademarks and related marks. Plaintiff did not respond to Defendants' Motion to Dismiss Count IX. To state a claim for accounting under

Illinois law, a plaintiff must show "the absence of an adequate remedy at law and one of the following: (1) a breach of fiduciary relationship between the parties; (2) a need for discovery; (3) fraud; or (4) the existence of mutual accounts which are of a complex nature." *Cole-Haddon, Ltd. v. The Drew Philips Corp.*, 454 F. Supp. 2d 772, 778 (N.D. Ill .2006). Plaintiff has not shown that there is an inadequate remedy at law, aside from merely asserting that allegation. Indeed, many Courts have dismissed a claim for accounting where breach of contract claims are brought. *See*, *e.g.*, *3Com Corp. v. Electronic Recovery Specialists, Inc.*, 104 F.Supp.2d 932, 941 (N.D. Ill. 2000) ("[P]laintiff has alleged breach of contract in count I and therefore is seeking a legal remedy in this lawsuit. Courts have dismissed accounting claims where breach of contract has also been alleged.")). Defendants' Motions to Dismiss Count IX are granted.

## Injunctive Relief

Count XI seeks a preliminary injunction against Defendants. Plaintiff did not respond to Defendants' Motions to Dismiss Count XI. However, an injunction "is an equitable remedy, not a separate cause of action." *CustomGuide v. CareerBuilder, LLC*, 813 F. Supp. 2d 990, 1002 (N.D. Ill. 2011) (citing *Walker v. Bankers Life & Cas. Co.*, No. 06 C 6906, 2007 WL 967888, at *4 (N.D. Ill. Mar. 28, 2007)). Plaintiff has filed a Motion for Preliminary Injunction separately. Defendants' Motions to Dismiss Count XI are granted.

### *Thomas Morrow*

Morrow argues that Counts I-IX and XI-XII of the First Amended Complaint should be dismissed for the reasons set forth in Wave 3's Motion to Dismiss. Those counts are dismissed, or not, as discussed above. In the alternative, Morrow argues that he is not personally liable for any conduct that occurred after June 18, 2010, because he was acting on behalf of and under the

authority of Wave 3, which was incorporated on that date.  Plaintiff responds that "corporate officers may be liable for their personal involvement in infringement or other tortious activities if there is a 'special showing' that they acted outside the scope of their official duties." *Lang Exterior, Inc. v. Lang Windows, Inc.*, No. 11 C 5517, 2012 WL 3545703, at *2 (N.D. Ill. Aug. 16, 2012) (citing *Dangler v. Imperial Machine Co.*, 11 F.2d 945, 946, 947 (7th Cir. 1926)). Examples of a special showing include: "[1] when he personally participates in the manufacture or sale of the infringing article (acts other than as an officer), or [2] when he uses the corporation as an instrument to carry out his own willful and deliberate infringements, or [3] when he knowingly uses an irresponsible corporation with the purpose of avoiding personal liability." *Id.* at *3 (citing *Dangler*, 11 F.2d at 947.)

Plaintiff claims that is has alleged Morrow treated HSH, Wave 3, and himself as the same entity; that he paid for licensing fees personally; and claimed that he, personally, was the source of the disputed intellectual property.  However, the facts alleged in the complaint, even taken in the light most favorable to Plaintiff, do not make a special showing that Morrow was acting outside of his official duties.  The only thing that Morrow is alleged to have done personally is hold himself out as Sequential Spelling™.  All other allegations bear upon the actions of Defendants, not Morrow as an individual.  Plaintiff has failed to adequately allege that Morrow acted outside of his official duties.  Defendant Morrow's Motion to Dismiss all claims against him as an individual is granted.

## CONCLUSION

For the reasons set forth above, Defendants' Motions to Dismiss [20, 21] are granted in part and denied in part.  Defendants' Motions to Dismiss Counts I, II, IV, VI, and XII are denied.  Defendants' Motions to Dismiss Counts III, V, VII, VIII, IX, and XI are granted without

15

prejudice.  Defendant Morrow's Motion to Dismiss all claims against him as an individual is granted without prejudice.  Plaintiff may file, within thirty days of this Order, an amended Complaint as to the allegations in Counts III, V, VII, VIII, and IX, and allegations against Morrow as an individual, if they can do so pursuant to Rule 11.

Date:      October 15, 2015            _____
　　　　　　　　　　　　　　　　　　　　　　　JOHN W. DARRAH
　　　　　　　　　　　　　　　　　　　　　　　United States District Court Judge