| | |
|---|---|
| AVKO EDUCATIONAL RESEARCH FOUNDATION, INC., a Michigan nonprofit corporation,<br><br>               Plaintiff,<br><br>   v.<br><br>WAVE 3 LEARNING, INC., a Nevada corporation, and THOMAS MORROW, an individual d/b/a SEQUENTIAL SPELLING,<br><br>               Defendants. | Case Number: 15-cv-03393<br><br>Hon. John W. Darrah |
| WAVE 3 LEARNING, INC., a Nevada corporation<br><br>               Counterclaimant<br><br>   v.<br><br>AVKO EDUCATIONAL RESEARCH FOUNDATION, INC., a Michigan nonprofit corporation, and DON MCCABE, an individual,<br><br>               Counterdefendants | |

## <u>WAVE 3 LEARNING, INC.'S AND THOMAS MORROW'S ANSWER AND COUNTERCLAIMS</u>

Defendant Wave 3 Learning, Inc. ("Wave 3") and Thomas Morrow ("Morrow") hereby

answer the Complaint filed in this action by Plaintiff AVKO Educational Research Foundation,

Inc. ("AVKO") as follows:

### <u>PARTIES</u>

1.      Defendants admit that AVKO's principal place of business is located at 3084

Willard Road, Birch Run, Michigan, 48415, that AVKO's president is Donald J. McCabe

("McCabe"), and that AVKO purports to be a Michigan domestic nonprofit corporation with federal status as a 501(c)(3) tax-exempt membership organization; however, Defendants deny that AVKO in reality operates as a nonprofit, 501(c)(3) tax-exempt membership organization.

2.      Admit.

3.      Defendants admit that Thomas A. Morrow is an individual living in Arlington Heights; however, Wave 3 denies that Morrow is doing business as Sequential Spelling.

## JURISDICTION

4.      Defendants admit that the complaint purports to state a claim arising under the Lanham Act, 15 U.S.C. § 1051 et seq. and the Copyright Act, 17 U.S.C. §101 et seq., and that such claims, if proper, would arise within the Court's subject matter jurisdiction, but deny that the complaint states a valid claim. Defendants admit that the parties are completely diverse and the purported amount in controversy exceeds $75,000.

5.      Defendants admit that the Court has supplemental jurisdiction over AVKO's state law claims but deny that all such claims arise under Illinois law.

6.      Defendants admit that the venue and personal jurisdiction are proper in the Northern District of Illinois but deny the implication that Defendants have without authorization promoted goods and services in connection with a mark similar to AVKO's mark in this District.

## FACTUAL BACKGROUND

7.      Deny for lack of knowledge.

8.      Deny for lack of knowledge.

9.      Deny for lack of knowledge.

10.      Deny for lack of knowledge.

11.      Deny.

12.     Deny.

13.     Deny.

14.     Deny.

## THE 2010 CONTRACT

15.     Defendants admit that McCabe met Morrow in May 2009 at the Florida Parent Education Association's home-schooling conference/tradeshow and that Morrow was at that time the CEO of Home School Holdings, Inc. ("HSH"); however, Defendants deny that McCabe was simply looking for additional distributors.

16.     Defendants admit that on May 31, 2009, Morrow went to Birch Run, Michigan and that AVKO and HSH entered into discussions but deny the implication that the discussions were about something other than AVKO's transfer of the copyright rights to Works to HSH.

17.     Defendants admit that AVKO and HSH agreed in principal to an acceptable contract but deny AVKO's representation of the terms of that contract.

18.     Defendants deny for lack of knowledge that on September 20, 2009, an AVKO volunteer discovered information suggesting that HSH may be financially unsound.  Defendants admit that Morrow reassured McCabe/AVKO over the phone that HSH was not ready to close its doors but deny Plaintiff's characterization of that conversation.

19.     Defendants admit that Morrow filed for personal bankruptcy on November 7, 2009 but deny that Morrow declared that HSH's stock was worthless.

20.     Defendants admit that Morrow did not tell McCabe/AVKO he went into personal bankruptcy but deny the implication that he should have or was even legally permitted to do so. Defendants also deny that HSH's stock has no value.

3

21.     Defendants admit that Morrow emailed McCabe/AVKO and told him that, as part of the proposed agreement, HSH would enter 5,000,000 shares of HSH stock into a shareholder register for McCabe/AVKO but deny the implication that this agreement was otherwise fulfilled, that McCabe/AVKO expected it to be fulfilled, and that the value of the stock was $0.001 per share.

22.     Defendants admit that McCabe/AVKO sent a signed agreement to HSH but deny it included the terms as represented.

23.     Deny.

24.     Defendants admit that McCabe/AVKO and HSH discussed a new contract but deny that it was because Morrow never executed an earlier contract and deny this new contract would have had the same terms as the 2009 Contract.

25.     Deny.

26.     Defendants admit that on June 3, 2010, Morrow sent to McCabe/AVKO a subscription agreement that gave McCabe/AVKO $250,000.00 worth of shares in HSH at $0.05 per share but deny that the share's actual value was $0.01 per share.  Defendants admit that McCabe/AVKO did not sign the subscription agreement.

27.     Defendants admit that Morrow signed a licensing agreement but deny the terms as represented by McCabe/AVKO and deny that Morrow solely drafted the agreement ("the 2010 Contract").  Defendants admit that McCabe/AVKO did not execute a subscription agreement.

28.     Defendants admit that Morrow originally paid McCabe/AVKO $50,000 but deny that Wave 3 did not provide the $250,000.00 subscription agreement.  Defendants deny any royalty payments were owed.

29.     Defendants admit that Morrow gave McCabe/AVKO a $15,000 personal check but deny the implication that the check bounced due to the fault of Morrow.

30.     Defendants admit that McCabe/AVKO originally demanded a purchase order of $42,000 worth of inventory, admit that AVKO then changed that purchase order to approximately $25,000, and admit that McCabe/AVKO ultimately could only provide $15,000 worth of inventory.

31.     Defendants admit that Morrow informed McCabe/AVKO that HSH would no longer be able to fulfill the terms of the 2010 Contract but deny that he did so "thereafter"—as opposed to during—the above-described conduct.

32.     Defendants admit that Morrow proposed replacing the $250,000 subscription agreement outlined in the HSH Template with a 7.5% ownership stake in Wave 3 but deny that the ownership stake would have been worth $1.50 and deny that McCabe/AVKO ever explicitly refused to sign the agreement.

33.     Defendants admit that Morrow resigned as CEO of HSH and was paid $1,000 as part of the terms of his departure agreement but deny that the agreed-upon amount reflected the value of HSH at the time.

34.     Defendants admit that Morrow informed McCabe/AVKO that AVKO was a founding shareholder of Wave 3, but deny the implication that McCabe/Morrow did not have previous notice of Morrow's intent to do so.

35.     Defendants admit that AVKO is not a founding shareholder of Wave 3.

36.     Deny.

37.     Deny.

38.     Deny.

39.     Defendants admit that Morrow emailed McCabe/AVKO on March 4, 2011, but deny that Morrow communicated any intent to file suit.

40.     Deny.

41.     Deny.

42.     Deny.

43.     Defendants admit that Wave 3 communicated to McCabe/AVKO in a July 12 email that Wave 3 had purchased rights to the copyrighted materials but deny there was no agreement between Wave 3 and McCabe/AVKO and deny that the $50,000 check was not thereafter novated to Wave 3.

44.     Denies.

## EASTERN DISTRICT OF MICHIGAN LITIGATION

45.     Defendants admit that AVKO filed suit in Michigan's Saginaw County Court House against Morrow and Wave 3 two weeks after Wave 3 sent AVKO a letter, but deny that this letter was "threatening."   Defendants admit that the case was subsequently removed to the Eastern District of Michigan.

46.     Deny.

47.     Defendants admit that it emailed distributors after the first lawsuit was commenced but deny Plaintiff's additional allegations and characterizations.

48.     Admit.

49.     Defendants admit that Wave 3 continued to sell Sequential Spelling materials but deny they were AVKO's materials and deny the implication that there was any licensing fee to pay.

50.     Defendants admit that AVKO sent the May 2, 2013 and May 9, 2013 emails but deny that there was any licensing fee to pay and deny that the license was revocable.

51.    Defendants deny that Wave 3's license was terminated on June 11, 2013, deny that the license was revocable, deny that Wave 3 failed to meet the terms of the license, but admit that Morrow as an individual never had any rights in the Works.

52.    Defendants admit that Wave 3 continues to use, distribute, reproduce, and make derivatives of the Works but deny that it does so without authority (a license) from AVKO and deny that it did not pay for the right to do so.

## NORTHERN DISTRICT OF ILLINOIS LITIGATION

53.    Defendants admit that Wave 3 filed a declaratory judgment on March 19, 2014 in the Northern District of Illinois seeking a declaration that it owns the copyrights in or a license to the Works.

54.    Defendants admit that the Court dismissed without prejudice Wave 3's declaratory judgment action and admit that the Court made the cited statements in its dismissal.

55.    Defendants admit to filing an amended complaint, that this complaint included an assignment dated August 14, 2014, but deny that this assignment was intended to represent a current conveyance (as opposed to a memorialization of an alleged past agreement), deny that this assignment was necessary, and deny that the construction and submission of this assignment was not an argument in the alternative, made out of an abundance of caution.

56.    Wave 3 admits that it filed another complaint and voluntarily withdrew its state-based claims.

57.    Defendants admit that the Court dismissed Wave 3's complaint because of the reasons stated therein but deny the validity of those reasons and that the Court's judgment and/reasoning has any preclusive effect.

## ACTIVITIES OF DEFENDANT WAVE 3

58.     Defendants admit that Wave 3 emailed McCabe/AVKO detailing the outcome and repercussions of the litigation and asking McCabe/AVKO to offer a settlement but deny Wave 3 asked McCabe/AVKO to assign its copyrights and trademarks at no cost.

59.     Deny.

60.     Deny.

61.     Deny.

62.     Defendants admit that one of Wave 3's officers sent an email to IMI that noted "[McCabe] remembers very little of the agreements. The one time I discussed my agreement with him, he mistook its terms for the terms in yours or completely forgot them altogether…." but deny this statement somehow insinuates McCabe is "senile."

63.     Deny for lack of knowledge.

64.     Deny for lack of knowledge.

65.     Defendants admit that Wave 3's website expressly claims that Wave 3 has an exclusive license to the Works and that Wave 3 uses the name "Sequential Spelling" to appropriately identify the Works but deny the implication the mark is exclusively AVKO's and the implication that Wave 3 is responsible for creating the  direct competition that now exists.

66.     Admit.

67.     Deny for lack of knowledge.

68.     Deny.

69.     Defendants admit that Wave 3 exhibited materials using the Sequential Spelling name at the Midwest Homeschool Convention in Cincinnati from April 9-11, 2015 but deny that it did not have the legal right to do so.

70.     Deny.

71.     Deny.

72.     Admit.

73.     Admit.

74.     Defendants admit that Wave 3 released an application for the iPad called Sequential Spelling, that Wave 3 sells this app on iTunes, and that Wave 3 listed itself as the creator of the app; however, Defendants deny that it is poorly functioning, deny that Wave 3 did not have the legal right to release the app, and deny that Wave 3 released it on February 2, 2014, and not on its actual release date in October of 2011.

75.     Deny for lack of knowledge.

76.     Deny.

## ACTIVITIES OF DEFENDANT THOMAS MORROW

77.     Defendants admit that Wave 3 made this allegation but deny the implication that it did so not as merely an argument in the alternative to its original, consistent, and foremost argument that AVKO licensed the Works directly to Wave 3.

78.     Defendants admit that Morrow executed an agreement with Wave 3 on August 14, 2014 but deny the implication that it did so not in the alternative or out of an abundance of caution to the Court's possible different interpretation of the facts.

79.     Deny.

80.     Deny.

81.     Deny.

82.     Deny.

83.     Deny.

84.     Defendants admit that one of its officers sent an email to IMI that noted "[McCabe] remembers very little of the agreements. The one time I discussed my agreement with him, he mistook its terms for the terms in yours or completely forgot them altogether…." but deny this statement somehow insinuates McCabe is "senile."

85.     Defendants lack sufficient information to deny or admit.

86.     Deny for lack of knowledge.

## COUNT I
## FEDERA UNFAIR COMPETITION
## 15 U.S.C. § 1125(a)
## (WAVE 3)

87.     Wave 3 incorporates its answers to paragraphs 1-86 as if fully set forth herein.

88.     Denies.

89.     Denies.

90.     Denies.

91.     Denies.

## COUNT II
## UNFAIR COMPETITION UNDER THE LANHAM ACT – FALSE DESIGNATION OF ORIGIN
## 15 U.S.C. § 1125(a)
## (WAVE 3)

92.     Wave 3 incorporates its answers to paragraphs 1-91 as if fully set forth herein.

93.     Denies.

94.     Denies.

95.     Denies.

96.     Denies.

## COUNT III
## UNFAIR COMPETITION UNDER ILLINOIS COMMON LAW
### (WAVE 3)

97.     Wave 3 incorporates its answers to paragraphs 1-96 as if fully set forth herein.

98.     Wave 3 admits that it expressly claims that Wave 3 has an exclusive license to the Works but denies the implication that this license is in direct competition with AVKO due to the fault of Wave 3.

99.     Denies.

100.    Wave 3 admits to using the Sequential Spelling name and to advertising that it has an exclusive license to the Works online, at trade shows, and other outlets but denies that it has claimed or claims to be the "Sequential Spelling" company.

101.    Denies for lack of knowledge.

102.    Wave 3 admits to exhibiting materials bearing the Sequential Spelling mark at the Midwest Homeschool Convention in Cincinnati, Ohio from April 9-11, 2015, but denies that it claimed to be the "Sequential Spelling" company.

103.    Admits.

104.    Admits.

105.    Wave 3 admits that it released an application for the iPad called Sequential Spelling; however, Wave 3 denies that it is poorly functioning, denies that it did not have the legal right to release the app, and denies that it released it on February 2, 2014, and not on its actual release date in October of 2011.

106.    Denies.

107.    Denies.

108.    Denies.

109.    Denies.

110.    Denies.

111.    Denies.

112.    Denies.

113.    Denies.

## COUNT IV
## UNJUST ENRICHMENT
### (WAVE 3)

114.    Wave 3 incorporates its answers to paragraphs 1-113 as if fully set forth herein.

115     Denies.

116.    Denies.

117.    Denies.

118.    Denies.

119.    Denies.

120.    Denies.

121.    Denies.

## COUNT V
## ILLINOIS UNIFORM DECEPTIVE TRADE PRACTICES ACT
## 815 ILCS 510/1, *et seq.*
### (WAVE 3)

122.    Wave 3 incorporates its answers to paragraphs 1-121 as if fully set forth herein.

123.    Wave 3 admits that its website expressly claims that Wave 3 has an exclusive license but denies the implication that this license is in direct competition with AVKO due to the fault of Wave 3.

124.    Admits.

125.    Denies for lack of knowledge.

126.    Wave 3 admits that it advertises itself as the origin or "manufacture" of the products it sells in connection with the Sequential Spelling name.

127.    Denies.

128.    Wave 3 admits that it exhibit materials using the Sequential Spelling mark but denies it did not have the right to do so.

129.    Admits.

130.    Admits.

131.    Wave 3 admits that it released an application for the iPad called Sequential Spelling; however, Wave 3 denies that it is poorly functioning, denies that it did not have the legal right to release the app, and denies that it released it on February 2, 2014, and not its actual release date in October of 2011.

132.    Denies.

133.    Denies.

134.    Denies.

135.    Denies.

136.    Denies.

137.    Denies.

138.    Denies.

**COUNT VI**
**TORTIOUS INTERFERENCE WITH A BUSINESS EXPECTANCY**
**(WAVE 3)**

139.    Wave 3 incorporates its answers to paragraphs 1-138 as if fully set forth herein.

140.    Denies for lack of knowledge.

141.    Denies for lack of knowledge.

142.    Denies.

143.    Denies.

144.    Denies.

145.    Denies.

146.    Denies.

147.    Denies.

## COUNT VII
## BREACH OF CONTRACT
## (IN THE ALTERNATIVE)
## (WAVE 3)

148.    Wave 3 incorporates its answers to paragraphs 1-147 as if fully set forth herein.

149.    Denies.

150.    Denies.

151.    Denies.

152.    Denies.

153.    Denies.

154.    Denies.

155.    Denies.

## COUNT VIII
## COPYRIGHT INFRINGEMENT
## (WAVE 3)

156.    Wave 3 incorporates its answers to paragraphs 1-155 as if fully set forth herein.

157.    Denies.

158.    Wave 3 admits that some of AVKO's works are registered with the United States Copyright Office but denies for lack of knowledge that all of AVKO's works are registered and/or valid.

159.    Denies.

160.    Denies.

## COUNT IX
## FEDERAL UNFAIR COMPETITION
## 15 U.S.C. § 1125(a)
## (THOMAS MORROW)

161.    Thomas A. Morrow incorporates the answers to paragraphs 1-160 as if fully set forth herein.

162.    Denies.

163.    Denies.

164.    Denies.

165.    Denies.

166.    Denies.

167.    Denies.

168.    Denies.

169.    Denies.

170.    Denies.

## COUNT X
## UNFAIR COMPETITION UNDER THE LANHAM ACT – FALSE DESIGNATION OF ORIGIN
## 15 U.S.C. § 1125(a)
## (THOMAS MORROW)

171.    Thomas A. Morrow incorporates the answers to paragraphs 1-170 as if fully set forth herein.

172. Denies.

173. Denies.

174. Denies.

175. Denies.

176. Denies.

177. Denies.

178. Denies

179. Denies.

## **COUNT XI**
## **UNFAIR COMPETITION UNDER ILLINOIS COMMON LAW**
### **(THOMAS MORROW)**

180. Thomas A. Morrow incorporates the answers to paragraphs 1-179 as if fully set forth herein.

181. Denies.

182. Denies.

183. Denies.

184. Denies.

185. Denies.

186. Denies.

187. Denies.

188. Denies.

189. Denies.

190. Denies.

192. Denies.

## COUNT XII
## ILLINOIS UNIFORM DECEPTIVE TRADE PRACTICES ACT
## 815 ILCS 510/1, et seq.
## (THOMAS MORROW)

193.   Thomas A. Morrow incorporates the answers to paragraphs 1-192 as if fully set forth herein.

194.   Denies.

195.   Denies.

196.   Denies.

197.   Denies.

198.   Denies

199.   Denies.

200.   Denies.

201.   Denies.

202.   Denies.

203.   Denies.

204.   Denies.

205.   Denies.

206.   Denies.

## COUNT XIII
## COPYRIGHT INFRINGEMENT
## (THOMAS MORROW)

207.   Thomas A. Morrow incorporates the answers to paragraphs 1-206 as if fully set forth herein.

208.   Denies.

209.   Denies.

210. Denies.

211. Denies.

212. Denies.

213. Denies.

214. Denies.

## AFFIRMATIVE DEFENSES

Defendants set forth the following affirmative and other defenses. Defendants do not intend hereby to assume the burden of proof with respect to those matters on which, under law, AVKO bears the burden of proof.

### First Affirmative Defense

The Complaint fails to state a claim upon which relief may be granted.

### Second Affirmative Defense

Wave 3 has an irrevocable license to use the copyrighted works at issue (and all derivatives thereof), as well as the SEQUENTIAL SPELLING trademark in connection with those works, for the life of the copyrights contained in the license.

### Third Affirmative Defense

AVKO's claims are barred in whole or in part by the doctrines of estoppel, acquiescence, and/or laches.

### Fourth Affirmative Defense

AVKO's claims for relief are barred in whole or in part by the doctrines of unclean hands and inequitable conduct.

### Fifth Affirmative Defense

Defendants reserve the right to add additional defenses, including additional affirmative defenses, as discovery progresses.

## COUNTERCLAIMS

Defendant-Counterclaimant Wave 3 Learning, Inc., by and through the undersigned counsel, hereby brings the following Counterclaims against Plaintiff-Counterdefendant, AVKO Educational Research Foundation, Inc. ("AVKO") and Counterdefendant Don McCabe ("McCabe"). In support thereof, Wave 3 states as follows:

## INTRODUCTION

1.     This is an action for breach of contract, unjust enrichment, tortious interference with a prospective business relationship, trade libel, punitive damages, and alter ego.

2.     The action results from, *inter alia*, AVKO's and/or McCabe's breach of its licensing agreement with Wave 3 Learning, Inc., as well as AVKO's and/or McCabe's tortious words and actions related thereto.

## JURISDICTION AND VENUE

3.     This Court has supplemental jurisdiction over Wave 3's claims under 18 U.S.C. § 1367.

4.     Venue and personal jurisdiction is proper in the Northern District of Illinois under 28 U.S.C. 1391 (b) and (c) and 15 U.S.C. 1121 since, *inter alia*, a substantial part of the events or omissions giving rise to the claims occurred in this district, and because Wave 3 and AVKO are involved in an ongoing lawsuit involving the same nucleus of facts in this district.

## PARTIES

5.     Counterclaimant Wave 3 Learning, Inc. is a Nevada corporation with its principal place of business located at 126 E. Wing St., Suite 240, Arlington Heights, Illinois 60004.

6.     Counterdefendant AVKO Educational Research Foundation, Inc. is a Michigan corporation with its principal place of business located at 3084 Willard Road, Birch Run, Michigan 48415.

7.     Counterdefendant Don McCabe is an individual residing at 3084 Willard Road, Birch Run, Michigan 48415.

## BACKGROUND

8.     Since 1974, Don McCabe has sold a spelling program called Sequential Spelling ("The Works") under the auspice of his AVKO Educational Research Foundation ("AVKO").  In reality, however, AVKO is Don McCabe's alter ego and business conduit.

9.     McCabe has not only dominated AVKO and its Board, he has also openly used AVKO funds to improperly pay for his house, property taxes, utilities, cars, and other personal luxuries and expenses.

10.     By 2009, due to his advancing age and declining health, McCabe sought out an outside entity to take over the commercialization of The Works: rather than continuing to run day-to-day business operations, McCabe (and by extension AVKO) sought passive licensing income.  *See* Exhibit A.

11.     In May of 2009, McCabe met Thomas A. Morrow.  At the time, Morrow was CEO of Home School Holdings, Inc. ("HSH"), a home education company that was pursuing certification from the SEC to complete an initial public offering or "IPO."

12.     Soon after their initial meeting, the two parties began discussing how HSH could take over the commercialization of The Works.  After extensive negotiations (mostly between Morrow and McCabe), HSH and AVKO finally agreed in principal to a licensing deal in June of 2010: In exchange for cash, stock, and HSH's efforts to reproduce, improve, distribute, and market The Works, AVKO was prepared to grant HSH the exclusive right to reproduce, improve, distribute, and market The Works in the United States and Canada, as well as the nonexclusive right to reproduce, improve, distribute, and market The Works internationally.  *See*

Exhibit B. The memorialization of such an agreement is also made clear in the minutes of AVKO's Board on June 12, 2011, wherein they refer to the "W3L Contract" and talk about the "sale" of rights to Wave 3. *See* Exhibit C.

13.     By June of 2010, however, HSH had no capital and its SEC certification was in doubt. Therefore, Thomas Morrow—in his individual capacity—paid AVKO the necessary funds and purchased the necessary inventory to initiate the deal. Specifically, Morrow paid to AVKO $50,000 in consideration and purchased $15,000 worth of inventory. It was well understood by both Morrow and Don McCabe that this payment, as well as Morrow's subsequent signing of the HSH contract, was conditional: if HSH could not secure SEC certification or immediately pay back the money, Morrow would pursue the deal independently of HSH. *See* Exhibit D.

14.     When it was clear that HSH would not be able to immediately repay Morrow and that the company would not secure SEC certification, Morrow resigned from HSH and formed Wave 3 Leaning, Inc. to continue negotiating an agreement with AVKO. AVKO never entered into any actual agreement with HSH. *See* Exhibit E.

15.     Although Wave 3 and AVKO used the June 2010 HSH agreement as a starting point for their deal, the two parties through communications and course of performance discarded most of those terms and ultimately assented to a simpler exclusive license: whereas Wave 3 paid AVKO $50,000 (and purchased $15,000 of inventory and expended effort producing, improving, distributing, and marketing the Works), AVKO granted Wave 3 the exclusive rights to The Works in the U.S. and Canada (and an implied nonexclusive license to all other countries) for the life of the copyrights of The Works. AVKO's signed October 2010 990 tax return memorialized this agreement and these terms. *See* Exhibit F.

16. Between the June payment and the October memorialization, AVKO rejected Wave 3's two proposed agreements that tracked the HSH Template (which included a subscription agreement) as well as Wave 3's offer of a promissory note in lieu of a subscription agreement. *See* Exhibit G-H.

17. Upon rebuffing every reasonable attempt by Wave 3 to get an agreement in writing, AVKO never proposed an acceptable agreement or even acceptable terms. Instead, AVKO convinced Wave 3 that such terms were not necessary (that it could "maintain the status quo") and instructed Wave 3 to "spend [its] time and energy into . . . editing and printing the AVKO materials." *See* Exhibit I. Consequently, that is exactly what Wave 3 did.

18. Relying on this license and on AVKO's many representations and encouragements, over the next twelve months Wave 3 invested *in toto* its time, labor, and money into commercializing and modernizing The Works. With AVKO's full knowledge and assent, Wave 3 spent hundreds of thousands of dollars and thousands of man hours manufacturing and improving The Works, creating an iPad app, running a marketing and promotional campaign, and selling The Works. During this time, AVKO never contested and in fact assisted Wave 3 in developing, improving, marketing, and selling The Works under the SEQUENTIAL SPELLING name. *See* Exhibit J.

19. As Wave 3 began developing and commercializing The Works, AVKO and McCabe began nitpicking and second-guessing Wave 3's business operations (such as Wave 3's answering machine, customer service, and advertising methods) and commercial strategies (such as making an iPad app and various product improvements). Initially a licensor, AVKO began acting like a franchisor.

20.     In January of 2011, Wave 3 discovered an individual was cybersquatting on the <sequentialspelling.com> domain name.  Wave 3 accordingly instituted a UDRP proceeding against the cybersquatter to reclaim the domain name.

21.     To accelerate the UDRP proceeding, Wave 3 sent AVKO an agreement (the "Trademark and Copyright Assignment Agreement") to *more clearly document* its exclusive license to use The Works and associated SEQUENTIAL SPELLING trademark.

22.     By that time, however, McCabe and AVKO were irreparably frustrated with Wave 3 and its commercial strategies.  As a result, AVKO refused to sign the agreement and began demanding things like desk copies and speaking engagements that it never demanded before, as well as objecting to terms like "copyright" that it never contested before—even though such things were not mandatory under the HSH Template.  *See* Exhibit C.

23.     AVKO, however, did not object to the trademark terms of the agreement, did not object to Wave 3 filing the UDRP proceeding, and did not object to Wave 3's eventual acquisition and use of the <sequentialspelling.com> domain name.  *See* Exhibit K.

24.     Not until June 6, 2011 did AVKO's attorney send a demand letter to Wave 3 claiming that Wave 3 had infringed upon AVKO's copyright rights and had breached the HSH Template (the letter made no mention of trademarks).  *See* Exhibit L.  By that time, however, Wave 3 had already invested over $150,000 over twelve months producing, improving, advertising, and selling The Works.

## EASTERN DISTRICT OF MICHIGAN LITIGATION

25.     In 2011, AVKO filed a Petition for Injunctive Relief and a Temporary Restraining Order in Genesee County, Michigan.  This was denied.  AVKO then filed a Complaint in the

Saginaw County Circuit Court on July 29, 2011, which alleged, among other things, that Wave 3 and Morrow infringed on AVKO's copyrights in The Works.

26.     Defendants soon thereafter removed the suit to the United States District Court for the Eastern District of Michigan.  On April 5, 2013, the Eastern District of Michigan granted Wave 3 and Morrow's Motion for Summary Disposition, which resolved all of AVKO's causes of action in Wave 3 and Morrow's favor—including AVKO's claim of copyright infringement. *See Educ. Res. Found., Inc. et al. v. Morrow et al.*, No. 1:11-cv-13381, (E.D. Mich. April 5, 2013).  The district court found that Defendants had "at least an implied license" to exploit the copyrighted works.  *AVKO Educ. Research Found., Inc. et al. v. Morrow et al.*, No. 1:11-cv-13381 (E.D. Mich. April 5, 2013).

27.     Thereafter, to expedite the resolution of the case, Wave 3 and Morrow voluntarily dismissed all of their counterclaims except for the defamation and tortious interference claims. Because these remaining claims were state-based causes of action, however, the district court dismissed those counts without prejudice for lack of jurisdiction.   *See AVKO Educ. Research Found., Inc. et al. v. Morrow et al.*, No. 1:11-cv-13381 (E.D. Mich. February 10, 2014).

## POST-MICHIGAN LITIGATION

28.     Following the Court's judgment, on June 11, 2013, AVKO sent a letter to Wave 3 stating—without explanation—that Wave 3 needed to "renew" the license recognized by Judge Ludington in the summary judgment, that Wave 3 was in breach of that license, that Wave 3 was "expressly forbidden to sell any of the works" until that breached was cured, and that if Wave 3 did not pay and initiate negotiations within ten days, AVKO would notify Wave 3's distributors that it was in breach of the license and that it "defi[ed]" Judge Ludington's order.  *See* Exhibit M.

29.     More than a half of a year later, on February 17, 2014, McCabe sent Wave 3 an email stating—again without any explanation—that Wave 3 was violating the "implied terms of Judge Ludington's licensing agreement" and that AVKO was "revoking Wave 3 Learning's license to reproduce and distribute" The Works.  *See* Exhibit N.  Soon thereafter, McCabe began sending emails to various distributors of Wave 3's products stating that "AVKO owns the copyrights to its materials" and requesting that the distributors purchase materials from AVKO instead of Wave 3.  AVKO also told several of Wave 3's distributors and customers that Wave 3's distributors were selling a "counterfeit" or "illegal" version of Sequential Spelling.  *See* Exhibit O.

## NORTHERN DISTRICT OF ILLINOIS LITIGATION

30.     On May 7, 2014, in response to AVKO's claims and emails to Wave 3's distributors and customers, Wave 3 brought a civil action for declaratory judgment to determine its rights to the copyrights in The Works.  Judge Kendall ultimately dismissed Wave 3's action (without prejudice) due to lack of subject matter jurisdiction because she believed that Wave 3's pleadings failed to evidence sufficient ownership of the copyrights in The Works necessary to bring a lawsuit in federal court.  *See Wave 3 Learning, Inc. v. AVKO Educ. Research Found.*, No. 11-13381 (E.D. Mich. Feb. 10, 2014).  Although Wave 3 believed and at all times argued that AVKO granted Wave 3 an exclusive license to the copyrighted works at issue from the beginning of its relationship with AVKO, Wave 3—in the alternative—drafted a licensing agreement from Morrow to Wave 3 in order to prove Wave 3's ownership of the copyrights at issue.  Such an agreement was written in response to the Court's mistaken belief that Morrow owned the copyrighted works and the mistaken requirement that ownership of a copyright is necessary to invoke federal jurisdiction in a declaratory judgment lawsuit.

31.     After the dismissal of the declaratory judgment action, AVKO proceeded to license The Works to third parties in the United States and elsewhere.  After rejecting Wave 3's request for binding arbitration and its subsequent demand to recognize its exclusive rights, AVKO proceeded to breach both the original HSH Template (by licensing The Works to others in the U.S. and Canada and by licensing The Works to others outside of the U.S. and Canada without Wave 3's approval or imbursement) and the simpler exclusive license (by licensing The Works to others in the U.S. and Canada).

32.     On April 16, 2015, AVKO filed the current action in the Northern District of Illinois.  On May 18th, 2015, AVKO filed an Amended Complaint.

33.     On July 31, 2015, Wave 3 filed a Motion to Dismiss.

34.     On August 4, 2015, AVKO filed a motion for preliminary injunction.

35.     On October 15, 2015, the Court denied AVKO's motion for a preliminary injunction and issued an Order dismissing without prejudice all Counts against Defendant Morrow and Counts III, V, VII, VIII, IX, and XI against Defendant Wave 3.

36.     On November 6, 2015, AVKO filed a Second Amended Complaint.

## COUNT I
## BREACH OF CONTRACT

37.     Wave 3 incorporates by reference into this Count all of the allegations appearing in paragraphs 1-36 of its counterclaims as if set forth fully herein.

38.     Wave 3 was granted and still owns an irrevocable exclusive copyright license to commercially exploit The Works in the United States and Canada for the life of the copyrights licensed.

39.     Wave 3 was also granted and still owns at least an implied non-exclusive copyright license to commercially exploit The Works in all countries outside of the United States and Canada.

40.     AVKO, through the conduct set out in detail above, committed material breaches of that exclusive license by, among other things, selling The Works to distributors and other non-individuals in the United States and Canada and by licensing The Works to third parties in the United States and Canada.

41.     The foregoing breaches of contract have caused and are causing Wave 3 substantial damages, including lost compensation and royalty fees, the loss of company resources, and harm to the company's reputation and relations with its customers and potential customers.

42.     The Court should find that AVKO has materially breached its exclusive licensing agreement with Wave 3, that these breaches have directly injured Wave 3, and should award Wave 3 damages and other relief consistent with the prayer for relief below.

WHEREFORE, Wave 3 prays that this Honorable Court enter an order and judgment in its favor and against AVKO that includes the following:

(a) A permanent mandatory injunction ordering AVKO to stop selling The Works to distributors in the United States and to stop licensing the works to third parties in the United States;

(b) AVKO's profits associated with the breach and/or damages to Wave 3, in an amount to be determined at trial;

(c) Both pre-judgment and post-judgment interest; and

(d) Such other and further relief as this Court finds just and equitable.

## COUNT II
## UNJUST ENRICHMENT

43.     Wave 3 incorporates by reference into this Count all of the allegations appearing in paragraphs 1-42 of its counterclaims as if set forth fully herein.

44.     AVKO granted Wave 3 the exclusive license to sell the Works under the Sequential Spelling mark, encouraged and assisted Wave 3 to monetize the Works and build up the Sequential Spelling brand in the United States and Canada, then breached that exclusive license and profited from Wave 3's efforts.

45.     AVKO has been and will continue to be unjustly enriched by profiting off Wave 3's built up goodwill of the Sequential Spelling brand in the United States and Canada due to Wave 3's efforts to improve and monetize the Works sold under the Sequential Spelling mark since June of 2010.

46.     AVKO's wrongful acts have injured Wave 3 through the confusion of existing and potential customers, injury to Wave 3's reputation, and diminution in the value of the Sequential Spelling mark, as used in connection with spelling products sold in the United States and Canada.

47.     But for AVKO's wrongful acts, Wave 3 would not have lost revenue, lost customers, or experienced consumer confusion, reputational injury, and diminution in the value of the Sequential Spelling mark in the United States and Canada.  AVKO's wrongful acts were without Wave 3's consent.

48.     Wave 3 has no adequate remedy at law and, if AVKO's activities are not enjoined, Wave 3 will continue to suffer irreparable harm and injury to its goodwill and reputation.

WHEREFORE, Wave 3 prays that this Honorable Court enter an order and judgment in its favor and against AVKO that includes the following:

(a) A permanent mandatory injunction ordering AVKO to stop selling or licensing The Works to distributors and other non-individuals in the United States and Canada under the Sequential Spelling mark.

(b) AVKO's profits associated with the breach and/or damages to Wave 3, in an amount to be determined at trial;

(c) Both pre-judgment and post-judgment interest; and

(d) Such other and further relief as this Court finds just and equitable.

## COUNT III
## TORTIOUS INTERFERENCE WITH A PROSPECTIVE BUSINESS RELATIONSHIP

49.     Wave 3 incorporates by reference into this Count all of the allegations appearing in paragraphs 1-48 of its counterclaims as if set forth fully herein.

50.     Wave 3 had a reasonable expectation of entering into valid business relationships with established distributors, potential distributors, and potential customers interested in purchasing Wave 3's products and AVKO knew of this reasonable expectancy.

51.     AVKO has told Wave 3's current and potential distributors and costumers—orally and in writing—that Wave's products were "illegal" and "counterfeit."

52.     Through these willfully false and disparaging statements about Wave 3 and its goods and services, AVKO has intentionally interfered with Wave 3's business expectancy by convincing distributors and customers to purchase AVKO's goods instead of Wave 3's goods.

53.     With reasonably certainty, but for AVKO's false and disparaging statements, Wave 3's business expectancy would have been realized.

54.     AVKO's interference was done purposefully, intentionally, and willfully, such that any potential distributor or customer of Wave 3's goods and services were dissuaded from selecting Wave 3.  As a result, AVKO intended to and did interfere with Wave 3's business expectancy.

55.     Wave 3 has lost distributors, customers, sales, and goodwill as a direct and proximate result of AVKO's tortious conduct.

WHEREFORE, Wave 3 prays that this Honorable Court enter an order and judgment in its favor and against AVKO that includes, but is not limited to, the following relief:

(a) Permanent injunctive relief against AVKO enjoining it, or any of its officers, agents, representatives, servants, employees, attorneys, successors, and assignees, and all others in active concert or participation with AVKO, from tortiously interfering with Wave 3's actual or prospective business relationships or expectancies;

(b) Damages to Wave 3, in an amount to be determined at trial;

(c) Disgorgement of AVKO's ill-gotten profits;

(d) Both pre-judgment and post-judgment interest; and,

(e) Such other and further relief as this Court finds just and equitable.

## COUNT IV
## TRADE LIBEL

56.     Wave 3 incorporates by reference into this Count all of the allegations appearing in paragraphs 1- 55 of its counterclaims as if set forth fully herein.

57.     Beginning in or about 2011, and continuing through the present, AVKO has intentionally and without justification or privilege made false and disparaging statements about Wave 3, its goods, and its services to third parties, including but not limited to Wave 3's existing and potential distributors and customers.  Specifically, based on information and belief, AVKO

has published false and disparaging statements about Wave 3 to third parties, including that Wave 3 sells illegal or counterfeit products, that Wave 3 sells substandard and deficient products, and that Wave 3 employs unlawful business practices.

58.     As a proximate result of AVKO's above-referenced statements, Wave 3's existing and prospective distributors and customers have been deterred from purchasing goods from Wave 3 and Wave 3 has lost approximately $500,000 in revenue.  As a further proximate result of AVKO's above-referenced statements, Wave 3 has had to expend extensive time and effort addressing and redressing the damage done to its business.  This time and effort has cost Wave 3 $500,000.

WHEREFORE, Wave 3 prays that this Honorable Court enter an order and judgment in its favor and against AVKO including, but not limited to, the following relief:

(a) Permanent injunctive relief against AVKO enjoining it, or any of its officers, agents, representatives, servants, employees, attorneys, successors, and assignees, and all others in active concert or participation with AVKO, from publishing false and defamatory statements concerning Wave 3;

(b) Damages to Wave 3, in an amount to be determined at trial;

(c) Both pre-judgment and post-judgment interest; and,

(d) Such other and further relief as this Court finds just and equitable.

## COUNT V
## PUNITIVE DAMAGES

59.     Wave 3 re-alleges and incorporates by reference into this Count all of the allegations appearing in paragraphs 1-58 of its counterclaims as if set forth fully herein.

60.     AVKO's actions were intentional, willful, and wanton, and were performed with malice toward Wave 3.

61.     Punitive damages are necessary to punish AVKO for its conduct and to deter it from committing similar transgressions in the future.

WHEREFORE, Wave 3 seeks punitive damages from AVKO, including attorney's fees, in the amount of not less than $500,000.

## COUNT VI
## ALTER EGO

62.     Wave 3 re-alleges and incorporates by reference into this Count all of the allegations appearing in paragraphs 1-61 of its counterclaims as if set forth fully herein.

63.     AVKO is merely the alter ego or business conduit of Don McCabe.  Based on information and belief, (1) McCabe dominates AVKO's Board's decisions, (2) AVKO does not follow regular and required corporate formalities, (3) McCabe syphons off AVKO's funds to pay for his personal expenses and/or comingles company assets, and (4) McCabe uses the liability shield of the company to perpetuate unlawful acts.

64.     Upon information and belief, Don McCabe dominates the decisions of AVKO's Board and, as a result, most if not all of AVKO's previous Board members have resigned due in whole or in part to McCabe's domination of the Board and the Board's decisions.

65.     Upon information and belief, AVKO did not hold any corporate board meetings between February of 2006 and June of 2011 (except for a single meeting in 2008); it has regularly failed to maintain 3 outside directors as required by Michigan law; McCabe has signed AVKO's tax returns instead of the President of AVKO; AVKO's Board elects its Board members, and not the due-paying members as required by AVKO's bylaws; and AVKO currently has no Board members.

66.     Upon information and belief, McCabe has used his "non-profit" corporation's funds to (1) pay for his property taxes, pay for his property insurance, pay for his utilities, and

pay himself for leasing out his "basement" as an office, (2) acquire many of McCabe's home furnishings, (3) pay for all maintenance and improvements of his home, (4) purchase McCabe's family's personal cars, (5) pay for McCabe and his family's health insurance, (6) pay for McCabe's travel expenses unrelated to any legitimate AVKO business, and (7) purchase goods and services entirely unrelated to AVKO's business for McCabe and his family's personal use. *See* Exhibits P-V.

67.     McCabe—under the pretense and cloak of AVKO—has intentionally and tortiously interfered with Wave 3's potential business relationships, violated Wave 3's exclusive license, and communicated to third parties false and disparaging statements of fact about Wave 3 or its officers.

68.     McCabe/AVKO's unlawful and wrongful actions have proximately caused unjust loss or injury to Wave 3.

69.     Adherence to the fiction of separate corporate existence would sanction McCabe's fraud and promote injustice.  Specifically, adherence to the fiction of AVKO's separate corporate existence would facilitate McCabe's use of the legal fiction of a "non-profit corporation" to syphon off tax-free money and unlawfully injure Wave 3.

70.     For the reasons set forth hereinabove, Don McCabe should be held jointly and severally liable for counterclaims I-IV because AVKO has operated as McCabe's alter ego and because McCabe intentionally and knowingly participated in fraudulent acts to evade the liability imposed by the judgment of those claims.

## DEMAND FOR JURY TRIAL

Wave 3 Learning, Inc. hereby demands a jury trial on all issues triable as of right to a jury. Fed. R. Civ. P. 38(b).

<div style="margin-left:50%">

Respectfully Submitted,

/s/ Daliah Saper
Daliah Saper
Saper Law Offices, LLC
505 N. LaSalle, Suite 350
Chicago, Illinois 60654
(312) 527-4100
ds@saperlaw.com

Matt Grothouse
Saper Law Offices, LLC
505 N. LaSalle, Suite 350
Chicago, Illinois 60654
(312) 527-4100
trademark@saperlaw.com

Chad Nold
Saper Law Offices, LLC
505 N. LaSalle, Suite 350
Chicago, Illinois 60654
(312) 527-4100
chad@saperlaw.com

</div>

Dated: December 2, 2015

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on this 2nd day of December 2015, a true and correct copy of the foregoing **Answer and Counterclaims** was served via electronic mail to Plaintiff-Counterdefendant's counsel of record.

s/ Daliah Saper
Daliah Saper
Saper Law Offices, LLC
505 N. LaSalle, Suite 350
Chicago, Illinois 60654
(312) 527-4100
ds@saperlaw.com